## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                    :        Chapter 11
                                          :
HANCOCK FABRICS, INC., *et al.*,[1]       :        Case No. 16-_____ (___)
                                          :
                    Debtors.              :
                                          :        Joint Administration Requested
                                          :
                                          :

------------------------------------------------------------x

## APPLICATION FOR ENTRY OF AN ORDER
## AUTHORIZING EMPLOYMENT AND RETENTION OF
## KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND
## NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Hancock Fabrics, Inc. ("**Hancock Fabrics**") and its affiliated debtors and debtors

in possession (collectively, the "**Debtors**"), respectfully request entry of an order (the **Retention**

**Order**") pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy**

**Code**") granting authorization to employ and retain Kurtzman Carson Consultants LLC

("**KCC**") as the official claims and noticing agent (the "**Claims and Noticing Agent**") in the

Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date.  The terms of KCC's

retention are set forth in the engagement agreement, dated as of December 22, 2015, between

KCC and the Debtors (the "**Engagement Agreement**");[2] *provided, however*, that KCC is

seeking approval solely of the terms and provisions of the Engagement Agreement as set forth in

28 U.S.C. § 156(c) and the proposed Retention Order.  In the event there is any inconsistency

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] The Engagement Agreement appears as Exhibit B to this Application.

between this application (the "**Application**"), the Retention Order, and the Engagement Agreement, the Debtors respectfully request that the Retention Order govern. In support of this Application, the Debtors rely on and incorporate by reference the *Declaration of Dennis Lyons in Support of the Debtors' Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Application.[3]  In further support of this Application, the Debtors submit the *Declaration of Evan Gershbein in Support of the Debtors' Application for Entry of an Order Authorizing Employment and Retention of Kurtzman Carson Consultants LLC as Claims and Noticing Agent,* Nunc Pro Tunc *to the Petition Date* (the "**Gershbein Declaration**").[4]

## JURISDICTION & VENUE

1.       This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[5]

## BACKGROUND

2.       On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.       The Debtors operate more than 260 stores in 37 states under the name of "Hancock Fabrics," a large national fabric and specialty retailer offering an extensive selection

---

[3] Capitalized terms not otherwise defined in this Application have the meanings used in the First Day Declaration.

[4] The Gershbein Declaration appears as Exhibit C to this Application.

[5] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

of high-quality fashion and home decorating textiles, sewing accessories, needlecraft supplies and sewing machines, along with in-store sewing advice.  Founded in 1957, the Debtors' corporate headquarters and national distribution center are located in Baldwyn, Mississippi.

4.    Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

5.    By this Application, the Debtors respectfully request entry of an order—as proposed in Exhibit A—under 28 U.S.C. § 156(c), Bankruptcy Code section 105(a), and Local Rule 2002-1(f), authorizing the employment and retention of KCC as Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date.

6.    By separate application, the Debtors will seek authorization to retain and employ KCC as administrative advisor in these chapter 11 cases under Bankruptcy Code section 327(a) because the administration of these chapter 11 cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

## BASIS FOR RELIEF REQUESTED

## I.  FACTS SPECIFIC TO RELIEF REQUESTED

## A.    KCC's Qualifications

7.    KCC is a leading provider of administrative support services whose professional team has experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, including in matters of this size and complexity.  KCC's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide,

3

including: *In re Frederick's of Hollywood, Inc.*, Case No. 15-10836 (KG) (Bankr. D. Del. May 18, 2015) (D.I. 50); *In re Endeavour Operating Corp. et al.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 1014) (D.I. 152); *In re FCC Holdings, Inc., et al.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Aug. 27, 2014) (D.I. 38); *In re Source Home Ent'mt, LLC*, Case No. 14-11553 (Bankr. D. Del. Jun. 23, 2014) (D.I. 141); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (Bankr. D. Del. Apr. 3, 2014) (D.I. 212); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (Bankr. D. Del. Nov. 12, 2013) (D.I. 183); *In re Global Aviation Holdings Inc.*, Case No. 13-12945 (Bankr. D. Del. Nov. 12, 2013) (D.I. 303); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (Bankr. D. Del. Jun. 14, 2013) (D.I. 145); *In re Synagro Tech., Inc.*, Case No. 13-11041 (Bankr. D. Del. Apr. 24, 2013) (D.I. 200); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. Feb. 25, 2013) (D.I. 131); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (Bankr. D. Del. Jan. 11, 2013) (D.I. 137).

