## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| HANCOCK FABRICS, INC., *et al.*,[1] | : | Case No. 16-_____ (___) |
|  | : |  |
| Debtors. | : | Joint Administration Requested |
|  | : |  |

------------------------------------------------------------x

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND (B) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED PROGRAMS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL RELATED CHECKS AND TRANSFERS

Hancock Fabrics, Inc. ("**Hancock Fabrics**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders (i) authorizing the payment of Prepetition Employment Obligations (as defined below); and (ii) granting related relief.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Dennis Lyons in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Motion.[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms not otherwise defined in this Motion have the meanings used in the First Day Declaration.

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[3]

## BACKGROUND

2.      On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.      The Debtors operate more than 260 stores in 37 states under the name of "Hancock Fabrics," a large national fabric and specialty retailer offering an extensive selection of high-quality fashion and home decorating textiles, sewing accessories, needlecraft supplies and sewing machines, along with in-store sewing advice.  Founded in 1957, the Debtors' corporate headquarters and national distribution center are located in Baldwyn, Mississippi.

4.      Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

5.      By this Motion, the Debtors request entry of interim and final orders—as proposed in Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**") respectively—authorizing the Debtors in the exercise of their business judgment, as deemed necessary to

---

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

continue to operate and preserve value, to (a) pay all prepetition wages, salaries, commissions, other compensation, and related administration and other incidental costs (all as described below and collectively, the "**Employee Compensation Obligations**") and prepetition employee benefits (all as described below and collectively, the "**Employee Benefit Obligations**"), (b) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law, (c) pay all employment, unemployment, Social Security, and similar federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by the Debtors to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including, but not limited to, retirement and other employee benefit plan contributions, garnishments, and voluntary deductions (all as described below and collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**," and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"), and (d) honor and continue their prepetition programs, policies, and practices as described in this Motion with respect to the Prepetition Employee Obligations in the ordinary course of business. The Debtors also seek entry of interim and final orders authorizing all financial institutions to receive, honor, process, and pay any and all checks and wire transfers drawn on the Debtors' accounts[4] in satisfaction of the Prepetition Employee Obligations. The relief requested should be granted under Bankruptcy Code sections 105(a), 363(b), 507(a), 541, 1107(a), and 1108, Federal Rules of Bankruptcy Procedure 6003 and 6004, and Local Rules 2016-2 and 9013-1(m).

---

[4] Contemporaneous with this Motion, the Debtors have filed a motion for authority to continue using their cash management system.

6.      As of the Petition Date, the Debtors estimate that the Prepetition Employee Obligations total approximately $2.4 million, substantially all of which will become due and owing during the 21 days following the Petition Date (the "**Interim Amount**").  To fulfill these commitments, the Debtors request entry of an interim order, authorizing the Debtors to pay Prepetition Employee Obligations in an aggregate amount not to exceed the Interim Amount, followed by entry of a final order authorizing the Debtors to pay all other Prepetition Employee Obligations.

7.      Further, the Debtors request that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for Prepetition Employee Obligations (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion, provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## BASIS FOR RELIEF REQUESTED

### I.    FACTS SPECIFIC TO RELIEF REQUESTED

#### A.    The Debtors' Employees

8.      As of the Petition Date, the Debtors employ approximately 4,522 employees throughout the country.  Of these employees, approximately 377 are salaried (the "**Salaried Employees**"), of whom 14 hold the position of vice president or above, and approximately 4,145 are paid on an hourly basis (the "**Hourly Employees**," together with the Salaried Employees the "**Employees**").

B.    **Wages, Salaries, and Related Obligations**

1.    **Wage and Salary Obligations**

9.    Before the Petition Date and in the ordinary course of their businesses, the Debtors typically paid Employee Compensation Obligations to their Hourly Employees weekly and to their Salaried Employees bi-weekly. The Debtors estimate that their accrued but unpaid weekly gross payroll as of the Petition Date is approximately $800,000 and their bi-weekly gross payroll is approximately $790,000, for a total of accrued but unpaid gross wages of approximately $1,590,000.

2.    **Payroll Taxes**

10.    The Debtors withhold funds from Employees' wages and salaries and also make certain Payroll Tax payments from their own funds. As of the Petition Date, the Debtors estimate that they have approximately $250,000 in accrued Payroll Taxes for salaried Employees and $140,000 in accrued Payroll Taxes for hourly Employees, including amounts outstanding and amounts withheld from the Employees and not yet remitted, all of which will become due and owing during the 21 days following the Petition Date.

