## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                              :          Chapter 11
                                                    :
HANCOCK FABRICS, INC., *et al.*,[1]                 :          Case No. 16-_____ (___)
                                                    :
                          Debtors.                  :
                                                    :          Joint Administration Requested
                                                    :
                                                    :

------------------------------------------------------------x

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Hancock Fabrics, Inc. ("**Hancock Fabrics**") and its affiliated debtors and debtors

in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders

(i) authorizing the Debtors to continue to use their centralized cash management system (the

"**Cash Management System**") and bank accounts, as set forth below; (ii) waiving certain bank

account and related requirements of the Office of the United States Trustee (the "**U.S. Trustee**");

(iii) authorizing the Debtors to continue their existing deposit practices under the Cash

Management System (subject to certain reasonable changes to the Cash Management System that

the Debtors may implement, including as required under that certain Debtor-in-Possession Credit

Agreement dated on or about February 2, 2016 by and among, *inter alia*, the debtors, Wells

Fargo Bank, N.A. ("**Wells Fargo**") as Administrative Agent, Collateral Agent and Swing Line

Lender, and GACP Finance Co., LLC, ("**GACP**") as Term Agent (the "**DIP Credit**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

Agreement") (as discussed below)); (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Dennis Lyons in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Motion.  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409 and Local Rules 2015-2 and 4001-3.  This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

2.      On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.      The Debtors operate more than 260 stores in 37 states under the name of "Hancock Fabrics," a large national fabric and specialty retailer offering an extensive selection of high-quality fashion and home decorating textiles, sewing accessories, needlecraft supplies and sewing machines, along with in-store sewing advice.  Founded in 1957, the Debtors' corporate headquarters and national distribution center are located in Baldwyn, Mississippi.

---

[2] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

OMM_US:74640713.10
RLF1 13819258v.1

4. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

5. By this Motion, the Debtors request entry of interim and final orders—as proposed in Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**") respectively— under Bankruptcy Code sections 105(a), 345, and 363(c) and Federal Rules of Bankruptcy Procedure 6003 and 6004 authorizing the Debtors to continue to use their Cash Management System in the ordinary course and granting them related relief.

6. Specifically, the Debtors seek authority to (i) maintain and continue to use the bank accounts listed on Exhibit C to this Motion (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

7. To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request their banks be authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account

3

of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, and in reliance on the Debtors' representations of such authority, provided the applicable Debtor Bank Accounts contain sufficient funds.

8.      Continuity of the Cash Management System is critical, but so is a measure of flexibility. To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that they deem necessary or appropriate in the ordinary course, including closing any Debtor Bank Account, and that the applicable banks be authorized to honor such changes.

9.      Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued checks before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that their banks be authorized and directed to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. And because the banks are not in position to independently verify or audit whether they may honor a particular Court-approved prepetition Disbursement, the Debtors further request that the Court's orders specify that no bank will be liable to the Debtors or their estates, or otherwise be in violation of such orders, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

10.      Finally, the Debtors request authority to continue, in the ordinary course, certain transactions between and among the Debtors (the "**Intercompany Transactions**"). The Intercompany Transactions, as described below, are necessary to maintaining control over cash

management among the Debtors and avoiding substantial disruption to the Debtors' business, and provide substantial benefits to the Debtors and their estates.

11.     The Debtors have filed the First Day Declaration, which establishes that the Debtors will suffer immediate and irreparable harm if the relief requested in this Motion is not granted.

## BASIS FOR RELIEF REQUESTED

## I.     FACTS SPECIFIC TO RELIEF REQUESTED

### A.     Overview of the Cash Management System

12.     The Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these cases and, in turn, maximizing the value of the Debtors' estates.  Like typical chapter 11 debtors, the Debtors use the Cash Management System to collect cash from operations and to make cash disbursements—primarily payroll and payments to vendors—to manage their businesses.  The Cash Management System also serves a strategic function, facilitating the Debtors' cash monitoring, forecasting, and reporting, and enabling the Debtors to control administration of their bank accounts.  Recognizing the importance of the Cash Management System, the Debtors take care to record all collections, transfers, and disbursements made through the Cash Management System as and when made.

13.     The Debtor Bank Accounts are the hub of the Cash Management System. We discuss the Debtor Bank Accounts and other important features of the Cash Management System below.  For demonstrative purposes, a diagram illustrating the Cash Management System is attached as Exhibit D hereto.

5

B.    **The Debtors' Bank Accounts**

14.    The Debtors maintain 8 corporate bank accounts at Bancorp South and 260 individual store accounts as shown in Exhibit C hereto.  Each Debtor Bank Account is insured by the Federal Deposit Insurance Corporation ("**FDIC**").

15.    *The Concentration Account.*  The main depository account of the Cash Management System is the Debtors' concentration account (the "**Concentration Account**"), which receives most revenue generated by the Debtors, including without limitation (i) daily cash and check deposits and automated clearing house and electronic transfers from the Debtors' retail stores,[3] (ii) receipts from American Express[4] and Discover credit card sales at the Debtors' retail stores, (iii) credit cards receipts from Mastercard and Visa sales at the Debtors' retail stores, which receipts are deposited from the retail locations directly into the Debtors' merchant processor account maintained at Bancorp South pursuant to the Debtors' Payment Device Processing Agreement with merchant processor Elavon, Inc.[5] (the "**Elavon Account**") and then deposited from the Elavon Account into the Concentration Account net of holdbacks, processing fees and other charges and (iv) insurance and other proceeds.  The Concentration Account is swept daily via electronic transfer to repay Wells Fargo  and GACP pursuant to the terms of that certain Credit Agreement dated as of April 22, 2015 (as amended, the "**Wells/GACP Facility**").  In order to fund the Debtors' business operations, funds requested by the Debtors for the purposes described below are now transferred from the Wells/GACP Facility into the Operating

---

[3] The Debtors maintain petty cash in an approximate average amount of less than $500 at each retail location for register drawer cash and de minimis store operating expenses.

