IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HANCOCK FABRICS, INC., *et al.*,[1] | : | Case No. 16-_____ (___) |
| | : | |
| Debtors. | : | Joint Administration Requested |
| | : | |

------------------------------------------------------------x

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO SATISFY PREPETITION CLAIMS OF CERTAIN COMMON CARRIERS AND SALES AND SHIPPING PROCESSORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE

Hancock Fabrics, Inc. ("**Hancock Fabrics**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request the entry of an order authorizing the payment of certain prepetition claims of certain common carriers, freight forwarders and shipping processors pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Dennis Lyons in Support of the Debtors' Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Motion.[2] In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms not otherwise defined in this Motion have the meanings used in the First Day Declaration.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).[3]

2. The basis for the relief requested herein is Bankruptcy Code section 105(a).

## BACKGROUND

3. On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

4. The Debtors operate more than 260 stores in 37 states under the name of "Hancock Fabrics," a large national fabric and specialty retailer offering an extensive selection of high-quality fashion and home decorating textiles, sewing accessories, needlecraft supplies and sewing machines, along with in-store sewing advice. Founded in 1957, the Debtors' corporate headquarters and national distribution center are located in Baldwyn, Mississippi.

5. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

---

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

2

## RELIEF REQUESTED

6. By this Motion, the Debtors seek entry of an order—as proposed in Exhibit A—pursuant to Bankruptcy Code section 105(a) that authorizes, but does not direct, the Debtors to pay in their sole discretion the valid prepetition claims or any portion thereof of (i) certain reputable domestic and international common carriers, shippers, freight forwarders and trucks (collectively, the "**Common Carriers**") that the Debtors use in the ordinary course of business for shipment, transport and delivery of goods and (ii) certain sales and shipping processors (the "**Sales and Shipping Processors**") that the Debtors use in the ordinary course of business that are critical to the sale of merchandise and the timely shipping and delivery of goods used and sold in the ordinary course of the Debtors' business.

7. The Debtors receive goods through various forms of shipment, and much of the Debtors' pricing policies, marketing strategies and fundamental business operations rely on their ability to obtain and sell goods at competitive prices. The sale of fabric, home decorating textiles, crafts, sewing accessories and needlecraft supplies (the "**Retail Merchandise**") is the essence of the Debtors' business.

8. The Debtors' ability to timely receive, distribute and fulfill sales depends on the maintenance of a successful and efficient system of transportation, and any disruption of the delivery or return of Retail Merchandise would have an immediate and devastating impact on the Debtors' operations. Likewise, any disruption in the Debtors' ability to sell Retail Merchandise would have an equally immediate and devastating impact on the Debtors' operations. Thus, the Debtors' business operations and the success of their reorganization depends on the maintenance of reliable and efficient transportation and sale processing systems

for Retail Merchandise, and these two related and important systems involve the use of the Common Carriers and Sales and Shipping Processors.

9. The Debtors must ensure that these chapter 11 cases do not present a reason for third parties such as the Common Carriers and Sales and Shipping Processors to cease performing timely services, because the Debtors are in many cases dependent on the services of such third parties. If the Debtors are unable to ship, receive and sell deliveries of Retail Merchandise on a timely and uninterrupted basis, their operations will be immediately and substantially impeded and their business will suffer irreparable damage.

10. Prior to the Petition Date, the Debtors performed an analysis of (i) the identities of the core and indispensable Common Carriers and Sales and Shipping Processors, (ii) the Retail Merchandise that was in transit or needed to be shipped by the Common Carriers, (iii) the anticipated amount of payments that would be necessary for the Debtors to receive the Retail Merchandise in transit and (iv) the anticipated amount of payments that would be necessary for the Debtors to continue receiving the services provided by the Common Carriers and Sales and Shipping Processors. The Debtors have identified a core group of Common Carriers, attached hereto as <u>Exhibit B</u>, that they have determined is absolutely necessary to the continued shipping, delivery and return of goods used or sold in the ordinary course of the Debtors' business.

11. Retail Merchandise is currently being shipped for order fulfillment and returns processing at, to or from the Debtors' approximately 260 retail stores and distribution center. The total estimated amount owed to all Common Carriers and the maximum amount required to obtain or deliver the Retail Merchandise is approximately $1.2 million. Further, the Debtors intend to negotiate with the Common Carriers and Sales and Shipping Processors to

obtain continued services with less than full payment to such Common Carriers and Sales and Shipping Processors, although the Debtors seek Court approval for payments of all amounts related to the services provided by Common Carriers and Sales and Shipping Processors.

## BASIS FOR RELIEF REQUESTED

12. Pursuant to Bankruptcy Code section 105(a), the "court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). The Debtors submit that the relief requested herein is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

13. The Debtors believe that authorization of payment of prepetition claims to certain Common Carriers and Sales and Shipping Processors is necessary to continue in the ordinary course of business and to facilitate rehabilitation. "The ability of the Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the Debtors is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). This equitable common law principle "was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C & S.W.R. Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed 117 (1882) and is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule." *Id.* at 175-76. "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the Debtors' survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization." *Id.* at 825-26.

14. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize the Debtors to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See In re Columbia Gas Sys.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) *citing In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3rd Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [Debtors], payment may be authorized.'").

15. Courts routinely authorize the payment of common carrier charges and related fees in other large chapter 11 cases. *See e.g., In re Converse, Inc.*, Case No. 01-223 (SLR) (D. Del 2001) (order dated January 22, 2001); *In re DIMAC Holdings, Inc., et al.*, Case Nos. 00-1596 (MFW) through 00-1604 (MFW) (Bankr. D. Del. 2000) (order dated April 7, 2000); *In re Factory Card Outlet Corp. and Factory Card Outlet of America, Ltd.*, Case Nos. 99-685 (JJF) and 99-686 (JJF) (D. Del 1999) (order dated March 23, 1999); *In re PWS Holding Corp., Bruno's Inc., et al.*, Case Nos. 98-212 (SLR) through 98-223 (SLR) (D. Del. 1998) (distribution charges).

16. The Debtors suspect that the Common Carriers may argue that they are entitled to possessory liens for transportation and storage of Retail Merchandise in their possession and may refuse to deliver or release such goods before their claims have been satisfied and their liens redeemed. Under the laws of some states, a carrier may have a lien on the goods in its possession that secures the charges or expenses incurred in connection with the transportation or storage of the goods. Pursuant to Bankruptcy Code section 363(e), a carrier as a bailee may also be entitled to adequate protection of a valid possessory lien. The Debtors reserve the right to dispute and contest any such assertion.

OMM_US:74641431.5
RLF1 13819257v.1

17. In addition, the Debtors anticipate that certain of the Common Carriers will have some outstanding invoices for Retail Merchandise delivered to the Debtors prior to the Petition Date (the "**Shipping Charges**"), and that certain of the Sales and Shipping Processors will have some outstanding invoices for products and processing services related to the delivery and sale of such Retail Merchandise prior to the Petition Date (the "**Sales and Shipping Processor Charges**"). The Debtors believe that if they fail to pay such Shipping Charges and Sales and Shipping Processor Charges, certain of the Common Carriers and Sales and Shipping Processors may discontinue or delay services and withhold or prevent the shipment and sale of essential Retail Merchandise.

18. The value of the Retail Merchandise in the possession of the Common Carriers is dependent on the services of the Sales and Shipping Processors for delivery and sale, and the potential harm to the Debtors' business if the goods are not released or timely delivered or sold is likely to far exceed the amount of such Shipping Charges and Sales and Shipping Processor Charges. Indeed, as noted above, if the Debtors are unable to ship, receive and sell deliveries of Retail Merchandise on a timely and uninterrupted basis, their operations will be immediately and substantially impeded and their business will suffer irreparable damage. For example, if the Sales and Shipping Processors cease providing services to the Debtors, the Debtors will be unable to ship certain essential goods or sell any Retail Merchandise to customers who purchase such merchandise with payment online. Likewise, if the Common Carriers cease providing services to the Debtors, the Debtors will be unable to receive any new or additional Retail Merchandise to sell to customers, and Retail Merchandise is the essence of the Debtors' business. Therefore, the Debtors believe that it is necessary and essential to their

continued business operations and reorganization to make payments on account of certain Shipping Charges and Sales and Shipping Processor Charges.

19.     Accordingly, the Debtors seek an order authorizing, but not directing, them to make certain payments to the Common Carriers and Sales and Shipping Processors as the Debtors determine in their business judgment to be necessary or appropriate to obtain the release or final transport of any Retail Merchandise held by or to be shipped by such Common Carriers and to obtain the necessary services of the Sales and Shipping Processors. The Debtors seek authority to make such payments in amounts and to the extent necessary to satisfy non-disputed prepetition Shipping Charges and Sales and Shipping Processor Charges, and to satisfy any possessory liens on the goods that may be held by a Common Carrier pending payment of such charges.

20.     The Debtors will only pay Shipping Charges and Sales and Shipping Processor Charges that, in their business judgment, will benefit the estates and their creditors by such payments, taking into account (i) the costs the estates would incur by bringing an action to compel turnover of such goods, (ii) the delays associated with such actions, (iii) the costs of the delay in shipping, receiving and selling goods and merchandise and (iv) the business expenses related to replacing such Common Carriers and Sales and Shipping Processors (to the extent replacement is possible). Further, the Debtors will endeavor to negotiate total payments to the Common Carriers and Sales and Shipping Processors that are less than the full amount of any prepetition obligations.

21.     In sum, the total amount to be paid to the Common Carriers and Sales and Shipping Processors is minimal when considering the importance and necessity of the services provided by the Common Carriers and Sales and Shipping Processors and weighing such

payments against the losses that the Debtors could suffer if their operations were to be affected by a refusal to provide ongoing services. Moreover, the Debtors do not believe that there are viable timely alternatives to the Common Carriers and Sales and Shipping Processors that the Debtors have used prior to the Petition Date.

