## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                            :      Chapter 11
                                                  :
HANCOCK FABRICS, INC., *et al.*,[1]               :      Case No. 16-_____ (___)
                                                  :
                        Debtors.                  :
                                                  :      Joint Administration Requested
                                                  :
                                                  :

------------------------------------------------------------x

### DEBTORS' MOTION FOR
### ENTRY OF INTERIM AND FINAL ORDERS
### AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF
### PUTATIVE CONSIGNMENT VENDORS AND GRANTING RELATED RELIEF

Hancock Fabrics, Inc. ("**Hancock**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders, under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), (i) authorizing, but not directing, the Debtors to pay, prepetition obligations of certain vendors, suppliers, and similar entities that provide goods, asserted by such vendors to be provided to the Debtors on putative consignment or similar arrangements (the "**Subject Goods**"), and that are critical to the ongoing operation of the Debtors' businesses (the "**Subject Vendors**," whose claims are the "**Subject Vendor Claims**") in the ordinary course in an amount not to exceed $1.25 million on an interim basis and $1.5 million on a final basis (for both interim and final periods, the "**Subject Vendor Claims Cap**"), and (ii) granting related relief. In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Dennis Lyons in Support of the Debtors' Chapter 11 Petition and*

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

*First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Motion.[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[3]

## BACKGROUND

2.    On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.    The Debtors operate more than 260 stores in 37 states under the name of "Hancock Fabrics," a large national fabric and specialty retailer offering an extensive selection of high-quality fashion and home decorating textiles, sewing accessories, needlecraft supplies and sewing machines, along with in-store sewing advice.  Founded in 1957, the Debtors' corporate headquarters and national distribution center are located in Baldwyn, Mississippi.

4.    Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

---

[2] Capitalized terms not otherwise defined in this Motion have the meanings used in the First Day Declaration.

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

2

## RELIEF REQUESTED

5.　　By this Motion, under Bankruptcy Code sections 105(a) and 363, the Debtors seek entry of interim and final orders—as proposed in Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**"), respectively—authorizing, but not directing, the Debtors, to pay Subject Vendor Claims in the ordinary course of business, in an aggregate amount not to exceed the applicable Subject Vendor Claims Cap.  The Debtors will use reasonable efforts where appropriate and practicable to condition payments to Subject Vendors on each Subject Vendor's agreement to (i) accept such payment in satisfaction of all or a part of its Subject Vendor Claim; and (ii) continue to provide supplies or services to the Debtors during these chapter 11 cases no less favorable to the Debtors than those practices and programs (including without limitation credit limits, pricing, timing of payments, and availability) during the twelve months immediately preceding the Debtors' filing of their chapter 11 petitions (the "**Customary Trade Terms**").

6.　　The Debtors also request that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for Subject Vendor Claims (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

OMM_US:74751669.4
RLF1 13819247v.2

## BASIS FOR RELIEF REQUESTED

### I. FACTS SPECIFIC TO RELIEF REQUESTED

7.    In an exercise of their business judgment, the Debtors have determined that continuing to receive delivery of the Subject Goods for resale from the Subject Vendors is necessary to operate the Debtors' business and maximize value for all creditors.  If granted discretion to satisfy Subject Vendor Claims, as requested in this Motion, the Debtors will assess, on a case by case basis in real time, the benefits to the estates of paying Subject Vendor Claims and pay such claims only to the extent that the estates will benefit.  Without this relief, the Debtors believe that the Subject Vendors may cease providing Subject Goods to the Debtors or otherwise take action that would have a significant adverse effect on the Debtors' restructuring efforts, to the detriment of the estates and their creditors, including without limitation disputes concerning their putative consignment rights.

### A.    Subject Vendor Claims

8.    In the ordinary course of business, the Debtors routinely receive delivery of Subject Goods, including without limitation plush fabric and accessories, sewing machines, patterns, books, gift items, magazines, greeting cards and calendars from the Subject Vendors for resale at the Debtors' retail stores.  Without these Subject Goods, the Debtors would experience significant loss in sales volume, disrupting the Debtors' business and jeopardizing their restructuring efforts.  To prevent any such interruption to the Debtors' business during these chapter 11 cases, it is essential that the Debtors maintain their relationships with, and honor their outstanding payment obligations to, the Subject Vendors.  The Debtors seek authority to pay such claims to prevent interruption to their businesses.