        8.    Retaining KCC as Claims and Noticing Agent will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these chapter 11 cases, and relieve the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of these administrative burdens.

**B.**    **Services to be Provided**

        9.    By this Application, the Debtors seek to retain KCC as their Claims and Noticing Agent, under the Engagement Agreement, to provide, to the extent requested by the Debtors, the following bankruptcy administration services (the "**Claims and Noticing Services**"), including:

        a)    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure in the form and manner directed by the Debtors and/or the Court, including:  (i) notice of the commencement of these chapter 11 cases, (ii) notice of any claims bar date, (iii) notices of transfers

4

of claims (if any), (iv) notices of objections to claims and objections to transfers of claims (if any), (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Rule 3017(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (vi) notice of the effective date of the Plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b) Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed, if requested;

c) Maintain (i) a list of all potential creditors, equity holders, and any parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance under Bankruptcy Rule 9010; update and make those lists available upon request by any party in interest or the Clerk;

d) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which KCC can carry out by including such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e) For *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service that includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) an alphabetical list of persons to whom it was mailed with their addresses, (iii) the manner of service, and (iv) the date served;

f) Process any proofs of claim received, including those received by the Clerk, check processing for accuracy, and maintain the original proofs of claim in a secure area;

g) Maintain the official claims register (if any) for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk; provide the Clerk, upon the Clerk's request, with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the

5

claim (*e.g.*, secured, unsecured, priority), (vi) the applicable Debtor, and (vii) any disposition of the claim;

h)    Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

i)    Record any transfers of claims and provide any notices of such transfers as required by Federal Rule of Bankruptcy Procedure 3001(e);

j)    Relocate, by messenger or overnight delivery, any court-filed proofs of claim to KCC's offices, not less than weekly;

k)    Upon completion of the docketing process for any claims received to date for each case, provide to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

l)    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the Claims Register (if any) and any service or mailing lists, including the identification and elimination of duplicative names and addresses from such lists;

m)    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

n)    Assist in the dissemination of information to the public and respond to requests for administrative information on these chapter 11 cases as directed by the Debtors or the Court, including through a case website or call center;

o)    If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to KCC of entry of the order converting the cases;

p)    Thirty days before the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

q)    Within seven days of notice to KCC of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these chapter 11 cases; and

r)    At the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the

6

Federal Archives Record Administration, located at 14700 Townsend Road, Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk's office.

10.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

11.     KCC may not employ any past or present employee of the Debtors for work that involves the Debtors' chapter 11 cases.

**C.     Professional Compensation**

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates under 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court. KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on: (i) the Debtors; (ii) the Office of the United States Trustee; (iii) counsel to the Debtors; (iv) counsel for any official committee monitoring the expenses of the Debtors; and (v) any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if they are unable to achieve resolution on their own, the parties may seek the Court's intervention.