3.    **Garnishments**

11.    In the ordinary course of processing payroll checks for their Employees, the Debtors may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support, and other court-ordered obligations (collectively, the "**Garnishments**"). When required, the Debtors withhold Garnishments from certain Employees' paychecks, and remit the same to the appropriate governmental authorities on a weekly basis with respect to hourly employees and on a bi-weekly basis with respect to salaried employees. As of the Petition Date, the Debtors estimate that approximately $6,000 in Garnishments will have been withheld from the

5

Employees and not yet remitted to the appropriate governmental authorities as of the Petition Date.

### 4.    Leave Policies

12.    The Debtors offer certain eligible Employees other forms of compensation, including vacation days, holidays, civic duty leave and bereavement days. These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified Employees to operate their businesses. Failure to provide these benefits could harm Employee morale and encourage the premature departure of essential Employees. The Debtors therefore request authority to continue these programs in the ordinary course of business during these chapter 11 cases.

### (a)    Vacation and Sick Time

13.    All Full-Time Employees are entitled to vacation and sick leave as set forth in the tables below, and part-time employees in California and Oregon are entitled to sick leave pursuant to applicable state law. Employees are paid for their accrued but unused vacation pay upon any termination of employment; accrued but unused sick leave is paid to Employees who retire or who are laid off from their employment.

| Category / Duration of Continuous Employment | Paid Leave |
| --- | --- |
| *Salaried Employees: Corporate Headquarters and Distribution Center* | 8 sick days per year plus vacation as shown below |
| 120 days - 1 year | 1 week |
| 1 year through 4 years | 2 weeks |
| 5 through 9 years | 3 weeks |
| 10 years and greater | 4 weeks |
| *Hourly Employees: Corporate Headquarters and Distribution Center* | 6 sick days per year (after 1 year of employment) plus vacation as shown below |
| 1 year through 2 years | 1 weeks |
| 3 through 9 years | 2 weeks |
| 10 years and greater | 3 weeks |

6

| *Salaried Employees:* *Retail Stores* | 8 sick days per year plus vacation as shown below |
|---|---|
| 120 days - 1 year | 1 week |
| 1 year through 4 years | 2 weeks |
| 5 through 14 years | 3 weeks |
| 15 years and greater | 4 weeks |
| *Hourly Employees:* *Retail Stores* | 6 sick days per year (after 1 year of employment) plus vacation as shown below |
| 1 year through 2 years | 1 weeks |
| 3 through 9 years | 2 weeks |
| 10 years and greater | 3 weeks |

**(b)    Holidays**

14.    The Debtors offer certain holiday days to Employees.  Employees at the Debtors' retail stores observe Christmas Day, and Employees at the Debtors' corporate headquarters and distribution center generally observe the holidays listed on the chart below:

| Holiday | Day |
|---|---|
| New Year's Day | January 1 |
| Memorial Day | Last Monday in May |
| Independence Day | July 4 |
| Labor Day | First Monday in September |
| Thanksgiving Day | Fourth Thursday in November |
| Christmas Day | December 25 |

**(c)    Civic Duties**

15.    Employees who are obligated to perform certain civic duties, including jury duty and witness duty, or who need time off to exercise their right to vote, are granted leave to fulfill these obligations.

**(d)    Bereavement**

16.    With some exceptions, each Employee is entitled to take up to three paid bereavement days per year in the event of an immediate family member's death.

### C.    Health and Welfare Benefits

17.    The Debtors offer their eligible Employees various standard employee benefits, which include medical coverage, pharmaceutical benefits, dental insurance, vision coverage, COBRA coverage, workers' compensation coverage, and other benefit programs provided to Employees in the ordinary course of business (collectively, the "**Health and Welfare Benefits**").

### 1.    Medical Plans

18.    The Debtors offer medical benefits to eligible Employees and eligible members of Employees' families (collectively, the "**Plan Participants**") through health care coverage administered by Anthem Blue Cross.  The cost of the Employees' medical insurance is borne primarily by the Debtors, but Employees also contribute to their insurance plans through payroll deductions that help fund claim payments.  Employees are offered high- and low-deductible preferred provider option (PPO) plans, as well as a high-deductible health reimbursement account plan, with the Debtors paying covered expenses after an out-of-pocket limit has been reached.  The Debtors also pay co-insurance at varying percentages depending on the deductible selected by the Employee and whether the covered patient obtains medical treatment in-network or out-of-network.  The Debtors estimate that approximately $175,000 in prepetition medical claims (including those related to the Pharmaceutical Plan, as defined below), plus related administrative fees, will come due during the first 21 days of the case.