[4]  The Debtors maintain a merchant processing account with the American Express Travel Related Services Company, Inc. and reserve all rights, claims and defenses with respect thereto.

[5] The Debtors reserve all rights, claims and defenses with respect thereto, including without limitation entitlement to the Debtors' funds in the approximate amount of $200,000. which  Elavon, Inc. is presently holding as a claimed security reserve.

OMM_US:74640713.10
RLF1 13819258v.1

Account (as defined below) upon request by the Debtors and acceptance of such request by Wells and GACP.

16.    *The Operating Account*:  The Debtors' primary operating account (the "**Operating Account**"), held by debtor Hancock Fabrics, Inc., serves critical functions.  First, the Debtors use the Operating Account to disburse funds into the Payroll Accounts and the Disbursement Account (each defined below) and make related tax payments.  Electronic payments are made directly from the Operating Account; where vendors or suppliers present hard-copy checks issued by the Debtors, those checks are honored via funds transferred from the Operating Account to linked Bancorp South checking accounts.  Additionally, as described more fully below, the Debtors use the Operating Account to make Intercompany Transactions between and among certain Debtor entities.

17.    *The Payroll Accounts*:  The Debtors fund payroll and payroll taxes from two dedicated accounts (one for salaried employees and one for hourly employees) maintained by debtor Hancock Fabrics, Inc. at Bancorp South (collectively, the "**Payroll Accounts**").  To make these payments, the Debtors initiate electronic transfers or issue manual disbursements to employees and taxing authorities from the applicable Payroll Account.  Funds are automatically transferred from the Holding Account to the Payroll Accounts as requests for payment are presented.[6]

18.    *The Disbursement Account*:  The Debtors maintain a disbursement account (the "**Disbursement Account**") for payment of vendor accounts payable, other non-payroll-

---

[6] The Debtors' payroll obligations are described in greater detail in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Employee Compensation and Benefits and (B Maintain and Continue Such Benefits and Other Employee-Related Programs and (II) Authorizing Financial Institutions to Honor and Process all Related Checks and Transfers*, filed contemporaneously with this Motion.

OMM_US:74640713.10
RLF1 13819258v.1

related payments, and disbursements related to their business operations, including non-payroll distribution center activities.

19.     *Pension Benefits and Services Accounts*:    The Debtors maintain two separate bank accounts with respect to pension plan benefits and services (the "**Pension Benefits and Services Accounts**").    The Debtors act solely as a disbursing agent with respect to the Pension Benefits and Services Accounts; the balances maintained therein are funded solely by the pension plans.

20.     *HF Enterprises and HF Resources Accounts*:    Debtors HF Enterprises, Inc. ("**HF Enterprises**") and HF Resources, Inc. ("**HF Resources**") maintain separate Bancorp South checking accounts.    The funds that comprise the balances within these checking accounts are generated by certain intercompany transfers wherein (i) Debtor Hancock Fabrics, Inc. ("**HFI**") pays royalties from the Operating Account to HF Enterprises for the licensed use of certain trade names, (ii) HF Enterprises issues a dividend to HF Resources, (iii) HF Resources issues loans to HFI and (iv) HFI makes interest payments to HF Resources in connection with the loans.    These accounts have limited activity.

21.     *Inactive Deposit Account*:    Finally, the Debtors also maintain six inactive deposit accounts at Wells Fargo Bank, N.A.

## C.    Bank Fees

22.     The Debtors pay, honor, or allow the deduction from the Debtor Bank Accounts service charges and other fees, costs, and expenses arising in the ordinary course (collectively, the "**Bank Fees**").    The Debtors estimate that they pay average monthly Bank Fees of approximately $55,000 and that they owe prepetition Bank Fees of approximately $30,000.

8

The Debtors' inability to pay prepetition or post-petition Bank Fees in the ordinary course could disrupt the Cash Management System and harm the Debtors' estates.

### D.    Intercompany Transactions

23.    Historically, the Debtors have engaged in intercompany transactions (the "**Intercompany Transactions**"), including without limitation those related to the HF Resources and HF Enterprises Accounts, largely to centralize cash management and maintain control over the funds moving between the debtor entities.    The Debtors believe that continuing the Intercompany Transactions in the ordinary course is critical to preserving value.

24.    Just as the Debtors can ascertain, trace, and account for all fund transfers in their accounting system, they also carefully and accurately track Intercompany Transactions. Indeed, during these cases, the Debtors intend to segregate and separately track post-petition Intercompany Transactions and include a detailed accounting of such Intercompany Transaction in the Debtors' monthly operating reports.

25.    If the Intercompany Transactions were discontinued, the Cash Management System and the operations of the Debtors would be harmed to the detriment of the Debtors and their estates.

## II.    LEGAL BASIS FOR RELIEF REQUESTED

### A.    The Debtors Should Be Authorized to Continue to Use Their Existing Cash Management System and Bank Accounts Under Bankruptcy Code Sections 363(c) and 105(a)

26.    Bankruptcy Code section 363(c)(1) permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor flexibility to operate its businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily

9

operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." (internal quotation omitted)). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" a debtor's cash management system require. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)). Additionally, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

27. The relief this Motion requests is consistent with these Bankruptcy Code provisions. The Debtors seek authority to continue to use their Cash Management System and the Debtor Bank Accounts consistent with prepetition practices. The Cash Management System is an ordinary-course and essential business practice that provides the Debtors significant benefits. Through the Cash Management System, the Debtors maintain the ability to control corporate funds, ensuring maximum availability of funds when and where necessary. The Cash Management System also reduces administrative burden expense by facilitating the global movement of funds across the Debtors. Continued use of the Cash Management System and the Debtor Bank Accounts during these chapter 11 cases is essential to the Debtors' businesses and maximizing value of their estates. Requiring the Debtors to adopt new cash management systems and open new bank accounts would be expensive, onerous, and disruptive. As one court

10

in this District recognized, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

28.    The Debtors represent that if the Court grants this Motion, they will not pay, and each of the banks will be directed not to pay, any prepetition claims, except as the Court authorizes.    Maintaining the Cash Management System and Debtor Bank Accounts without disruption is in the best interests of the Debtors, their estates, and all interested parties.    Based on the foregoing, the Court should grant the Debtors the authority under Bankruptcy Code sections 363(c) and 105(a) to continue the collection, concentration, and disbursement of cash under their Cash Management System.