22. Authorization to pay the Shipping Charges and Sales and Shipping Processor Charges will not be deemed to constitute postpetition assumption or adoption of any agreement pursuant to Bankruptcy Code section 365, and the Debtors reserve all of their rights under the Bankruptcy Code with respect to any such agreements. Moreover, authorization to pay the Shipping Charges and Sales and Shipping Processor Charges does not affect the Debtors' right to contest the amount or validity of any such charges, in whole or in part.

23. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors and all parties in interest.

24. The Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") has been satisfied.

## NOTICE

25. The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties listed in Exhibit B hereto; (iii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iv) counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (v) counsel to GACP Finance Company, LLC, as Term Agent; (vi) counsel to Deutsche Bank National Trust Company, as

trustee under the indenture for the Floating Rate Series A Secured Notes due 2017, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271 (Attn: Margery A. Colloff, Esq.); (vii) John A. Bicks, Esq., K&L Gates, as counsel to certain secured noteholders, and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m). Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases. A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/hancockfabrics.com.

26.  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

27.  The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of an order granting the relief requested in its entirety and any other relief as is just and proper.

Dated:  February 2, 2016
        Wilmington, Delaware

/s/ *Michael J. Merchant*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701

- and -

**O'MELVENY & MYERS LLP**
Stephen H. Warren (*pro hac vice* pending)
Karen Rinehart (*pro hac vice* pending)
Michael S. Neumeister (*pro hac vice* pending)
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407


Proposed Attorneys for the
Debtors and Debtors in Possession

## Exhibit A

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                            :     Chapter 11
                                                  :
HANCOCK FABRICS, INC., *et al.*,[1]               :     Case No. 16-_____ (___)
                                                  :
                              Debtors.            :
                                                  :     Joint Administration Requested
                                                  :

------------------------------------------------------------x

### ORDER AUTHORIZING
### THE DEBTORS TO SATISFY PREPETITION
### CLAIMS OF COMMON CARRIERS AND SALES AND SHIPPING
### PROCESSORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") authorizing the Debtors to satisfy prepetition claims of Common Carriers and Sales and Shipping Processors, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

RLF1 13819257v.1

their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted to the extent set forth herein.

2. Pursuant to Bankruptcy Code section 105(a), the Debtors are authorized, but not directed, to pay in their sole discretion any or all of the valid prepetition charges of certain Common Carriers and Sales and Shipping Processors, on the same basis and in accordance with the same practices and procedures in effect prior to the date hereof. Notwithstanding the foregoing, the Debtors shall not pay prepetition charges of Common Carriers and Sales and Shipping Processors in an aggregate amount in excess of $1.2 million without further permission of the Court.

3. Nothing in this Order or the Motion shall be construed as prejudicing the Debtors' right to dispute or contest the amount of, or basis for, any claims against the Debtors relating to any claims of the Common Carriers and Sales and Shipping Processors.

4. Nothing herein amends that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the Debtors, Wells Fargo Bank, N.A. as Administrative Agent, Collateral Agent and Swing Line Lender, and GACP Finance Co., LLC, as Term Agent (the "**DIP Credit Agreement**") (including without limitation any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

RLF1 13819257v.1

5.    Nothing in this Order or the Motion shall be deemed to constitute an assumption of an executory contract, whether under Bankruptcy Code section 365 or otherwise.

6.    The Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

7.    The requirements as set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

8.    This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this order.

Dated: _____, 2016
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Customs Brokers and Carriers**

| *Name* | *Address* | *Contact* | *Description of Assets* | *Nature of Possession* |
|---|---|---|---|---|
| Averitt Express, Inc. | 1415 Neal Street Cookeville, TN 38502 | Walt Grey (615) 333-4431 | Inventory | Carrier |
| Con-way Freight | 2211 Old Earhart Road Suite 100 Ann Arbor, MI 48105-2751 | Jeff Vukovich (816) 918-8584 | Inventory | Carrier |
| FedEx Corporation | 942 S. Shady Grove Rd. Memphis, TN 38120 | Lori Raines (601) 918-8684 | Inventory | Carrier |
| J&B Services, Inc. | P.O. Box 2481 Tupelo, MS 38803-2481 | Todd Bates (800) 844-1612 | Inventory | Carrier |
| Intermodal Cartage Company, Inc. | 5707 E. Holmes Road Memphis, TN 38141 | Tommy Hall (901) 363-0050 | Inventory | Carrier |
| Mail Innovations | 12380 Morris Road Alpharetta, GA 30328 | Jason Dulaney (817) 680-8453 | Inventory | Carrier |
| Marisol International, LLC | 1645 W. Republic Road, Suite B2 Springfield, MO 65807 | Pam Berry (901) 351-1389 | Imported inventory | Customs Broker |
| Quikway Trucking Co. | 2929 East 50th Street Los Angeles, CA 90058 | Steve Wisner (323) 267-0010 | Inventory | Carrier |
| UPS | 55 Glenlake Pkwy NE Atlanta, GA 30328 | Jason Dulaney (817) 680-8453 | Inventory | Carrier |
| XPO Logistics | 6701 Statesville Road Charlotte, NC 28269 | Jeff Vokovich (816) 918-8584 | Inventory | Carrier |