9.    The Debtors have presently identified approximately ten (10) Subject Vendors, on which the Debtors depend for availability of the Subject Goods on favorable terms

4

in order to offer a full range of retail goods to their customers. The events leading up to and the commencement of these chapter 11 cases may have caused some uncertainty among the Subject Vendors with respect to the Subject Vendor Claims that may impair future shipments of Subject Goods to the Debtors.

10.     Each of the Subject Vendors may assert that the Subject Goods with which it supplies the Debtors is provided to the Debtors on a consignment basis. The Debtors do not believe that such Subject Goods meet the legal requirements to be true consignment goods, and reserve the right to challenge such claims. However, due to the importance of the Subject Goods to the Debtors' businesses, and concomitantly to the Debtors' restructuring efforts, the Debtors propose to pay the Subject Vendor Claims as and pursuant to the terms set forth herein, while reserving the right to challenge putative consignment claims.

11.     For these reasons, the Debtors request authority to pay the Subject Vendor Claims in an amount up to the Subject Vendor Claims Cap.

**B.     Proposed Terms and Conditions of Payment of Subject Vendor Claims**

12.     If authorized to pay the Subject Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Subject Vendors to provide favorable trade terms that are no less favorable to the Debtors than historical practice. The Debtors therefore request authority, but not direction, to condition payment on such party's agreement to continue providing Subject Goods to the Debtors in accordance with the Customary Trade Terms, *i.e.* trade terms consistent with those practices and programs in place during the twelve months immediately preceding the Debtors' filing of their chapter 11 petitions.

13.     To ensure each Subject Vendor's agreement to continue providing supplies or services on Customary Trade Terms for the duration of these chapter 11 cases, the

5

Debtors may elect to execute trade agreements, as proposed in the form attached as <u>Exhibit 1</u> to the Interim Order (each a "**Trade Agreement**").  Such Trade Agreements, once agreed to and accepted by a Subject Vendor, will be a legally binding contract between the parties governing their commercial relationship.

14.    The Debtors also seek limited authority to pay the Subject Vendor Claims in the event that no Trade Agreement has been executed.  The Debtors would exercise this authority only if they determine, in their business judgment, that a formal Trade Agreement is unnecessary to ensure a Subject Vendor's continued performance on Customary Trade Terms; *provided*, *that*, if a Subject Vendor accepts payment and does not continue supplying goods or services to the Debtors in accordance with Customary Trade Terms or as otherwise set forth in a Trade Agreement, then, so long as the Subject Vendor receives notice and opportunity for a hearing: (i) such payment will be deemed an improper postpetition transfer on account of a prepetition claim and therefore immediately recoverable by the Debtors in cash on written request; (ii) upon recovery by the Debtors, any prepetition claim of such Subject Vendor will be reinstated as if the payment had not been made; and (iii) if there exists an outstanding postpetition balance due from the Debtors to such Subject Vendor, the Debtors may elect to recharacterize and apply any payment made to that outstanding postpetition balance, thus reducing such Subject Vendor's administrative claim, and such Subject Vendor will be required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

15.    Further, the relief requested in this Motion is premised on the assumption that the Subject Vendors have taken the necessary steps to properly perfect their interests in the

Subject Goods, as is inherent in the Subject Vendors' assertion that the Subject Goods are consignment goods. In the event that a Subject Vendor accepts payment pursuant to this Motion and it is later determined that such Subject Vendor has not properly perfected its interests in the Subject Goods, then the Debtors reserve the right to seek to have the payment recharacterized as an improper postpetition transfer on account of a prepetition claim and to seek to either (i) recover such improper postpetition transfer or (ii) have the improper postpetition transfer applied to any outstanding postpetition balance relating to such Subject Vendor.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A.    The Court Should Authorize the Debtors to Pay Subject Vendor Claims Under Bankruptcy Code Sections 363(b), 364 and 105(a)

16.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in Bankruptcy Code sections 105(a) and 363(b) support the payment of prepetition claims as requested here.