13.     Prior to the Petition Date, the Debtors provided to KCC, and replenished as required, a retainer in the amount of $50,000. KCC seeks to apply the retainer to all prepetition invoices and then have the retainer replenished to its original amount, and thereafter, to hold the retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

7

14.     Under the terms of the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, provided that the Debtors will have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by the Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

**D.     Representation of Disinterestedness**

15.     Although the Debtors do not propose by this Application to employ KCC under Bankruptcy Code section 327 (such retention, for KCC's proposed services as administrative agent will be sought by separate application), KCC has nonetheless reviewed its electronic database to determine whether it has any relationships with the Debtors' creditors and other parties in interest identified by the Debtors.  To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Gershbein Declaration, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

8

16.     Moreover, in connection with its retention as Claims and Noticing Agent, KCC represents in the Gershbein Declaration, among other things, that:

a)      KCC is not a creditor of the Debtors;

b)      KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

c)      By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

e)      KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

f)      KCC is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) for the matters on which it is engaged;

g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

h)      KCC's receipt and recordation of claims (if any) and claim transfers will fall under the supervision and control of the Clerk's office;

i)      KCC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j)      The Clerk's office will bear none of the costs of KCC's services as Claims and Noticing Agent in these chapter 11 cases.

KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require additional disclosure.

## E.      Compliance with Claims Agent Protocol

17.     The Debtors represent that this Application complies with the "Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)," dated

February 1, 2012, and instituted by the Clerk (the "**Claims Agent Protocol**"), and that it substantially conforms to the standard section 156(c) application in use in this Court.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A.    Retention and Employment of KCC as Claims and Noticing Agent is Permitted

18.    Under 28 U.S.C. § 156(c), Bankruptcy Code section 105(a), Local Rule 2002-1(f), and the Claims Agent Protocol, the Debtors are permitted to retain and employ KCC as Claims and Noticing Agent in these chapter 11 cases in order for KCC to assume full responsibility for the distribution of notices and other administrative aspects of the Debtors' chapter 11 cases.

19.    The authority to employ the services of a claims and noticing agent is found in 28 U.S.C. § 156:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

20.    Bankruptcy Code section 105 also provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by any party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

21.    And Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the Claims and Noticing Services.

Del. Bankr. L.R. 2002-1(f).

22.    The Debtors anticipate that these chapter 11 cases will require more than 10,000 entities to be noticed. In view of that large number and the complexity of the Debtors' businesses, the Debtors submit that the employment and retention of a claims and noticing agent is both required by Local Rule 2002-1(f) and in the best interests of the Debtors' estates and creditors. Relieved of the burdens associated with the Claims and Noticing Services, the Debtors will be able to devote their full attention and resources to maximizing value for their stakeholders and facilitating the orderly administration of these chapter 11 cases.

23.    In accordance with the Claims Agent Protocol, prior to the selection of KCC as Claims and Noticing Agent, the Debtors reviewed and compared engagement proposals from three court-approved claims and noticing agents, including KCC, to ensure a competitive process. The Debtors submit, based on the engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given the quality of services and expertise KCC provides. Although the terms of KCC's employment and retention are set forth in the Engagement Agreement, KCC is seeking approval solely of the terms and provisions as set forth in this Application and the Retention Order. In the event of any inconsistency between the Engagement Agreement, the Application, and the Retention Order, the Retention Order governs.

11

**B.     *Nunc Pro Tunc* Relief Is Appropriate**

24.     In accordance with the Debtors' request, KCC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that KCC can be compensated for services rendered before approval of this Application. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as proposed in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period. Courts in this District have routinely approved *nunc pro tunc* employment in chapter 11 cases.[6]

25.     Accordingly, the Debtors respectfully request entry of the Retention Order authorizing the Debtors to retain and employ KCC as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

## NOTICE

26.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (iv) counsel to GACP Finance Company, LLC, as Term Agent; (v) counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor,

---

[6] *See, e.g., In re The Wet Seal, Inc., et al.,* Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015) (D.I. 93); *In re Endeavour Operating Corporation, et al.,* Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 152); *In re AmCad Holdings, LLC, et al.,* Case No. 14-12168 (MFW) (Bankr. D. Del. Sept. 23, 2014) (D.I. 29); *In re Source Home Ent'mt, LLC, et al.,* Case No. 14-11553 (KG) (Bankr. D. Del. July 18, 2014) (D.I. 141); *In re The Dolan Co., et al.,* Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 23, 2014) (D.I. 71); *In re Event Rentals, Inc., et al.,* Case No. 14-10282 (PJW) (Bankr. D. Del. Feb. 19, 2014) (D.I. 61).