### 2.    Pharmaceutical Plans

19.    The Debtors offer eligible Employees prescription drug coverage (the "**Pharmaceutical Plan**") administered by Anthem Blue Cross.  The costs of the Pharmaceutical Plan are borne primarily by the Debtors, but Employees also contribute to the plans through payroll deductions that help fund claim payments.  The Debtors pay claims for current

8

Employees on a monthly basis and retired Employees on a quarterly basis. Because of the changing composition of the Debtors' workforce and the nature of the claim-based pharmaceutical plan, claim amounts can fluctuate significantly. The prepetition medical claims amount shown above includes the Debtors' best estimate for prepetition accrued but unpaid claims on account of the Pharmaceutical Plan.

### 3. Dental Plan

20.     The Debtors offer eligible Employees dental insurance (the "**Dental Plan**") administered by Delta Dental. The cost of the Dental Plan is borne primarily by the Debtors, but Employees also contribute to the Dental Plan through payroll deductions that help fund claim payments.     Employees are offered high- and low-deductible preferred provider option (PPO) plans, with the Debtors paying covered expenses after an out-of-pocket limit has been reached. The Debtors also pay co-insurance at varying percentages depending on the deductible selected by the Employee and whether the covered patient obtains dental treatment in-network or out-of-network. The Debtors estimate that approximately $5,000 in prepetition claims on account of the Dental Plan, plus related administrative fees, will come due during the first 21 days of the case.

### 4. Vision Plan

21.     The Debtors offer vision coverage to Employees through a fully insured vision care plan with Vision Service Plan, also known as "VSP" (the "**Vision Plan**"). As of the Petition Date, the Vision Plan has approximately 331 participants. The average monthly cost of premiums for the Vision Plan is approximately $16,000, the entirety of which is paid by Employees. The Debtors pay $4,000 per month in administrative fees for the Vision Plan.

RLF1 13819196v.1

### 5.    COBRA Program

22.    The Debtors also offer eligible Employees the option to retain COBRA medical, dental and vision coverage at such Employees' own expense, for to up to 18 months after termination of employment.

### 6.    Workers' Compensation Program

23.    The Debtors maintain workers' compensation insurance for Employees at the statutorily required level in all states in which the Debtors conduct business (the "**Workers' Compensation Program**"). All Employees who work in those states are entitled to participate in the Workers' Compensation Program. The Workers' Compensation Program is fully insured, so the Debtors do not incur any additional costs on account of claims brought under the Workers' Compensation Program. The Workers' Compensation Program is maintained through Liberty Mutual Insurance Company ("**Liberty Mutual**") and runs through May 4, 2016. The Debtors pay approximately $320,188 in annual premiums (including related fees and assessments) to Liberty Mutual for maintaining the Workers' Compensation Program. The Debtors presently do not owe any fees to Liberty Mutual on account of the Workers' Compensation Program.

24.    The Debtors must continue the claim assessment, determination, adjudication, and payment process under the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements. The Debtors accordingly seek authority to continue to maintain the Workers' Compensation Program in the ordinary course of business.

### 7.    Other Benefit Programs

25.    The Debtors also offer other customary benefits to their Employees, including without limitation: basic Employee and dependent life and accidental insurance

10

coverage, short-term and long-term disability insurance and pet insurance (which is a plan that provides discounted insurance premiums that are paid in full by the Employees selecting such coverage directly to the insurance provider with no contribution by the Debtors).  The Debtors pay a monthly average of $40,000 on behalf of these benefits programs.  The Debtors estimate that approximately $34,000 in prepetition claims on account of these customary benefit programs will come due during the first 21 days of the case.

26.    The Debtors also provide limited awards to Employees based on years of service.  Milestone anniversaries for long-term Employees are recognized with gift cards, for which the Debtors pay an average of less than $2,000 per month.  Eligible Employees are also provided merchandise discounts.

27.    Certain senior Employees use company-owned vehicles and company credit cards to pay for gasoline and other business-related expenses.  The Debtors seek authority to continue permitting these Employees to continue this benefit as part of the ordinary course of the Debtors' businesses.