**B.**    **The Debtors Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee Under Bankruptcy Code Sections 363 and 105(a)**

29.    The Debtors further request that this Court grant a waiver of certain bank account and related U.S. Trustee requirements.    The U.S. Trustee has established operating guidelines for debtors in possession to supervise the administration of chapter 11 cases.    These guidelines require a chapter 11 debtor to, among other things (the requirements set forth in (a) through (e) below collectively, the "**UST Requirements**"):

(a)    close all existing bank accounts;

(b)    open new bank accounts in a depositary approved by the U.S. Trustee that are designated as DIP Accounts, with separate DIP Accounts established for an operating account, a tax account, and a payroll account;

(c)    obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor In Possession" and contain other information about the debtor's chapter 11 case;

OMM_US:74640713.10
RLF1 13819258v.1

(d)    deposit all business revenues into the general operating DIP Account, with amounts needed to fund the other accounts being transferred to those accounts as necessary; and

(e)    deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

The UST Requirements are designed to provide a clear line of demarcation between a debtor's prepetition and post-petition transactions and operations, and to prevent inadvertent post-petition payment of prepetition claims.

30.    Under Bankruptcy Code sections 363 and 105(a), the Debtors seek a waiver of the UST Requirements that they close the Debtor Bank Accounts and open new DIP Accounts. As discussed above, continued use of the Debtor Bank Accounts is essential to maximizing value of the Debtors' estates and is in the best interests of all parties. Among other things, the continued use of the Debtor Bank Accounts prevents disruption to direct customer payments into these accounts and facilitates speed of collection for accounts receivables. As set forth above, the Debtors do, however, request the authority to open any new bank accounts or close any existing bank accounts as they may deem necessary and appropriate in the ordinary course, provided that the Debtors give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases, and provided further that the Debtors open any such new bank account at banks that have executed a Uniform Depositary Agreement with the U.S. Trustee, or at such banks willing to immediately execute such an agreement.

31.    The Debtors also seek a waiver of the UST Requirement to establish specific DIP Accounts for payroll and for tax payments and to deposit into the tax accounts sufficient funds to pay any payroll tax liability (when incurred). The Debtors believe that their payroll and tax obligations are most efficiently met through the Debtor Bank Accounts in

12

accordance with existing practices, and that requiring new payroll and tax DIP Accounts would be both unnecessary and highly disruptive to their businesses. The Debtors are—and expect to remain—current on all payroll taxes.[7] Requiring the Debtors to change their existing practices and deposit sufficient funds to pay any tax liability associated with the Debtors' payroll would, therefore, be unnecessary and inefficient. Further, the Debtors will ensure that the U.S. Trustee can appropriately monitor that the Debtors' payroll taxes are satisfied.

33.    To minimize expense, the Debtors seek authority to continue using checks, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession.    The Debtors also seek authority to use all correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession.[8]

33.    As required, the Debtors are providing notice of the commencement of these cases to creditors and parties in interest. Parties doing business with the Debtors, therefore, should be aware of the Debtors' status as debtors in possession. Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates. Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing check stocks and all

---

[7] As noted above, the Debtors have concurrently filed a motion for authority to continue paying employee wages, benefits, and related taxes.

[8] Although the UST Requirements would require the Debtors to obtain and use new checks bearing the "Debtor In Possession" designation, the Debtors do not believe that the UST Requirements impose any limitation on the Debtors' other correspondence and business forms. Nevertheless, out of an abundance of caution, the Debtors seek authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

correspondence and business forms without being required to label them "Debtor In Possession;" provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of entry of the Interim Order.

34.    As indicated above, the Cash Management System is an ordinary course and essential business practice. Compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements outlined above would risk disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for any parties in interest.

### C.    The Debtors Should Be Authorized to Continue Their Deposit Practices Under Bankruptcy Code Section 345

35.    Bankruptcy Code section 345(a) governs a debtor's deposit of cash during a chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a). If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety. *Id.* § 345(b). Alternatively, the estate may require the entity to deposit governmental securities under 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.

14

36.     While the Debtors believe they are in compliance with Bankruptcy Code section 345(b), to the extent they are not, the Debtors submit that given their limited liquidity and need to conserve cash, incurring administrative expense complying with section 345(b) would unnecessarily drain scarce resources.  As noted above, each of the Debtor Bank Accounts is insured by the FDIC and, as such, comply with Bankruptcy Code section 345(b).  The Debtors also believe that, under their investment practices, all deposits and investments are made into deposit accounts, money market accounts, and other investment vehicles that in turn invest only in assets, securities or other instruments insured or guaranteed or collateralized by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States.  The Debtors request that such deposit practices be deemed to satisfy Bankruptcy Code section 345(b).

37.     To the extent that any banks in which the Debtors maintain accounts have not signed a Uniform Depositary Agreement with the U.S. Trustee and to the extent the Debtors as of the Petition Date do not otherwise comply with deposit and investment guidelines under Bankruptcy Code section 345(b), the Debtors request a 30-day extension (or such further extension as the U.S. Trustee may agree to) to do so.  During the extension period, the Debtors propose to engage the U.S. Trustee in discussions to determine if compliance with section 345(b)—to the extent not already met—and other U.S. Trustee requirements (to the extent not waived) is necessary or appropriate.