17.    Courts have found a basis for allowing debtors to make payments to creditors under Bankruptcy Code §§ 363 and 364. Bankruptcy Code section 363(b)(1) provides that, after notice and a hearing, a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Payment of prepetition

7

obligations may be authorized under this section where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon Bankruptcy Code § 363 is "completely consistent with the Bankruptcy Code;" payments to critical trade vendors have further support when debtor seeks "the extension of credit under § 364 on different than usual terms, terms that might include the payment of a prepetition obligation").

18.    The Court may also rely on Bankruptcy Code section 105(a) to authorize payment of prepetition claims in appropriate circumstances. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize preplan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). Specifically, courts may use their power under section 105(a) to authorize payment of prepetition obligations under the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

19.    Recognizing the doctrine of necessity, the United States Court of Appeals for the Third Circuit held in *In re Lehigh & New England Ry. Co* that a court may authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. 657 F.2d 570, 581 (3d Cir. 1981); *see also In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding doctrine of necessity permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of

8

the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824-25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

20.    Here, payment of the Subject Vendor Claims is necessary to ensure that the Debtors continue to receive delivery of Subject Goods for resale to their customers and, in turn, preserve and enhance the value of the Debtors' estates.    The Debtors have carefully reviewed whether the Subject Goods provided by the Subject Vendors are essential to ongoing operations.    The Debtors have concluded that, without the Subject Vendors' services through provision of the Subject Goods, the Debtors would suffer severe losses in sales volume and be required to search for substitute vendors, if any even exist, and the Debtors could be forced to forgo existing favorable trade terms.

21.    The Debtors have developed procedures that, if and when implemented will ensure that the Subject Vendors receiving payment of their Subject Vendor Claims will continue to provide goods to the Debtors based on the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the Subject Vendors.    The retention and reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.

22.    Where, as here, payment of select prepetition claims is critical to maximize the value of a debtor's estate, courts in this District routinely authorize such payments.[4]    Given the nature of the Subject Goods provided by the Subject Vendors, the

---

[4] *See In re Colt Holding Co. LLC*, Case No. 15-11296 (LSS) (Bankr. D. Del. June 16, 2015) (D.I. 74); *In re Cal Dive Int'l, Inc.*, Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015) (D.I. 62); *In re Dendreon Corp. et al.*, Case No. 14-12515 (PJW) (Bankr. D. Del. Nov. 12, 2014) (D.I. 57); *In re Source Home Entm't, LLC*, et al., Case No. 14-11553 (KG) (Bankr. D. Del. July 18, 2014) (D.I. 139); *In re Natrol, Inc. et al.*, Case No. 14-11446 (BLS) (Bankr. D.

consequences of the Subject Vendors' ceasing to provide Subject Goods and the related potential loss of value to the Debtors' estates, similar relief is warranted here, and the Court should authorize the payment of the Subject Vendor Claims under Bankruptcy Code sections 363(b), 364, and 105(a) and the doctrine of necessity.

**B.     The Court Should Authorize Payment of Subject Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

23.     Payment of the Subject Vendor Claims is also warranted under Bankruptcy Code sections 1107(a) and 1108, which recognize the Debtors as fiduciaries "holding the bankruptcy estate[s] and operating business[es] for the benefit of [their] creditors and (if the value justifies) [their] equity owners." *CoServ*, 273 B.R. at 497.

24.     Courts have noted that a debtor in possession can, in certain instances, fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-prong test for determining whether a preplan payment for a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

---

Del. July 15, 2014) (D.I. 238); *In re GSE Envtl., Inc. et al.*, Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (D.I. 151); *In re Quantum Foods, LLC et al.*, Case No. 14-10318 (KJC) (Bankr. D. Del. Mar. 12, 2014) (D.I. 122); *In re Victor Oolitic Stone Co. d/b/a Indiana Limestone Co.*, No. 14-10311 (CSS) (Bankr. D. Del. Feb. 18, 2014) (D.I. 33).