New York, New York 10271 (Attn: Margery A. Colloff, Esq.); (vi) John A. Bicks, Esq., K&L Gates, as counsel to certain secured noteholders, and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases.  A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/hancockfabrics.com.

27.    As this Application is seeking "first day" relief, notice of this Application and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR APPLICATION

28.    The Debtors have not made any prior application for the relief sought in this Application to this Court or any other.

The Debtors respectfully request entry of an order granting the relief requested and any other relief as is just and proper.

Dated:    February 2, 2016
          Baldwyn, MS

                              By: */s/ Dennis Lyons*
                                  _____
                                  Dennis Lyons
                                  Senior Vice President and
                                  Chief Administrative Officer
                                  Hancock Fabrics, Inc.

RLF1 13527831v.4

## Exhibit A

**Proposed Retention Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                          :        Chapter 11
                                                :
HANCOCK FABRICS, INC., *et al.*,[1]             :        Case No. 16-_____ (___)
                                                :
                          Debtors.              :
                                                :        Joint Administration Requested
                                                :
                                                :

------------------------------------------------------------x

**ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND
NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "**Application**")[2] of the Debtors for entry of an order

(this "**Order**") authorizing the employment and retention of Kurtzman Carson Consultants LLC

("**KCC**") as Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc*

to the Petition Date, as more fully set forth in the Application; and upon due and sufficient notice

of the Application having been provided under the particular circumstances, and it appearing that

no other or further notice need be provided; and the Court having jurisdiction to consider the

Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Application and the relief requested therein being a core proceeding under

28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of

the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§

1408 and 1409; and a hearing having been held to consider the relief requested in the Application

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined in this Order have the meanings used in the Application.

(the "**Hearing**"); and upon the Gershbein Declaration submitted in support of the Application, the First Day Declaration, record of the Hearing and all the proceedings had before the Court; and the Court having found and determined that KCC has the capability and experience to provide the services described in the Application, that KCC does not hold an interest adverse to the Debtors or their estates with respect to the matters on which it is to be engaged, and that the employment and retention of KCC is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.  In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

3.      The Debtors are authorized to retain KCC as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement, and KCC is authorized and directed to perform Claims and Noticing Services to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

4.      KCC will serve as the custodian of court records and will be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases, and KCC is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate upon the Clerk's request.

RLF1 13527831v.4

5.      KCC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      KCC is authorized to take such other actions to comply with all duties set forth in the Application.

7.      The Debtors are authorized to compensate KCC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.      KCC will maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and will serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

9.      Under Bankruptcy Code section 503(b)(1)(A), the fees and expenses of KCC under this Order will be an administrative expense of the Debtors' estates.

10.     KCC may hold its retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors will indemnify KCC under the terms of the Engagement Agreement, as modified by this Order.

12.    KCC will not be entitled to indemnification, contribution, or reimbursement for services other than those provided under the Engagement Agreement, unless the Court approves such services and requires the Debtors' indemnification, contribution, or reimbursement.

13.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors will have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any losses, claims, damages, judgments, liabilities and expenses that are either (i) judicially determined (the determination having become final) to have resulted from, have arisen from, or be related to KCC's gross negligence or willful misconduct; (ii) a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible under *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or (ii) the entry of an order closing these chapter 11 cases, KCC believes that it is entitled to payment by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, KCC must file an application in this Court, and the Debtors will not be required to pay such amounts to KCC before this Court enters an order

4

approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution, or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify KCC. Any parties in interest will retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement.

15.    Any provision limiting the amount of KCC's liability in the Engagement Agreement, including section IX.B of the Engagement Agreement, is null and void during these chapter 11 cases.