28.    The Debtors also offer the Employees Flexible Spending Accounts (the "**FSA Plan**") administered through United Healthcare ("**United Healthcare**").  The Debtors maintain Employees' FSA contributions in the Debtors' bank accounts, and participating Employees are issued prefunded debit cards for their FSA balances.  Employees also have the option of submitting written claims for covered expenses, which are paid by the Debtors by check or direct deposit into such Employee's bank account.

29.    The Debtors do not believe that they hold any amounts that remain owing and unpaid to United Healthcare on account of services provided under the FSA Plan prior to the

RLF1 13819196v.1

Petition Date.  The Debtors also do not believe that they hold any amounts collected from participating Employees that remains unpaid under the FSA Plan prior to the Petition Date.

**D.    401(k) Plan**

30.    The Debtors sponsor a retirement investment plan and withhold from the wages of participating Employees contributions toward the Hancock Fabrics 401(k) Plan (the "**401(k) Plan**").  Eligible Employees may make pre-tax or post-tax contributions to the 401(k) Plan ranging from 0% to 100% of their annual compensation, up to the maximum amount allowed by the Internal Revenue Service.  The Debtors do not offer any matching program for Employees who participate in the 401(k) Plan.  As of the Petition Date, 568 Employees participate in the 401(k) Plan (the "**Participating Employees**").

31.    On average, the Debtors withhold approximately $48,000 per month from Participating Employees' paychecks for the 401(k) Plan and an additional $7,000 from certain of the Participating Employees' paychecks to repay loans those Employees drew against the 401(k) Plan, which is then forwarded to the 401(k) Plan administrator, Great-West Life and Annuity Insurance Company ("**Great-West**").  As of the Petition Date, the Debtors hold approximately $22,000 in contributions under the 401(k) Plan, which have been collected from the Employees and remain unpaid to Great-West.

32.    The Debtors pay certain custodial and other professional fees to Great-West for maintaining the 401(k) Plan.  The Debtors pay approximately $28,000 in annual fees to Great-West on account of the 401(k) Plan.  The Debtors estimate that approximately $2,300 in prepetition fees will come due during the first 21 days of the case.

**E.    Debtors' Reimbursement Obligations**

33.    Certain Employees incur expenses in the course of performing their jobs, including without limitation travel, mobile phone, and meal expenses (the "**Travel and**

12

**Communications Expenses"**).    The Debtors also incur certain ordinary course business expenses for which a credit card is required, including without limitation to ensure service continuity for certain on-line vendors (the **"Credit Card Expenses"** and, with the Travel and Communications Expenses, the **"Business-Related Expenses"**).  As the Debtors do not maintain corporate credit card accounts, the Debtors pay the Credit Card Expenses by reimbursing designated individual employees for charges that are made to the credit cards held by and in the names of these individual employees.   These expenses average approximately $50,000 per month.  It is essential to the continued operation of the Debtors' business that the Debtors are permitted to continue reimbursing, or making direct payments for, Business-Related Expenses. Moreover, if the Debtors do not reimburse the Credit Card Expenses, the individual employees in whose names the credit cards are held risk personal liability exposure.   This would have a profoundly adverse effect on the Debtors, as the on-line and other important services for which the Credit Card Expenses are incurred would be terminated, the Debtors would be subject to claims from the employees in whose names the cards are held, and there would be a devastating effect on employee morale during the reorganization period.  As has been the Debtors' custom and policy, no Employee travel will be reimbursed without advance approval from the Debtors' management.

34.    The Debtors estimate that as of the Petition Date they owe approximately $25,000 in accrued but unpaid Business-Related Expenses, other than Credit Card Expenses, as well as current Credit Card Expenses, which average approximately $50,000 per month.

RLF1 13819196v.1

## II.    LEGAL BASIS FOR RELIEF REQUESTED

### A.    Payment of the Prepetition Employee Obligations Is Appropriate Under Bankruptcy Code Sections 363(b) and 105(a) and the Doctrine of Necessity

35.    The Court has authority under Bankruptcy Code sections 363(b) and 105(a) to approve the Debtors' payment of the Prepetition Employee Obligations.    Under Bankruptcy Code section 363(b)(1), a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition).   For a court to approve the use, sale, or lease of estate property under Bankruptcy Code section 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization).

36.    Likewise, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."   11 U.S.C. § 105(a).   A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R at 175.   Section 105 permits a court to authorize the "pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NYR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).