38.     The Debtors believe that the benefits of the requested extension far outweigh any harm to the estates.  *See generally In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists for "relief from the strictures of § 345(b)" is whether benefits to the debtor outweigh

the harm, if any, to the estate). During the extension period, the Debtors will contact each of their banks that is a party to a Uniform Depository agreement with the U.S. Trustee, provide such banks with each of the Debtors' tax identification numbers, and identify each of their bank accounts at the banks as being held by a debtor in possession. For banks that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors will use good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee. The Debtors' deposits and investments are prudent and designed to yield the maximum reasonable net return on the funds deposited or invested, taking into account the safety of such deposits and investments. The Debtors operate sophisticated businesses and hold their funds at reputable, stable banking institutions and monitor their cash flows and positions on a daily basis.

39.    Similar extensions have been granted in other chapter 11 cases in this District and elsewhere.[9] Requiring the Debtors to modify their Cash Management System to strictly adhere with the deadline to comply with the requirements established by Bankruptcy Code section 345(b) will only distract the Debtors' management and cause the Debtors' estates to incur potentially substantial costs unnecessarily to the detriment of all creditors. Based on the foregoing, the Debtors submit that the relief requested is in the best interests of their estates and any interested parties, and, therefore, should be granted.

---

[9] *See, e.g., In re OLD FOH, Inc. (f/k/a Frederick's of Hollywood, Inc.*), No. 15-10836 (KG) (Bankr. D. Del. Apr. 21, 2015) (D.I. 51) (granting 30-day extension); *In re Cal Dive Int'l, Inc.*, No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015) (D.I. 67) (granting 30-day extension); *In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149) (granting 30-day extension); *In re Energy Futures Holding Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Apr. 29, 2014) (D.I. 304) (granting 60-day extension); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014) (D.I. 77) (granting 60-day extension); *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014) (D.I. 38) (granting 45-day extension); *In re Event Rentals Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 20, 2014) (D.I. 48) (granting 60-day extension).

**D.    The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business**

40.    As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course.    As a result, at any given time there may be intercompany claims between the Debtors.    Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors, the Intercompany Transactions are ordinary course transactions under Bankruptcy Code section 363(c)(1) and do not require Court approval.    Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions post-petition.

41.    Moreover, ordinary-course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets.    Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed.    The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources.    Moreover, the Intercompany Transactions provide the Debtors access to liquidity that may be necessary to fund ongoing operations.    Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

**E.    Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm**

42.    Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.    Here, the relief requested is necessary to avoid immediate and irreparable harm to the

OMM_US:74640713.10
RLF1 13819258v.1

Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[10]

43.   The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## RESERVATION OF RIGHTS

44.   Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

45.   The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties listed in Exhibit C hereto;  (iii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iv) counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (v) counsel to GACP Finance Company, LLC, as Term Agent; (vi) counsel to Deutsche Bank National Trust Company, as

---

[10] *See* the First Day Declaration filed concurrently with this Motion.

OMM_US:74640713.10
RLF1 13819258v.1

trustee under the indenture for the Floating Rate Series A Secured Notes due 2017; (vii) John A. Bicks, Esq., K&L Gates, as counsel to certain secured noteholders, and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m). Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/hancockfabrics.com.

46.    As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR MOTION**

47.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

OMM_US:74640713.10
RLF1 13819258v.1

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated:    February 2, 2016
          Wilmington, Delaware

                                        */s/ Michael J. Merchant*
                                        **RICHARDS, LAYTON & FINGER, P.A.**
                                        Mark D. Collins (No. 2981)
                                        Michael J. Merchant (No. 3854)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, DE  19801
                                        Telephone:   (302) 651-7700
                                        Facsimile:    (302) 651-7701

                                        - and -

                                        **O'MELVENY & MYERS LLP**
                                        Stephen H. Warren (*pro hac vice* pending)
                                        Karen Rinehart (*pro hac vice* pending)
                                        Michael S. Neumeister (*pro hac vice* pending)
                                        400 South Hope Street
                                        Los Angeles, CA  90071-2899
                                        Telephone:   (213) 430-6000
                                        Facsimile:    (213) 430-6407

                                        Proposed Attorneys for the
                                        Debtors and Debtors in Possession

## Exhibit A

## Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                        :        Chapter 11
                                              :
HANCOCK FABRICS, INC., *et al.*,[1]           :        Case No. 16-_____ (____)
                                              :
                    Debtors.                  :
                                              :        Joint Administration Requested
                                              :
                                              :

------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this

"**Order**"):  (i) authorizing the Debtors to continue to use their centralized cash management

system (the "**Cash Management System**") and bank accounts located at various banks, as more

fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the

Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**");

(iii) authorizing the Debtors to continue their existing deposit practices under the Cash

Management System (subject to certain reasonable changes to the Cash Management System that

the Debtors may implement, including as required under that certain Debtor-in-Possession Credit

Agreement dated on or about February 2, 2016 by and among, *inter alia*, the debtors, Wells

Fargo Bank, N.A. ("**Wells Fargo**") as Administrative Agent, Collateral Agent and Swing Line

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Lender, and GACP Finance Co., LLC, ("**GACP**") as Term Agent (the "**DIP Credit Agreement**"); (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion will be held on _____, 2016, at__:__ _.m. (prevailing Eastern Time). Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2016, and served on the following parties: (i) the Office of the

2

United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North

King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.); (ii)  O'Melveny &

Myers LLP, 400 South Hope Street, Los Angeles, CA 90071 (Attn: : Stephen H. Warren, Esq.

and Karen Rinehart, Esq.), proposed co-counsel to the Debtors; (iii) Richards, Layton & Finger,

P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D.