OMM_US:74751669.4
RLF1 13819247v.2

25.     Payment of the Subject Vendor Claims here meets each element outlined in *CoServ*. First, it is critical that the Debtors deal with the Subject Vendors because the Subject Vendors provide Subject Goods necessary to the Debtors' operations and, in many instances, the Subject Vendors could potentially assert and seek to perfect liens against the Debtors' property (subject to the Debtors' rights and defenses thereto).   Second, the Debtors believe that the Subject Vendors would otherwise refuse to, or might be unable to, provide Subject Goods to the Debtors on a postpetition basis if their prepetition balances are not paid.   Accordingly, not paying the Subject Vendor Claims harms the Debtors financially because losing access postpetition to the Subject Goods provided by the Subject Vendors would result in a loss of sales volume for the Debtors.   Third, the Debtors have examined other options short of payment of the Subject Vendor Claims and have determined that, to avoid any unexpected or inopportune interruptions to their business operations, there may be no practical alternative to paying the Subject Vendor Claims consistent with the applicable caps.   Therefore, the Debtors submit that paying the Subject Vendor Claims is a sound exercise of their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107 and 1108.

**C.     The Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay the Subject Vendor Claims**

26.     The Debtors further request that the Court authorize all banking institutions and all other applicable financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Subject Vendor Claims, whether such checks were presented before or after the Petition Date.   Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Subject Vendor Claims.   Given those controls, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be

11

honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Subject Vendor Claims, or to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these chapter 11 cases.  Finally, the Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' businesses.

### D.    Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm

27.    Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[5]

28.    The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

### RESERVATION OF RIGHTS

29.    Nothing contained in this Motion is an admission of the validity of any claim, lien, security interest, consignment right, or other right with respect to the Subject Goods

---

[5] See the First Day Declaration filed concurrently with this Motion.

OMM_US:74751669.4
RLF1 13819247v.2

or against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, lien, security interest, consignment right or other right with respect to the Subject Goods, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim, lien, security interest, consignment right or other right with respect to the Subject Goods or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim, lien, security interest, consignment right or other right with respect to the Subject Goods or to assert avoidance claims.  In addition, authorization to pay the claims described in this Motion shall not be deemed a direction to the Debtors to pay such claims.

## NOTICE

30.    The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (iv) counsel to GACP Finance Company, LLC, as Term Agent; (v) counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271 (Attn: Margery A. Colloff, Esq.); (vi) John A. Bicks, Esq., K&L Gates, as counsel to certain secured noteholders, and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice

OMM_US:74751669.4
RLF1 13819247v.2

in these chapter 11 cases.  A copy of the Motion is also available on the Debtors' case website at https://www.kccllc.net/hancockfabrics.com.

31.    As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR MOTION

32.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

14

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated:    February 2, 2016
          Wilmington, Delaware

                              /s/ Michael J. Merchant
                              **RICHARDS, LAYTON & FINGER, P.A.**
                              Mark D. Collins (No. 2981)
                              Michael J. Merchant (No. 3854)
                              One Rodney Square
                              920 North King Street
                              Wilmington, Delaware 19801
                              Telephone:  (302) 651-7700
                              Facsimile:  (302) 651-7701

                              - and -

                              **O'MELVENY & MYERS LLP**
                              Stephen H. Warren (*pro hac vice* pending)
                              Karen Rinehart (*pro hac vice* pending)
                              Michael S. Neumeister (*pro hac vice* pending)
                              400 South Hope Street
                              Los Angeles, CA  90071-2899
                              Telephone:  (213) 430-6000
                              Facsimile:  (213) 430-6407

                              Proposed Attorneys for the
                              Debtors and Debtors in Possession

OMM_US:74751669.4
RLF1 13819247v.2

## Exhibit A

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                       :        Chapter 11
                                             :
HANCOCK FABRICS, INC., *et al.*,[1]          :        Case No. 16-_____ (___)
                                             :
                        Debtors.             :
                                             :        Joint Administration Requested
                                             :
                                             :