16.    By this Order, the Court is not authorizing KCC to establish accounts with financial institutions on behalf of the Debtors pursuant to section VIII of the Engagement Agreement.

17.    If KCC is unable to provide the services set out in this Order, KCC will immediately notify the Clerk and the Debtors' counsel and, upon the Court's approval, turn over all original proofs of claim (if any) and computer information to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

18.    KCC may not cease providing claims processing services during these cases for any reason, including nonpayment, without prior order of the Court authorizing KCC to do so; *provided, however*, that KCC may seek such an order on expedited notice by filing a request with the Court and serving notice of such request on the Debtors, the Office of the U.S. Trustee, counsel for the Debtors, and any official committee of creditors appointed in these cases, by facsimile or overnight delivery; *provided further*, that except as expressly precluded herein, the Debtors and KCC under the Engagement Agreement may terminate or suspend other services.

RLF1 13527831v.4

19.     After entry of an order terminating KCC's services or upon the closing of these cases, KCC will be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and will be compensated by the Debtors for those costs.

20.     Debtors' counsel shall notify the clerk of the Court and KCC within 7 days of an order of dismissal or conversion of the chapter 11 cases.

21.     The Debtors may submit a separate retention application, under Bankruptcy Code section 327 and/or any applicable law, for work that is to be performed by KCC but is not specifically authorized by this Order.

22.     KCC shall comply with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any other general orders or applicable guidelines issued by this Court.

23.     For the avoidance of doubt, nothing in this Order is approving or authorizing any services under the Strategic Communications Services Agreement between KCC and the Debtors.

24.     The Debtors and KCC are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order in accordance with the Application.

25.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

26.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, this Order is immediately effective and enforceable upon its entry.

Dated: _____, 2016
       Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Engagement Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 22nd day of December, 2015, between Hancock Fabrics, Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

 KCC

# KCC AGREEMENT FOR SERVICES

II.   PRICES, CHARGES AND PAYMENT

A.   KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.   The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.   In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.   Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.   KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.   In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11

2

 KCC

## KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $50,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

### III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

### IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

### V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

VI.   SUSPENSION OF SERVICE AND TERMINATION

A.     This Agreement shall remain in force until terminated or suspended by either party
(i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice
for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or
willful misconduct of KCC that causes serious and material harm to the Company's
reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay
KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of
invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes
it will not be paid.

B.     In the event that this contract is terminated, regardless of the reason for such termination,
KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy
Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all
necessary staff, services and assistance required for an orderly transfer.  The Company agrees to
pay for such services in accordance with KCC's then existing prices for such services.  If such
termination occurs following entry of the Section 156(c) Order, the Company shall immediately
seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges
KCC from service and responsibility under Section 156(c) and this Agreement.

C.     Any data, programs, storage media or other materials furnished by the Company to KCC
or received by KCC in connection with the services provided under the services provided may
may be retained by KCC until the services provided are paid for, or until this Agreement is
terminated with the services paid in full.  The Company shall remain liable for all fees and
expenses imposed under this Agreement as a result of data or physical media maintained or stored
by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.
The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition
of data or media.  If the Company has not utilized KCC's services under this Agreement for a
period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by
the Company for the expense of such disposition, after giving the Company thirty (30) days'
notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c)
Order, the disposition of any data or media by KCC shall be in accordance with any applicable
instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of
the Bankruptcy Court.

VII.   SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC,
therefore, reserves the right to make changes in operating procedure, operating systems,
programming languages, general purpose library programs, application programs, time period of
accessibility, types of terminal and other equipment and the KCC data center serving the
Company, so long as any such changes do not materially interfere with ongoing services provided
to the Company in connection with the Company's chapter 11 case.