RLF1 13819196v.1

37.    The relief requested in this Motion is an appropriate exercise of the Debtors' business judgment under Bankruptcy Code sections 363(b) and 105(a). The continued compensation of the Employees is a necessary and justifiable business expense. If the relief requested in this Motion is not granted, the Debtors' business operations will suffer, to the detriment of the Debtors' estates, creditors, and other stakeholders.

38.    The Debtors also submit that payment of the Prepetition Employee Obligations is necessary and appropriate and may be authorized under Bankruptcy Code sections 363(b) and 105(a) under the "doctrine of necessity." In a chapter 11 case, the doctrine of necessity is a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims. *See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims when payment is essential to continued operation of debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Penn Cent. Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the doctrine of necessity "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.,* 242 B.R. 821, 824 (D. Del. 1999) (noting that section 105 and the doctrine of necessity provide courts with authority to permit payment of prepetition claims necessary to facilitate a successful reorganization); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims essential to continued operation of business). The rationale for this doctrine is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.,* 98 B.R. at 176.

39.    The relief requested in this Motion is necessary for the Debtors to maximize value for all stakeholders.  Attracting and retaining skilled and valuable Employees is vital to the Debtors' business.  Continuing the uninterrupted funding and payment of the Prepetition Employee Obligations, and the underlying plans, policies, programs and practices as described in the Motion will help ensure that the Debtors' Employees will continue to serve the customer base and otherwise enhance the success of these cases.

40.    Any delay or failure to pay wages, salaries, benefits, and other similar items would irreparably impair the Employees' morale, dedication, confidence, and cooperation and would adversely impact the Debtors' relationships with their Employees at a time when the Employees' support is critical to the success of the Debtors' chapter 11 cases.  The Debtors simply cannot risk the substantial damage to their business that would result from any decline in employee morale.

41.    Absent orders granting the relief requested in this Motion, the Employees could also suffer undue hardship and, in many instances, serious financial difficulties, as some Employees will likely need the amounts and benefits at issue to meet their own personal financial obligations.  Further, failure to reimburse business expenses will cause Employees concern regarding potential personal liability for business-related charges, which would discourage the Employees from devoting their full attention to the Debtors' business and restructuring efforts.

42.    Without the requested relief, the stability of the Debtors' workforce will be undermined, perhaps irreparably, by the likelihood that the Debtors will lose valued Employees. Accordingly, for all the above reasons, the Debtors submit that the requested relief is reasonable and necessary.

RLFI 13819196v.1

**B.**     **The Debtors Should Be Authorized to Pay the Prepetition Employee Obligations Under Bankruptcy Code Sections 1107(a) and 1108**

43.     Because they are operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, the Debtors are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) [their] equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). A chapter 11 debtor in possession is has the implicit duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

44.     At least one court has noted that a debtor in possession can in certain instances fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-prong test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

45.     Payment of the Prepetition Employee Obligations here meets each element outlined in *CoServ*. First, the Debtors' Employees—an asset that is among the Debtors' most valuable—are central to the success of these chapter 11 cases, and thus, it is critical that the Debtors deal with the Employees. Second, for the reasons already explained, if the Debtors do

17

not pay the Prepetition Employee Obligations, the Debtors risk the "probability of harm, or, alternatively, loss of economic advantage to the estate or the debtors' going concern value, which is disproportionate to the amount of" the Prepetition Employee Obligations.   Finally, with respect to the Employees, the Debtors have examined other options short of payment of the Prepetition Employee Obligations and have determined that, to avoid significant disruption of the Debtors' business operations, there is no practical or legal alternative to paying such obligations.   Therefore, the Debtors can meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 only by paying the Prepetition Employee Obligations.

### C.    The Prepetition Employee Obligations Constitute Priority Claims Under Bankruptcy Code Section 507(a)

46.    The Debtors believe that the majority of the Prepetition Employee Obligations constitute priority claims under Bankruptcy Code sections 507(a)(4), (a)(5), and (a)(8), which must be satisfied prior to any general unsecured claims against the Debtors' estate. 11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726.   Specifically, under Bankruptcy Code section 507(a)(4)(A), claims of employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $12,475 per individual. 11 U.S.C. § 507(a)(4)(A).   As of the Petition Date, there are three Employees with accrued unpaid wages exceeding the $12,475 cap. Therefore, substantially all the Prepetition Employee Obligations are priority claims that, in any event, will have to be paid in full.   Given the amount at stake compared to the size of this case, the Debtors respectfully request that they be authorized to pay all accrued but unpaid Prepetition Employee Obligations.