Collins, Esq., and Michael J. Merchant, Esq.), proposed co-counsel to the Debtors; (iv) Choate,

Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq.

and Sean Monahan, Esq.), counsel to Wells Fargo Bank, National Association, as Administrative

and Collateral Agent; (v) Paul Hastings LLP, 75 East 55th Street, New York NY 10022 (Attn:

Leslie Plaskon, Esq.), counsel to GACP Finance Company LLC, as Term Agent; (vi) Emmet,

Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, NY 10271 (Attn: Margery A.

Colloff, Esq.), counsel to Deutsche Bank National Trust Company, as trustee under the indenture

for the Floating Rate Series A Secured Notes due 2017; (vii) K&L Gates LLP, 599 Lexington

Avenue, New York, NY 10022 (Attn: John A. Bicks, Esq.), counsel to certain secured

noteholders and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m).   A copy of

the Motion and this Order will be served on the foregoing parties and all parties having filed

requests for notices in these chapter 11 cases.   Due to the nature of the relief requested in the

Motion, no other or further notice need be given.   In the event no objections to entry of a final

order on the Motion are timely received, this Court may enter such final order without need for

the Final Hearing.

        3.     Except as otherwise provided herein, the Debtors are authorized to

continue to maintain and use their Cash Management System and bank accounts consistent with

their prepetition practices.

4.     Subject to the requirements of the DIP Credit Agreement, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of their bank accounts. The banks are authorized to honor the Debtors' requests to close such bank accounts in connection with authorized changes to the Cash Management System.

5.     The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on Exhibit C to the Motion (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

6.     All banks are authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, payment orders or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, provided the applicable Debtor Bank Accounts contain sufficient funds.

RLF1 13819258v.1

7.      All banks at which the Debtors maintain one or more Debtor Bank Accounts are authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such bank's counters or exchanged for cashier's checks by the payees thereof prior to the bank's receipt of notice of filing of the Debtors' chapter 11 petitions; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtors' accounts with such bank prior to filing of the Debtors' chapter 11 petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the Debtors' chapter 11 petitions; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any of such banks as service charges for the maintenance of the Cash Management System.

8.      All banks may rely on, and are authorized to accept and honor, all representations from the Debtors as to which of these Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court. No bank will be liable to the Debtors or their estates, or otherwise be in violation of the orders of this Court, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

9.      The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

10.     In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and

5

distinguished between prepetition and post-petition transactions on intercompany accounts, and shall make such records available to the DIP Agent upon reasonable request.

11.    The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived.  The Debtor Bank accounts are deemed to be DIP Accounts.

12.    The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

13.    The Debtors are authorized to continue using all checks, correspondence, and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

14.    For cash management banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases.   For cash management banks that have signed a Uniform

6

Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

15.    Within 15 days of the date of entry of this Order, with respect to banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each bank; (ii) provide the bank with each of the Debtors' tax identification numbers; and (iii) identify each of their bank accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

16.    Within 30 days of the date of entry of this Order, with respect to banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee. The Debtors will promptly direct such banks to internally code the Debtors' bank accounts as DIP Accounts. The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17.    To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; **provided, further**, however that the Debtors open any such new bank account at banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

18.     Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

19.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

20.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

21.     Nothing herein amends the DIP Credit Agreement (including without limitation any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

22.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

RLF1 13819258v.1

24. This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2016
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                :      Chapter 11
                                                      :
HANCOCK FABRICS, INC., *et al.*,[1]                    :      Case No. 16-_____ (____)
                                                      :
Debtors.                                              :
                                                      :      Joint Administration Requested
                                                      :
                                                      :

------------------------------------------------------------x

**FINAL ORDER (I) AUTHORIZING
CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM
AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES
TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE
OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this

"**Order**"):  (i) authorizing the Debtors to continue to use their centralized cash management

system (the "**Cash Management System**") and bank accounts located at various banks, as more

fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the

Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**");

(iii) authorizing the Debtors to continue their existing deposit practices under the Cash

Management System (subject to certain reasonable changes to the Cash Management System that

the Debtors may implement, including as required under that certain Debtor-in-Possession Credit

Agreement dated on or about February 2, 2016 by and among, *inter alia*, the debtors, Wells

Fargo Bank, N.A. ("**Wells Fargo**") as Administrative Agent, Collateral Agent and Swing Line

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563).  The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Lender, and GACP Finance Co., LLC, ("**GACP**") as Term Agent (the "**DIP Credit Agreement**"); (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and hearings having been held to consider the relief requested in the Motion on an interim basis and on a final basis (together the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis; and upon the First Day Declaration, the record of the Hearings, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      Except as otherwise provided herein, the Debtors are authorized to continue to maintain and use their Cash Management System and bank accounts consistent with their prepetition practices.

3.      Subject to the requirements of the DIP Credit Agreement, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of their bank accounts.  The banks are authorized to honor the Debtors' requests to close such bank accounts in connection with authorized changes to the Cash Management System.  Without limiting the foregoing, the Debtors may establish, designate and maintain the Restricted Cash Collateral Account.

4.      The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on Exhibit C to the Motion (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

5.      All banks are authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, payment orders or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account

3

of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, provided the applicable Debtor Bank Accounts contain sufficient funds.

6.     All banks at which the Debtors maintain one or more Debtor Bank Accounts are authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such bank's counters or exchanged for cashier's checks by the payees thereof prior to the bank's receipt of notice of filing of the Debtors' chapter 11 petitions; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtors' accounts with such bank prior to filing of the Debtors' chapter 11 petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the Debtors' chapter 11 petitions; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any of such banks as service charges for the maintenance of the Cash Management System.

7.     All banks may rely on, and are authorized to accept and honor, all representations from the Debtors as to which of these Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court. No bank will be liable to the Debtors or their estates, or otherwise be in violation of the orders of this Court, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

8.     The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

RLF1 13819258v.1

9.      In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and distinguished between prepetition and post-petition transactions on intercompany accounts, and shall make such records available to the DIP Agent upon reasonable request.