------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF PUTATIVE CONSIGNMENT VENDORS AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"), under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (i) authorizing, but not directing, the Debtors to pay Subject Vendor Claims in an amount not to exceed the applicable Subject Vendor Claims Cap and (ii) granting related relief, as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, record of the Hearing, and all the proceedings had before the Court; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2016, at\_\_:\_\_ \_.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on \_\_\_\_\_ _____, 2016, and served on the following parties: (i) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq. and Michael J. Merchant, Esq. and O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, Attention: Stephen H. Warren, Esq. and Karen Rinehart, Esq.; (ii) the attorneys for any statutory committee appointed in these cases; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.); (iv) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq. and Sean Monahan, Esq.), counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (v) Paul Hastings LLP, 75 East 55th Street, New York NY 10022 (Attn: Leslie Plaskon, Esq. and Andrew Tenzer, Esq.), counsel to GACP Finance Company LLC, as Term Agent; (vi) Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor,

2

New York, NY 10271 (Attn: Margery A. Colloff, Esq.), counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017; (vii) K&L Gates LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: John A. Bicks, Esq.), counsel to certain secured noteholders and (vii) counsel to any statutory committee appointed in these chapter 11 cases.   A copy of the Motion and this Order will be served on the foregoing parties and all parties having filed requests for notice in these chapter 11 cases.  Due to the nature of the relief requested in the Motion, no other or further notice need be given.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

   3. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of and discharge, on a case-by-case basis, the Subject Vendor Claims in an amount not to exceed $1.25 million during the first 21 days following the Petition Date (the "**Subject Vendor Claims Cap**"), *provided, that* any payment made, authorization contained or claim for which payment is authorized hereunder shall be subject to any order approving on an interim basis (the "**Interim DIP Order**") that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the Debtors, Wells Fargo Bank, N.A. as Administrative Agent, Collateral Agent and Swing Line Lender, and GACP Finance Co., LLC, as Term Agent (the "**DIP Credit Agreement**") and any order granting such relief on a final basis (together with the Interim DIP Order, the "**DIP Order**"), including, but not limited to the Budget (as defined in the DIP Order).

   4. The form of Trade Agreement, as it appears in <u>Exhibit 1</u> attached hereto, is approved in its entirety, and the Debtors are authorized to negotiate, modify, or amend the form of Trade Agreement in their reasonable business judgment.

3

5.    The Debtors are authorized, but not directed, to condition payment of the Subject Vendor Claims on the execution of a Trade Agreement, and the Debtors are authorized to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that doing so is appropriate.

6.    If a Subject Vendor accepts payment, whether or not under a Trade Agreement, and does not continue supplying goods and services to the Debtors in accordance with trade terms no less favorable to the Debtors than those practices and programs (including credit limits, pricing, timing of payments, and availability) in place during the twelve months immediately preceding the Debtors' filing of their chapter 11 petitions (collectively, the **"Customary Trade Terms"**) or as otherwise set forth in a Trade Agreement or as otherwise agreed, then, so long as the Subject Vendor receives notice and opportunity for a hearing: (a) any payment on account of a prepetition claim received by a Subject Vendor will be deemed an improper postpetition transfer and therefore immediately recoverable by the Debtors in cash on written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such Subject Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made to such outstanding postpetition balance, and that Subject Vendor will be required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

7.    In the event that a Subject Vendor accepts payment pursuant to this Order and it is later determined that the Subject Vendor has not properly perfected its interests in the Subject Goods, then the Debtors may seek to have the payment recharacterized as an improper

4

postpetition transfer on account of a prepetition claim and to seek to either (i) recover such improper postpetition transfer or (ii) have the improper postpetition transfer applied to any outstanding postpetition balance relating to such Subject Vendor.

8.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Subject Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

9.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien, security interest, consignment right or other right with respect to the Subject Goods; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest regarding the validity, extent, perfection, or possible avoidance of any lien, security interest, consignment right or other right with respect to the Subject Goods; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

10.     Nothing herein amends the DIP Credit Agreement or any DIP Order

(including without limitation any budget incorporated therein).

        11.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

        12.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

        13.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

        14.     This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2016
       Wilmington, Delaware

           _____
           UNITED STATES BANKRUPTCY JUDGE

6

## **EXHIBIT 1**

**Form of Trade Agreement**

## TRADE AGREEMENT

[**DEBTOR ENTITY**] (as defined herein) (the "**Company**"), on the one hand, and [**VENDOR**] ("**Vendor**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of this [**DATE**].