 KCC

# KCC AGREEMENT FOR SERVICES

VIII.   BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.       The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.       Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.       The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.       The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

5

 KCC

# KCC AGREEMENT FOR SERVICES

## X.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC        Hancock Fabrics, Inc.
2335 Alaska Ave.                                    Address
El Segundo, CA  90245                          City, ST Zip
Attn:  Drake D. Foster                            Attn:
Tel: (310) 823-9000                               Tel:
Fax: (310) 823-9133                               Fax:
E-Mail: dfoster@kccllc.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired

6



## KCC AGREEMENT FOR SERVICES

thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in Los Angeles County, State of California.

XVIII. ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

7

 KCC

## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein                    DATE: 1/11/16
TITLE: Senior VP, Corporate Restructuring Services

Company Hancock Fabrics, Inc.

BY: Steve Morgan  DATE: 1/11/2016
TITLE: President/CEO

8

 KCC

## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### Consulting Services & Rates[1]

| Position | Hourly Rate |
|---|---|
| *Executive Vice President* | *Waived* |

The Executive Vice President oversees and manages KCC's Restructuring group.

| *Director/Senior Managing Consultant* | *$175* |
|---|---|

The Director/Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's Directors and SMCs average over seven years of experience and are generally former practitioners. Francine Gordon Durrer, who has over 20 years of restructuring experience, will serve as an additional supervisory layer at this level at no charge.

| *Consultant/Senior Consultant* | *$70-$160* |
|---|---|

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over five years of experience.

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register. KCC's Consultants average over five years of experience.

| *Technology/Programming Consultant* | *$35-$70* |
|---|---|

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| *Clerical* | *$25-$50* |
|---|---|

The Clerical role will process incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| *Weekend, holidays and overtime* | *Waived* |
|---|---|

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

 **KCC**

# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

## Public Securities[2] & Solicitation Services

| Position | Hourly Rate |
|---|---|
| *Solicitation Lead/Securities Director* | *$215* |

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, this position oversees and provides counsel on all rights offerings, exchange offers and complex plan distributions to ensure accuracy and efficiency.

| | |
|---|---|
| *Securities Senior Consultant* | *$200* |

The Securities Senior Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.

- Voting Event - Mailing ballots to security holders and tabulating their votes on a plan of reorganization, including competing plan and pre-packaged plan voting, if applicable.

- Corporate Action Event - Mailing election forms to security holders and tabulating the results, e.g., rights offering elections, if applicable.

- NOL Motion – Review of motion and procedures and coordinate noticing to equity holders, if applicable.

## Printing Services

| | |
|---|---|
| Printing and photocopies | $0.09 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |

## Noticing Services[3]

| | |
|---|---|
| Electronic noticing (email) | Waived[4] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claims Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Legal notice publishing | Quote prior to publishing |

---

[2] Certain events fees may be applicable.

[3] Expenses shall be consistent with the general practice procedures authorized in the District of Delaware.

[4] A set-up fee for email services larger than 500 parties may apply. This set-up fee varies depending on the total number of parties.



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

### Claims Administration & Management Expenses

| | |
|---|---|
| Database and System Access (unlimited users) | Waived |
| Custom client reports | Waived |
| License fee and data storage | $0.10 per creditor per month |
| Case-specific public website hosting | Waived |

### KCC eServices

| | |
|---|---|
| Online claims filing (ePOC) | Waived |

### KCC CaseView

| | |
|---|---|
| Access to KCC CaseView | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.12 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

### Call Center Support Services

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

### Disbursements

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

## Exhibit C

**Gershbein Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| HANCOCK FABRICS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | Joint Administration Requested |

------------------------------------------------------------x

## DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF
## THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
## EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC
## AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

I, Evan Gershbein, under penalty of perjury, declare as follows:

1.      I am the Senior Vice President of Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("**KCC**"), an administrative services firm that specializes in the administration of large bankruptcy cases.   Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned Debtors' "Application for Entry of an Order Authorizing Employment and Retention of Kurtzman Carson Consultants LLC as Claims and Noticing Agent, *Nunc Pro Tunc* to the Petition Date," which was filed contemporaneously herewith (the "**Application**").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined in this Declaration have the meanings used in the Application.