18

47.     Similarly, Bankruptcy Code section 507(a)(5) provides that employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status up to $12,475 per employee covered by such plan, less any amount paid under section 507(a)(4).  11 U.S.C. § 507(a)(5)(A).  Further, payment of the Payroll Taxes also will not prejudice other creditors of the Debtors, as the relevant taxing authorities generally would hold priority claims under Bankruptcy Code section 507(a)(8) for such obligations.  *See* 11 U.S.C. § 507(a)(8).[5]  Payment of the Prepetition Employee Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.

**D.     Funds Related to the Payroll Taxes and Payroll Deduction Obligations May Be Held in Trust and Are Not Property of the Estate**

48.     The portion of Payroll Taxes withheld from an Employee's wages and any other Payroll Deduction Obligations are collected or withheld by the Debtors and may be held in trust for the benefit of the applicable taxing authority.  As a result, Payroll Taxes and other Payroll Deduction Obligations are not property of the Debtors' estates under Bankruptcy Code section 541 and, such funds therefor are not available for the satisfaction of creditors' claims. *See, e.g., Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Instead, the Debtors may be obligated to remit these funds to the applicable taxing authority.

---

[5] Bankruptcy Code section 507(a)(8) affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii) under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

49.    Many federal, state, and local statutes also impose personal liability on officers and directors of companies for certain Payroll Taxes and any other Payroll Deduction Obligations such entities owe.  To the extent that the relevant Payroll Taxes and other Payroll Deduction Obligations remain unpaid by the Debtors, the Debtors' directors, officers, and executives may be subject to lawsuits or criminal prosecution during the pendency of these chapter 11 cases.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their officers, directors, and executives from devoting their full attention to the Debtors' business and the orderly administration of the chapter 11 cases.  The Debtors believe that these distractions would materially and adversely affect their ability to operate in the ordinary course of business and to administer these chapter 11 cases, with resulting detriment to any parties in interest.

50.    In other chapter 11 cases, courts in this District and others have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described in this Motion.[6]  For these reasons, the Debtors submit that the relief requested is essential, appropriate, and in the best interests of its estate and creditors, and any parties in interest, and therefore, should be granted.

---

[6] *See, e.g., In re F-Squared Inv. Mgmt., LLC*, Case No. 15-11469 (LSS) (Bankr. D. Del. July 9, 2015 and Aug. 10, 2015) (D.I. 25, 123); *In re Cal Dive Int'l, Inc.* Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015 and Mar. 27, 2015) (D.I. 66, 160); *In re Endeavour Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Oct. 15, 2014 and Nov. 7, 2014) (D.I. 55, 161); *In re Phoenix Payment Systems, Inc.*, Case No. 14-11848 (MFW) (Bankr. D. Del. Aug. 5, 2014) (D.I. 37); *In re USEC Inc.*, Case No. 14-10475 (CSS) (Bankr. D. Del. Mar. 7, 2014) (D.I. 54); *In re Quantum Foods, LLC*, Case No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014 and Mar. 12, 2014) (D.I. 39, 121); *In re Event Rentals, Inc.*, Case No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014) (D.I. 42); *In re Constar International Holdings LLC*, Case No. 13-13281 (CSS) (Bankr. D. Del. Dec. 20, 2013 and Jan. 9, 2014) (D.I. 60, 169); *In re F&H Acquisition Corp.*, Case No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013) (D.I. 54); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013 and Dec. 6, 2013) (D.I. 42, 105); *In re EWGS Intermediary, LLC*, Case No. 13-12876 (MFW) (Bankr. D. Del. Nov. 5, 2013 and Dec. 3, 2013) (D.I. 40, 147); *In re Velti Inc.*, Case No. 13-12878 (PJW) (Bankr. D. Del. Nov. 5, 2013 and Dec. 2, 2013) (D.I. 23, 114); *In re NE OPCO, Inc.*, Case No. 13-11483 (CSS) (Bankr. D. Del. June 6, 2013 and July 11, 2013) (D.I. 36, 150).

**E.      Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm**

51.      Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[7]

52.      The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## RESERVATION OF RIGHTS

53.      Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

---

[7] *See* the First Day Declaration filed concurrently with this Motion.

RLF1 13819196v.1

## NOTICE

54.    The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (iv) counsel to GACP Finance Company, LLC, as Term Agent; (v) counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271 (Attn: Margery A. Colloff, Esq.); (vi) John A. Bicks, Esq., K&L Gates, as counsel to certain secured noteholders, and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m). Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/hancockfabrics.com.