10.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived. The Debtor Bank accounts are deemed to be DIP Accounts.

11.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

12.     The Debtors are authorized to continue using all checks, correspondence, and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within ten (10) days of the date of entry of this Order.

13.     For cash management banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply

5

with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For cash management banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

14.     Within 15 days of the date of entry of this Order, with respect to banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each bank; (ii) provide the bank with each of the Debtors' tax identification numbers; and (iii) identify each of their bank accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

15.     Within 30 days of the date of entry of this Order, with respect to banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee. The Debtors will promptly direct such banks to internally code the Debtors' bank accounts as DIP Accounts. The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

16.     To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted pursuant to paragraph 3 hereof, the Debtors shall give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases;

6

**provided, further**, however that the Debtors open any such new bank account at banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

17.    Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

18.    Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

19.    The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

20.    Nothing herein amends the DIP Credit Agreement (including without limitation any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

21.    Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7

22.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

23.     This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Wilmington, Delaware
              _____, 2016
                                          _____
                                          UNITED STATES BANKRUPTCY JUDGE

8

## Exhibit C

### Debtor Bank Accounts List

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| **BANCORPSOUTH ACCOUNTS** | | | |
| HF Inc. | BancorpSouth | 662 | Admin payroll account |
| HF Inc. | BancorpSouth | 513 | Concentration account |
| HF Inc. | BancorpSouth | 803 | GECC as Agent Elavon processing account |
| HF Inc. | BancorpSouth | 405 | Accounts payable |
| HF Inc. | BancorpSouth | 191 | Hourly payroll account |
| HF Inc. | BancorpSouth | 083 | Operating account |
| HF Inc. | BancorpSouth | 018 | Pension benefits account |
| HF Inc. | BancorpSouth | 414 | Relief fund account |
| **INDEPENDENT STORE ACCOUNTS** | | | |
| HF Inc. | Simmons National Bank | 806 | Store 1025 - Metro commercial checking |
| HF Inc. | BancFirst | 544 | Store 1090 - Commercial |
| HF Inc. | First Bank | 197 | Store 1127 account |
| HF Inc. | SunTrust Bank | 406 | Store 1285 account |
| HF Inc. | Bank Of Oklahoma | 575 | Store 1294 account |
| HF Inc. | Commerce Bank | 201 | Store 1358 account |
| HF Inc. | Commerce Bank | 201 | Store 1543 account |
| HF Inc. | First National Bank | 442 | Store 1621 - Business first checking |
| HF Inc. | American National Bank | 708 | Store 1668 - Business value account |
| HF Inc. | BancFirst | 535 | Store 1674 - Commercial |
| HF Inc. | BMO Harris Bank | 910 | Store 1675 - Business checking |
| HF Inc. | First Merit Bank | 425 | Store 1685 - Business pro |
| HF Inc. | PNC Bank | 659 | Store 1696 - Business basic checking |
| HF Inc. | US Bank | 495 | Store 1702 - Gold business checking |
| HF Inc. | Commercial National Bank | 741 | Store 1769 - Business checking |
| HF Inc. | Genoa Bank | 601 | Store 6049 - Small business checking |
| HF Inc. | Associate Bank | 252 | Store 6193 - Business basic checking |
| **STORE ACCOUNTS** | | | |
| HF Inc. | JP Morgan Chase | 887 | Store 1018 account |
| HF Inc. | Wells Fargo | 270 | Store 1031 account |
| HF Inc. | Wells Fargo | 395 | Store 1033 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1036 account |
| HF Inc. | Regions | 909 | Store 1055 account |
| HF Inc. | Wells Fargo | 364 | Store 1056 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1060 account |
| HF Inc. | Regions | 860 | Store 1063 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1082 account |
| HF Inc. | Regions | 852 | Store 1084 account |
| HF Inc. | Wells Fargo | 724 | Store 1085 account |
| HF Inc. | Wells Fargo | 372 | Store 1100 account |

[1] For privacy purposes, only the last three digits of each account number are shown.

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| HF Inc. | JP Morgan Chase | 887 | Store 1116 account |
| HF Inc. | Regions | 917 | Store 1121 account |
| HF Inc. | Regions | 925 | Store 1122 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1123 account |
| HF Inc. | Regions | 933 | Store 1136 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1140 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1146 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1156 account |
| HF Inc. | Wells Fargo | 333 | Store 1161 account |
| HF Inc. | Wells Fargo | 262 | Store 1171 account |
| HF LLC | Wells Fargo LLC | 562 | Store 1174 account |
| HF Inc. | Wells Fargo | 380 | Store 1179 account |
| HF Inc. | Wells Fargo | 398 | Store 1189 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1194 account |
| HF Inc. | Wells Fargo | 341 | Store 1198 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1202 account |
| HF Inc. | Regions | 801 | Store 1203 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1204 account |
| HF Inc. | Wells Fargo | 358 | Store 1208 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1214 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1223 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1232 account |
| HF LLC | Wells Fargo LLC | 570 | Store 1236 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1241 account |
| HF LLC | Wells Fargo LLC | 338 | Store 1249 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1251 account |
| HF Inc. | Wells Fargo | 406 | Store 1257 account |
| HF Inc. | Wells Fargo | 414 | Store 1268 account |
| HF Inc. | Wells Fargo | 422 | Store 1286 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1292 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1295 account |
| HF Inc. | Wells Fargo | 732 | Store 1302 account |
| HF LLC | Wells Fargo LLC | 312 | Store 1305 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1316 account |
| HF Inc. | Regions | 171 | Store 1321 account |
| HF Inc. | Regions | 763 | Store 1330 account |
| HF Inc. | Wells Fargo | 366 | Store 1336 account |
| HF Inc. | Regions | 828 | Store 1366 account |
| HF LLC | Wells Fargo LLC | 864 | Store 1367 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1368 account |
| HF Inc. | Wells Fargo | 031 | Store 1374 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1375 account |
| HF Inc. | Wells Fargo | 575 | Store 1376 account |
| HF Inc. | Wells Fargo | 583 | Store 1379 account |
| HF Inc. | Wells Fargo | 374 | Store 1380 account |
| HF Inc. | Wells Fargo | 641 | Store 1382 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1384 account |