## RECITALS

WHEREAS on [**DATE**] (the "**Petition Date**"), Hancock Fabrics, Inc. and certain of its subsidiaries, including the Company (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

WHEREAS on [**DATE**], the Court entered the *Interim Order Authorizing the Debtors to Pay Prepetition Claims of Putative Consignment Vendors and Granting Related Relief* (the "**Putative Consignment Vendor Order**") [**Docket No. ▪**] authorizing the Debtors, under certain conditions, to pay the prepetition claims of certain suppliers, including Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Vendor [**provided supplies/services**] to the Company, and the Company paid Vendor for such [**supplies/services**], according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Vendor (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Vendor may hold against the Company.

## AGREEMENT

1.      **Recitals**.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      **Vendor Payment**.  The Parties agree that Vendor holds a prepetition claim against the Company in the amount of $[▪] (the "**Agreed Vendor Claim**").  Following execution of this Trade Agreement, the Company will pay Vendor $[▪] on account of Agreed Vendor Claim (the "**Vendor Payment**").  The Vendor Payment will be applied to invoices previously received by the Company on account of the Agreed Vendor Claim as such invoices become due and payable.

3.      **Agreement to Supply**.

a.      Vendor will supply goods to the Company based on the following "**Customary Trade Terms**":  The trade terms no less favorable to the Company than those

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Putative Consignment Vendor Order.

practices and programs (including credit limits, pricing, timing of payments, and availability) in place during the twelve months immediately preceding the Company's filing the chapter 11 case, which shall include **[specific trade terms]**.

b.       Vendor will continue all **[provision of supplies/services]** in the ordinary course and will **[fill orders for supplies requested by the Company/provide services]** in the ordinary course of business under the Customary Trade Terms.

c.       The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

4.       **Confirmation and Plan Matters**.

a.       Vendor agrees that it will not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan under the Customary Trade Terms then in effect. The Vendor Payment will be made concurrently with payment of other outstanding administrative clams as provided in a confirmed plan.

b.       Vendor will not separately seek payment from the Company on account of any prepetition claim outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

5.       **Vendor Breach**.

a.       In the event that Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "**Vendor Breach**"), upon written notice to Vendor, Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the post-petition receivables then owing to Vendor from the Company.

b.       In the event that the Company recovers the Vendor Payment under Section 5(a) hereof or otherwise, the full Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c.       Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Vendor hereby waives any defense that

2

a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

      6.    **Notice**.

If to Vendor:

[•]

and

[•]

If to Company:

Dennis Lyons
Senior Vice President and
Chief Administrative Officer
**HANCOCK FABRICS, INC.**
One Fashion Way
Baldwyn, MS 38824

- and -

Stephen H. Warren, Esq.
Karen Rinehart, Esq.
Michael Neumeister, Esq.
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

      7.    **Representations and Acknowledgements**.  The Parties agree, acknowledge and represent that:

      a.    the Parties have reviewed the terms and provisions of the Putative Consignment Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved under the Putative Consignment Vendor Order;

      b.    any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Putative Consignment Vendor Order;

      c.    if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise

3

all rights and remedies available under the Putative Consignment Vendor Order, the Bankruptcy Code, or applicable law; and

        d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of **[provision of supplies/services]** from Vendor to the Company, until a ruling of the Court is obtained.

        8.    **Confidentiality**.  Vendor agrees to hold in confidence and not disclose to any party:  (a) this Trade Agreement; (b) any and all payments made by the Company under this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); **provided, that**, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; **provided, further, that**, if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

        9.    **Miscellaneous**.

        a.    The Parties hereby represent and warrant that:  (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

        b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

        c.    Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

        d.    This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

        e.    The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

        f.    This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

## Exhibit B

## Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re:                                                    :        Chapter 11
                                                          :
HANCOCK FABRICS, INC., *et al.*,[1]                       :        Case No. 16-_____ (___)
                                                          :
                              Debtors.                    :
                                                          :        Joint Administration Requested
                                                          :
                                                          :

-------------------------------------------------------- x

## FINAL ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF PUTATIVE CONSIGNMENT VENDORS AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**"),

under §§ 105(a), 363(b), 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C.