3.     KCC is an industry leader whose professionals have significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. KCC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, including in matters of this size and complexity. KCC's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide, including: *In re Frederick's of Hollywood, Inc.*, Case No. 15-10836 (KG) (Bankr. D. Del. May 18, 2015) (D.I. 50); *In re Endeavour Operating Corp. et al.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 1014) (D.I. 152); *In re FCC Holdings, Inc., et al.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Aug. 27, 2014) (D.I. 38); *In re Source Home Ent'mt, LLC*, Case No. 14-11553 (Bankr. D. Del. Jun. 23, 2014) (D.I. 141); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (Bankr. D. Del. Apr. 3, 2014) (D.I. 212); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (Bankr. D. Del. Nov. 12, 2013) (D.I. 183); *In re Global Aviation Holdings Inc.*, Case No. 13-12945 (Bankr. D. Del. Nov. 12, 2013) (D.I. 303); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (Bankr. D. Del. Jun. 14, 2013) (D.I. 145); *In re Synagro Tech., Inc.*, Case No. 13-11041 (Bankr. D. Del. Apr. 24, 2013) (D.I. 200); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. Feb. 25, 2013) (D.I. 131); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (Bankr. D. Del. Jan. 11, 2013) (D.I. 137).

4.     As agent and custodian of court records under 28 U.S.C. § 156(c), KCC will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement. In performing such services, KCC will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit B to the Application.

2

5.      KCC represents that:

a)      KCC is not a creditor of the Debtors;

b)      KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

c)      By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

e)      KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

f)      KCC is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) for the matters on which it is engaged;

g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

h)      KCC's receipt and recordation of claims (if any) and claim transfers will fall under the supervision and control of the Clerk's office;

i)      KCC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j)      The Clerk's office will bear none of the costs of KCC's services as Claims and Noticing Agent in these chapter 11 cases.

6.      Although the Debtors by this Application do not propose to retain KCC under Bankruptcy Code section 327 (such retention will be sought by separate application), I authorized our conflicts system to review the names of all known potential parties in interest (the "**Potential Parties in Interest**") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, directors and officers of the Debtors, equity interest holders, secured creditors, the Debtors' largest

3

unsecured creditors on a consolidated basis, significant vendors and energy trading counterparties, and other parties. KCC professionals under my supervision compiled and reviewed the results of the conflicts check. As set forth in further detail herein, KCC is not currently aware of any relationship that would present a disqualifying conflict of interest. Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to promptly file a supplemental declaration.

7.      To the best of my knowledge, and based solely on information provided to me by the Debtors, and except as detailed herein, neither KCC nor any of its professionals has any materially adverse connection to the Debtors, their creditors, or other relevant parties. KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as Claims and Noticing Agent or Administrative Advisor for another chapter 11 debtor or as class action settlement administrator.

8.      KCC has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, KCC has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' chapter 11 cases. There is also a possibility that KCC will provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases—though such services would not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

9.      KCC and its personnel in their individual capacities regularly use the services of law firms, accounting firms, and financial advisors. Such firms engaged by KCC or its personnel may appear in these chapter 11 cases representing the Debtor or parties in interest.

4

All engagements where such firms represent KCC or its personnel in their individual capacities are unrelated to these chapter 11 cases.

          10.    KCC is an indirect subsidiary of Computershare Limited ("**Computershare**"). Computershare is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estate or any class of creditors or equity security holders.

          11.    To the best of my knowledge, neither KCC nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter on which KCC is to be engaged. Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14).

RLF1 13527831v.4

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on February 2, 2016

/s/ Evan Gershbein
Evan Gershbein
Senior Vice President, Corporate Restructuring Services
Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245

6

RLF1 13527831v.4