55.    As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR MOTION

56.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

RLF1 13819196v.1

The Debtors respectfully request entry of interim and final orders granting the relief requested and any other relief as is just and proper.

Dated:      February 2, 2016
            Wilmington, Delaware

                                        */s/ Michael J. Merchant*
                                        **RICHARDS, LAYTON & FINGER, P.A.**
                                        Mark D. Collins (No. 2981)
                                        Michael J. Merchant (No. 3854)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, DE  19801
                                        Telephone:   (302) 651-7700
                                        Facsimile:   (302) 651-7701

                                        - and -

                                        **O'MELVENY & MYERS LLP**
                                        Stephen H. Warren (*pro hac vice* pending)
                                        Karen Rinehart (*pro hac vice* pending)
                                        Michael S. Neumeister (*pro hac vice* pending)
                                        400 South Hope Street
                                        Los Angeles, CA  90071-2899
                                        Telephone:   (213) 430-6000
                                        Facsimile:   (213) 430-6407

                                        Proposed Attorneys for the
                                        Debtors and Debtors in Possession

23

## Exhibit A

### Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------x

In re:                                          :    Chapter 11
                                                :
HANCOCK FABRICS, INC., *et al.*,[1]             :    Case No. 16-_____ (___)
                                                :
                              Debtors.          :
                                                :    Joint Administration Requested
                                                :
                                                :

----------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND (B) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED PROGRAMS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"):  (i) authorizing the Debtors, in the exercise of their business judgment, as deemed necessary to continue to operate and preserve value, to (a) pay all prepetition wages, salaries, commissions, other compensation, and related administration and other incidental costs (all as described below and collectively, the "**Employee Compensation Obligations**") and prepetition employee benefits (all as described below and collectively, the "**Employee Benefit Obligations**"), (b) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law, (c) pay all employment, unemployment, Social Security, and similar federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

whether withheld from wages or paid directly by the Debtors to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including without limitation retirement and other employee benefit plan contributions, garnishments, and voluntary deductions(all as described below, and collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**," and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"), and (d) honor and continue their prepetition programs, policies, and practices as described in the Motion with respect to the Prepetition Employee Obligations in the ordinary course of business and (ii) authorizing all financial institutions to receive, honor, process, and pay any and all checks and wire transfers drawn on the Debtors' accounts in satisfaction of the Prepetition Employee Obligations; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estate, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estate and creditors, and any parties in interest; and that the legal and factual bases set forth in

RLF1 13819196v.1

the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein. The final hearing (the "**Final Hearing**") on the Motion will be held on _____, 2016, at\_\_:\_\_ \_.m. (prevailing Eastern Time). Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2016, and served on the following parties: (i) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.); (ii) O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071 (Attn: Stephen H. Warren, Esq. and Karen Rinehart, Esq.), proposed co-counsel to the Debtors; (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq., and Michael J. Merchant, Esq.), proposed co-counsel to the Debtors; (iv) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq. and Sean Monahan, Esq.), counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (v) Paul Hastings LLP, 75 East 55th Street, New York NY 10022 (Attn: Leslie Plaskon, Esq.), counsel to GACP Finance Company LLC, as Term Agent; (vi) Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, NY 10271 (Attn: Margery A. Colloff, Esq.), counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017; (vii) K&L Gates LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: John A. Bicks, Esq.), counsel to certain secured noteholders and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m). A copy of the Motion and this Order will be served on the foregoing parties and all parties having filed requests for notices in these

3

chapter 11 cases. Due to the nature of the relief requested in the Motion, no other or further notice need be given. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

2.      The Debtors are authorized in the exercise of their business judgment, and subject to the limitations set forth in Bankruptcy Code section 507(a)(4), (a)(5) and (a)(8) pending entry of a final order approving the relief requested in the Motion, to (i) pay or otherwise honor all Prepetition Employee Obligations in an amount not to exceed the Interim Amount; (ii) honor and continue their programs, policies, and practices with respect to the Prepetition Employee Obligations that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtors honored and continued such programs, policies, and practices prior to the Petition Date, including without limitation direct payment of or reimbursement for Business-Related Expenses; and (iii) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law; **provided**, **however**, that the Debtors not pay any amounts under severance, incentive or retention plans, absent further order of the Court.