C-2

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| HF Inc. | JP Morgan Chase | 887 | Store 1387 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1402 account |
| HF Inc. | Wells Fargo | 430 | Store 1410 account |
| HF Inc. | Wells Fargo | 708 | Store 1411 account |
| HF LLC | Wells Fargo LLC | 304 | Store 1414 account |
| HF Inc. | Wells Fargo | 254 | Store 1415 account |
| HF Inc. | Wells Fargo | 591 | Store 1420 account |
| HF Inc. | Wells Fargo | 130 | Store 1422 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1429 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1430 account |
| HF Inc. | Wells Fargo | 662 | Store 1433 account |
| HF Inc. | Wells Fargo | 765 | Store 1435 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1440 account |
| HF Inc. | Wells Fargo | 236 | Store 1442 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1443 account |
| HF Inc. | Wells Fargo | 448 | Store 1444 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1445 account |
| HF Inc. | Regions | 941 | Store 1446 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1450 account |
| HF Inc. | Wells Fargo | 609 | Store 1453 account |
| HF Inc. | Wells Fargo | 455 | Store 1460 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1465 account |
| HF LLC | Wells Fargo LLC | 872 | Store 1472 account |
| HF Inc. | Wells Fargo | 617 | Store 1475 account |
| HF Inc. | Regions | 747 | Store 1477 account |
| HF Inc. | Regions | 638 | Store 1484 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1485 account |
| HF Inc. | Wells Fargo | 463 | Store 1487 account |
| HF Inc. | Regions | 428 | Store 1500 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1501 account |
| HF Inc. | Regions | 968 | Store 1505 account |
| HF Inc. | Regions | 879 | Store 1506 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1509 account |
| HF Inc. | Wells Fargo | 046 | Store 1511 account |
| HF Inc. | Regions | 976 | Store 1512 account |
| HF Inc. | Wells Fargo | 757 | Store 1518 account |
| HF LLC | Wells Fargo LLC | 320 | Store 1525 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1529 account |
| HF Inc. | Regions | 798 | Store 1530 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1534 account |
| HF Inc. | Wells Fargo | 471 | Store 1537 account |
| HF LLC | Wells Fargo LLC | 588 | Store 1542 account |
| HF Inc. | Wells Fargo | 615 | Store 1544 account |
| HF Inc. | Wells Fargo | 866 | Store 1549 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1550 account |
| HF Inc. | Wells Fargo | 296 | Store 1551 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1554 account |

C-3

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| HF Inc. | Wells Fargo | 382 | Store 1557 account |
| HF Inc. | Regions | 739 | Store 1559 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1562 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1564 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1572 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1574 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1576 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1577 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1578 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1579 account |
| HF Inc. | Wells Fargo | 623 | Store 1580 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1584 account |
| HF Inc. | Wells Fargo | 497 | Store 1587 account |
| HF Inc. | Regions | 755 | Store 1593 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1594 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1595 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1596 account |
| HF LLC | Wells Fargo LLC | 596 | Store 1598 account |
| HF Inc. | Regions | 984 | Store 1601 account |
| HF Inc. | Wells Fargo | 221 | Store 1603 account |
| HF Inc. | Regions | 531 | Store 1606 account |
| HF Inc. | Wells Fargo | 625 | Store 1607 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1608 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1612 account |
| HF Inc. | Regions | 483 | Store 1615 account |
| HF Inc. | Wells Fargo | 542 | Store 1617 account |
| HF Inc. | Wells Fargo | 567 | Store 1619 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1620 account |
| HF Inc. | Wells Fargo | 098 | Store 1624 account |
| HF Inc. | Wells Fargo | 559 | Store 1625 account |
| HF Inc. | Wells Fargo | 773 | Store 1627 account |
| HF Inc. | Wells Fargo | 505 | Store 1632 account |
| HF Inc. | Regions | 539 | Store 1634 account |
| HF Inc. | Wells Fargo | 991 | Store 1636 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1637 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1638 account |
| HF Inc. | Wells Fargo | 197 | Store 1639 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1645 account |
| HF Inc. | Regions | 852 | Store 1646 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1647 account |
| HF Inc. | Wells Fargo | 849 | Store 1648 account |
| HF Inc. | Wells Fargo | 781 | Store 1649 account |
| HF Inc. | Regions | 836 | Store 1656 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1658 account |
| HF Inc. | Wells Fargo | 799 | Store 1659 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1661 account |
| HF Inc. | Wells Fargo | 633 | Store 1662 account |