§§ 101 *et seq.,* (i) authorizing, but not directing, the Debtors to pay certain prepetition claims of

putative consignment vendors in an amount not to exceed the applicable Subject Vendor Claims

Cap and (ii) granting related relief, as more fully set forth in the Motion; and due and sufficient

notice of the Motion having been provided under the particular circumstances; and it appearing

that no other or further notice need be provided; and the Court having jurisdiction to consider the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion and the relief requested therein being a core proceeding under 28

U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the

United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408

and 1409; and hearings having been held to consider the relief requested in the Motion on an

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

interim basis (the "**Interim Hearing**") and on a final basis (the "**Final Hearing**" and together with the Interim Hearing, the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis (the "**Interim Order**"); and upon the First Day Declaration, record of the Hearings, and all the proceedings had before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of and discharge, on a case-by-case basis, the Subject Vendor Claims in an amount not to exceed $1.5 million (the "**Subject Vendor Claims Cap**"), absent further order of the Court, *provided, that* any payment made, authorization contained or claim for which payment is authorized hereunder shall be subject to any order approving on an interim basis (the "**Interim DIP Order**") that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the Debtors, Wells Fargo Bank, N.A. as Administrative Agent, Collateral Agent and Swing Line Lender, and GACP Finance Co., LLC, as Term Agent (the "**DIP Credit Agreement**") and any order granting such relief on a final basis (together with the Interim DIP Order, the "**DIP Order**"), including, but not limited to the Budget (as defined in the DIP Order).[3]

3.      The Debtors are authorized, but not directed, to condition payment of the Subject Vendor Claims on the execution of a Trade Agreement, substantially in the form

---

[3] For the avoidance of doubt, this Order does not authorize the Subject Vendors to, and the Subject Vendors may not, effect any setoff or recoupment on account of any prepetition indebtedness, whether pursuant to 11 U.S.C. §553 or otherwise.

2

attached as Exhibit 1 to the Interim Order, and the Debtors are authorized to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their reasonable business judgment, that doing so is appropriate.

4.      If a Subject Vendor accepts payment, whether or not under a Trade Agreement, and does not continue supplying goods and services to the Debtors in accordance with trade terms no less favorable to the Debtors than those practices and programs (including credit limits, pricing, timing of payments, and availability) in place during the twelve months immediately preceding the Debtors' filing of their chapter 11 petitions (collectively, the "**Customary Trade Terms**") or as otherwise set forth in a Trade Agreement or as otherwise agreed, then, so long as the Subject Vendor receives notice and opportunity for a hearing: (a) any payment on account of a prepetition claim received by a Subject Vendor will be deemed an improper postpetition transfer and therefore immediately recoverable by the Debtors in cash on written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such Subject Vendor shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made to such outstanding postpetition balance, and that Subject Vendor will be required to repay to the Debtors those paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5.      In the event that a Subject Vendor accepts payment pursuant to this Order and it is later determined that the Subject Vendor has not properly perfected its interests in the Subject Goods, then the Debtors may seek to have the payment recharacterized as an improper postpetition transfer on account of a prepetition claim and to seek to either (i) recover such

improper postpetition transfer or (ii) have the improper postpetition transfer applied to any outstanding postpetition balance relating to such Subject Vendor.

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Subject Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

7.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien, security interest, consignment right or other right with respect to the Subject Goods; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest regarding the validity, extent, perfection, or possible avoidance of any lien, security interest, consignment right or other right with respect to the Subject Goods; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

8.      Nothing in the Motion or this Order shall prejudice the Debtors' right to request further authority from this Court, after notice and an opportunity for a hearing, to pay any

4

Subject Vendor Claims in excess of the Subject Vendor Claims Cap.

9.      Nothing herein amends the DIP Credit Agreement or any DIP Order (including without limitation any budget incorporated therein).

10.      The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

11.      Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

13.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2016
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 13819247v.2