3.      Nothing in the Motion or this Order shall be deemed as authorizing or approving any payment or transfers subject to Bankruptcy Code section 503(c).

4.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for Prepetition Employee Obligations that had not been honored and paid as of the Petition Date (or to reissue checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary),

4

and are authorized to rely on the representations of the Debtors as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments. Further, the Debtors' banks and financial institutions are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Prepetition Employee Obligations, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such transfers.

5.      The Debtors are authorized to reissue payment for the Prepetition Employee Obligations and to replace any inadvertently dishonored or rejected payments. Further, the Debtors are authorized to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

6.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission of the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

7.      Nothing herein amends that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the Debtors, Wells Fargo Bank, N.A. as Administrative Agent, Collateral Agent and Swing Line Lender, and GACP Finance Co., LLC, as Term Agent (the "**DIP Credit Agreement**") (including without limitation

5

any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

        8.      The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

        9.      Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

        10.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

        11.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated:      _____, 2016
           Wilmington, Delaware

                     _____
                     UNITED STATES BANKRUPTCY JUDGE

RLF1 13819196v.1

## Exhibit B

### Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------x

In re:                                          :          Chapter 11
                                                :
HANCOCK FABRICS, INC., *et al.*,[1]             :          Case No. 16-_____ (___)
                                                :
                        Debtors.                :
                                                :          Joint Administration Requested
                                                :

-----------------------------------------------------------X

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
(A) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND
(B) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-
RELATED PROGRAMS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS ALL RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this

"**Order**"):  (i) authorizing the Debtors, in the exercise of their business judgment, as deemed

necessary to continue to operate and preserve value, to (a) pay all prepetition wages, salaries,

commissions, other compensation, and related administration and other incidental costs (all as

described below and collectively, the "**Employee Compensation Obligations**") and prepetition

employee benefits (all as described below and collectively, the "**Employee Benefit**

**Obligations**"), (b) withhold all federal, state, and local taxes relating to the Employee

Compensation Obligations and Employee Benefit Obligations as required by applicable law,

(c) pay all employment, unemployment, Social Security, and similar federal, state, and local

taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

RLF1 13819196v.1

whether withheld from wages or paid directly by the Debtors to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including without limitation retirement and other employee benefit plan contributions, garnishments, and voluntary deductions (all as described below, and collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**," and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"), and (d) honor and continue their prepetition programs, policies, and practices as described in the Motion with respect to the Prepetition Employee Obligations in the ordinary course of business and (ii) authorizing all financial institutions to receive, honor, process, and pay any and all checks and wire transfers drawn on the Debtors' accounts in satisfaction of the Prepetition Employee Obligations; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and that this Court may enter a final order consistent with Article III of the United States Constitution; and hearings having been held to consider the relief requested in the Motion on an interim basis and on a final basis (together the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis; and upon the First Day Declaration, the record of the Hearings, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estate and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      The Debtors are authorized, in the exercise of their business judgment, and subject to the limitations set forth in Bankruptcy Code section 507(a)(4), (a)(5) and (a)(8), to (i) pay or otherwise honor all Prepetition Employee Obligations; (ii) honor and continue their programs, policies, and practices with respect to the Prepetition Employee Obligations that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtors honored and continued such programs, policies, and practices prior to the Petition Date, including without limitation direct payment of or reimbursement for Business-Related Expenses; and (iii) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law; *provided, however*, that the Debtors not pay any amounts under severance, incentive or retention plans, absent further order of the Court.

3.      Nothing in the Motion or this Order shall be deemed as authorizing or approving any payment or transfers subject to Bankruptcy Code section 503(c).

4.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for Prepetition Employee Obligations that had not been honored and paid as of the Petition Date (or to reissue checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the representations of the Debtors as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject

3

to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments. Further, the Debtors' banks and financial institutions are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Prepetition Employee Obligations, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such transfers.

5.      The Debtors are authorized to reissue payment for the Prepetition Employee Obligations and to replace any inadvertently dishonored or rejected payments. Further, the Debtors are authorized to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

6.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission of the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

7.      Nothing herein amends that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the Debtors, Wells Fargo Bank, N.A. as Administrative Agent, Collateral Agent and Swing Line Lender, and GACP Finance Co., LLC, as Term Agent (the "**DIP Credit Agreement**") (including without limitation any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

8.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

9.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

11.     This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.


Dated:   Wilmington, Delaware
            _____, 2016

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

RLF1 13819196v.1