C-4

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| HF Inc. | Wells Fargo | 513 | Store 1665 account |
| HF Inc. | Regions | 992 | Store 1666 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1667 account |
| HF Inc. | Regions | 905 | Store 1671 account |
| HF Inc. | Wells Fargo | 521 | Store 1673 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1676 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1678 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1679 account |
| HF Inc. | Regions | 844 | Store 1681 account |
| HF Inc. | Regions | 771 | Store 1683 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1684 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1686 account |
| HF Inc. | Wells Fargo | 807 | Store 1688 account |
| HF Inc. | Wells Fargo | 716 | Store 1693 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1694 account |
| HF Inc. | Wells Fargo | 539 | Store 1695 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1700 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1705 account |
| HF Inc. | Wells Fargo | 815 | Store 1706 account |
| HF Inc. | Regions | 887 | Store 1707 account |
| HF Inc. | Wells Fargo | 213 | Store 1710 account |
| HF Inc. | Wells Fargo | 163 | Store 1711 account |
| HF Inc. | Wells Fargo | 072 | Store 1713 account |
| HF Inc. | Wells Fargo | 354 | Store 1714 account |
| HF Inc. | Wells Fargo | 362 | Store 1715 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1716 account |
| HF Inc. | Wells Fargo | 823 | Store 1721 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1722 account |
| HF Inc. | Wells Fargo | 370 | Store 1723 account |
| HF Inc. | Wells Fargo | 666 | Store 1724 account |
| HF Inc. | Regions | 018 | Store 1725 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1726 account |
| HF LLC | Wells Fargo LLC | 604 | Store 1727 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1728 account |
| HF Inc. | Regions | 503 | Store 1731 account |
| HF Inc. | Regions | 895 | Store 1737 account |
| HF Inc. | Regions | 026 | Store 1739 account |
| HF Inc. | Wells Fargo | 388 | Store 1741 account |
| HF Inc. | Wells Fargo | 942 | Store 1742 account |
| HF Inc. | Wells Fargo | 396 | Store 1747 account |
| HF Inc. | Regions | 662 | Store 1748 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1750 account |
| HF Inc. | Regions | 955 | Store 1753 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1761 account |
| HF Inc. | Regions | 034 | Store 1770 account |
| HF Inc. | Regions | 693 | Store 1771 account |
| HF Inc. | Regions | 042 | Store 1773 account |

C-5

| Account Holder | Bank | Account Number[1] | Description |
|---|---|---|---|
| HF Inc. | Regions | 274 | Store 1776 account |
| HF Inc. | Regions | 050 | Store 1777 account |
| HF Inc. | Wells Fargo/Wachovia | 166 | Store 1782 account |
| HF Inc. | Regions | 069 | Store 1784 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1786 account |
| HF Inc. | Regions | 043 | Store 1789 account |
| HF Inc. | JP Morgan Chase | 887 | Store 1791 account |
| HF Inc. | Wells Fargo | 390 | Store 1792 account |
| HF Inc. | Wells Fargo | 404 | Store 1793 account |
| HF Inc. | Wells Fargo | 702 | Store 1794 account |
| HF Inc. | Wells Fargo | 412 | Store 1795 account |
| HF Inc. | Regions | 062 | Store 1796 account |
| HF Inc. | Regions | 663 | Store 1797 account |
| HF Inc. | Wells Fargo | 864 | Store 1798 account |
| HF Inc. | Regions | 983 | Store 1799 account |
| HF Inc. | Wells Fargo | 175 | Store 2000 account |
| HF Inc. | JP Morgan Chase | 887 | Store 2001 account |
| HF Inc. | Wells Fargo | 616 | Store 2002 account |
| HF LLC | Wells Fargo LLC | 612 | Store 2003 account |
| HF Inc. | Wells Fargo | 440 | Store 2004 account |
| HF Inc. | Wells Fargo | 314 | Store 2005 account |
| HF Inc. | Wells Fargo | 457 | Store 2006 account |
| HF Inc. | Wells Fargo | 465 | Store 2007 account |
| HF Inc. | Wells Fargo | 649 | Store 2008 account |
| HF Inc. | JP Morgan Chase | 887 | Store 2009 account |
| HF Inc. | Wells Fargo | 392 | Store 2010 account |
| HF Inc. | JP Morgan Chase | 022 | Store 2011 account |
| HF Inc. | Wells Fargo | 392 | Store 2013 account |
| HF Inc. | Wells Fargo | 392 | Store 6001 account |
| HF Inc. | Wells Fargo | 392 | Store 6008 account |
| HF Inc. | Wells Fargo | 392 | Store 6037 account |
| HF Inc. | Genoa Bank | 624 | Store 6049 account |
| HF Inc. | JP Morgan Chase | 022 | Store 6080 account |
| HF Inc. | Wells Fargo | 392 | Store 6104 account |
| HF Inc. | Wells Fargo/Wachovia | 219 | Store 6126 account |
| HF Inc. | Wells Fargo | 392 | Store 6138 account |
| HF Inc. | Wells Fargo/Wachovia | 219 | Store 6144 account |
| HF Inc. | Wells Fargo | 392 | Store 6163 account |
| HF Inc. | Wells Fargo | 392 | Store 6175 account |
| HF Inc. | Wells Fargo/Wachovia | 219 | Store 6179 account |
| HF Inc. | Wells Fargo | 392 | Store 6185 account |
| HF Inc. | Wells Fargo | 392 | Store 6190 account |
| HF Inc. | Associated Bank N.A. | 575 | Store 6193 account |
| HF Inc. | Wells Fargo/Wachovia | 219 | Store 6197 account |
| HF Inc. | JP Morgan Chase | 022 | Store 6200 account |

C-6

| SWEEP ACCOUNTS | | | |
|---|---|---|---|
| HF Inc. | Regions | 666 | Sweep account for 47 stores |
| HF Inc. | Wachovia | 166 | Sweep account for 38 stores |
| HF Inc. | Wells Fargo | 321 | Sweep account for 97 stores |
| HF LLC | Wells Fargo | 339 | Sweep account for 12 stores |
| OPEN BUT UNUSED ACCOUNTS | | | |
| HF Inc. | Wells Fargo | 449 | Master depository account |
| HF Inc. | Wells Fargo | 464 | Visa and MasterCard receipts |
| HF Inc. | Wells Fargo | 456 | Master operating account |
| HF Inc. | Wells Fargo | 645 | Accounts payable |
| HF Inc. | Wells Fargo | 660 | Hourly payroll |
| HF Inc. | Wells Fargo | 652 | Salaried payroll |

RLF1 13819258v.1

## Exhibit D

**Debtors' Cash Management System**

# Cash Management System[1]



1 = For privacy purposes, only last 3 digits of account
    numbers are shown

**Well Fargo Bank Accounts[1]**



1 = For privacy purposes, only last 3 digits of account numbers are shown