**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**



| | |
|---|---|
| In re:<br><br>HANCOCK FABRICS, INC., et al.,[1]<br>a Delaware corporation,<br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 16-10296 (BLS)<br><br>Jointly Administered<br>**Re: Docket No. 14** |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, AND 507 (I) AUTHORIZING
USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,
(III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF**

This matter having come before the Court upon the motion (the "**Motion**")[2] by Hancock

Fabrics, Inc., a Delaware corporation ("**Hancock**"), HF Merchandising, Inc., a Delaware

corporation, Hancock Fabrics of MI, Inc., a Delaware corporation, Hancock Fabrics, LLC, a

Delaware limited liability company, hancockfabrics.com, Inc., a Delaware corporation, HF

Enterprises, Inc., a Delaware corporation, and HF Resources, Inc., a Delaware corporation, each

as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter

11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, and 507 of title 11

of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"),

and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), for:

(i)　　　　entry of this "**Interim Order**"; and

(ii)　　　　authorization to use "Cash Collateral," as defined in Section 363(a) of the

Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to Bankruptcy Code

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004 on the terms and conditions set forth in this Interim Order; and

(iii)        the provision of adequate protection to the Prepetition Subordinated Creditors (as defined herein) to the extent set forth herein; and

(iv)        vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(v)        scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion, the entry of an order (the "**Final Order**") approving the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(vi)        granting related relief.

The Court having considered the Motion, the *Declaration of Dennis Lyons in Support of Chapter 11 Petitions and Request for First Day Relief* in support of the Chapter 11 petitions and first day motions, including the Motion, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 9013-1; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their

2

creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    *Petition Date*.  On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, (the "**Court**"), commencing these Cases.

B.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion and granted in this Interim Order are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

3

D.      _Committee Formation_.   As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not appointed any official committee of unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (a "**Committee**").

E.      _Debtors' Stipulations_.   After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraphs 15 and 16 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(vi) below are referred to herein as the "**Debtors' Stipulations**"):

(i)      _Prepetition Indenture Documents_.   As of the Petition Date, the Debtors had outstanding secured debt to various noteholders (collectively, the "**Prepetition Subordinated Noteholders**") pursuant to that certain Indenture dated as of November 20, 2012 (as amended, modified and supplemented from time to time, including pursuant to that certain Supplemental Indenture dated as of April 22, 2015, the "**Prepetition Subordinated Indenture**" and together with all related documents, guaranties and agreements, the "**Prepetition Subordinated Indenture Documents**"), by and between (a) Hancock and (b) Deutsche Bank National Trust Company, as indenture trustee (in such capacity, the "**Prepetition Indenture Trustee**"; the Prepetition Indenture Trustee and the Prepetition Subordinated Noteholders are collectively referred to herein as the "**Prepetition Subordinated Secured Creditors**").

(ii)     _Prepetition Subordinated Obligations_.   As of the Petition Date, the outstanding principal amount owed by the Debtors under the Prepetition Subordinated Indenture Documents was not less than $8,204,000 (together with any amounts paid, incurred or accrued, including but not limited to interest, fees and expenses, prior to the Petition Date in accordance with the Prepetition Subordinated Indenture Documents, the "**Prepetition Subordinated**

4

**Secured Obligations**").  As more fully set forth in the Prepetition Subordinated Indenture Documents, prior to the Petition Date, the Debtors granted second-priority security interests in and liens on substantially all personal and real property of the Debtors, including, without limitation, owned real estate, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**"), to the Prepetition Indenture Trustee (the "**Prepetition Subordinated Liens**") to secure repayment of the Prepetition Subordinated Obligations.

(iii)    *Subordination Provisions*.  Pursuant to the terms of the Prepetition Subordinated Indenture, including, without limitation, Article XI of the Prepetition Subordinated Indenture, (A) the Prepetition Obligations are subordinated in all respects to the prior payment in full of all "Obligations" as described in the that certain Credit Agreement dated as of April 22, 2015 (as amended, modified and supplemented from time to time, the "**Prepetition Senior Credit Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition Senior Credit Documents**"), by and among (a) Hancock, (b) the other Debtors party thereto from time to time, (c) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities herein, the "**Prepetition Senior Agent**") for its own benefit and the benefit of the other "Credit Parties" (as defined therein), (e) GACP Finance Co., LLC, as term agent (the "**Prepetition Term Agent**") and (f) the lenders from time to time party thereto (together with the Prepetition Agent and Prepetition Agent, the "**Prepetition Senior Creditors**"; the Prepetition Senior Creditors together with the Prepetition Subordinated Creditors, the "**Prepetition Secured Creditors**"), and (B) the Prepetition Subordinated Liens are subordinate and junior in all respects to the liens on the Prepetition Collateral granted to the Prepetition Senior Agent to secured repayment of the Prepetition Senior Obligations

5

(collectively, such terms are referred to herein as the "**Indenture Subordination Provisions**"). The Indenture Subordination Provisions are a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code.

(iv)       *Validity, Perfection and Priority of Prepetition Subordinated Liens and Obligations*. The Debtors and the Prepetition Subordinated Secured Creditors acknowledge and agree that:   (a) the Prepetition Subordinated Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) the Prepetition Subordinated Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to valid, binding, enforceable, properly perfected, and non-avoidable liens as of the Petition Date (the "**Prepetition Permitted Liens**") that otherwise had priority over the Prepetition Subordinated Liens on the Prepetition Collateral;[4] (c) the Prepetition Subordinated Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors and constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Prepetition Subordinated Liens or the Prepetition Subordinated Secured Obligations exist, and no portion of the Prepetition Subordinated Liens or the Prepetition Subordinated Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy

---

[4] For purposes of this Interim Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, any Committee and the Prepetition Subordinated Creditors to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

Code or applicable non-bankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Subordinated Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Subordinated Indenture Documents.

(v)        *Cash Collateral.*  The Debtors acknowledge and stipulate that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Subordinated Secured Creditors.

(vi)       *Release.*  The Debtors hereby forever, unconditionally and irrevocably release, discharge and acquit the Prepetition Subordinated Secured Creditors, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Prepetition Subordinated Indenture Documents, the Prepetition Subordinated Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity,

7

priority, perfection or avoidability of the Prepetition Subordinated Indenture Documents, Prepetition Subordinated Secured Obligations and the Prepetition Subordinated Liens. The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Subordinated Secured Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Interim Order and, if applicable, the Final Order.

F.      *Findings Regarding the Use of Cash Collateral and the Collateral.*

(i)      *Request for Use of Cash Collateral.* The Debtors seek authority to use Cash Collateral on the terms described herein to administer their Cases and fund their operations. The Prepetition Subordinated Secured Creditors have consented to the use of their Cash Collateral on the terms set forth in this Interim Order. At the Final Hearing, the Debtors may seek final approval of the use of Cash Collateral arrangements pursuant to the Final Order. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)      *Immediate Need for Use of Cash Collateral.* The Debtors' need to use Cash Collateral is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations requires the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses

8

or to maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.

G.    *Adequate Protection.*  The Prepetition Subordinated Secured Creditors are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.  The Prepetition Subordinated Secured Creditors reserve the right to seek additional adequate protection beyond the adequate protection provided in this Interim Order after the DIP Obligations and Prepetition Senior Obligations owed, in each case, to the Prepetition Senior Creditors or their permitted successors and assigns have been paid in full, and the entry of this Interim Order shall not prejudice such reservation of rights.

H.    *Sections 506(c) and 552(b).*  In light of the Prepetition Subordinated Secured Creditors' agreement to subordinate the Adequate Protection Superpriority Claims (as defined below) and the Adequate Protection Liens (as defined below) to the Carve Out (as defined below), the Prepetition Permitted Liens, the Senior Agency Agreement Liens, the Senior Agency Agreement Claims, the DIP Liens, and the DIP Superpriority Claim, in each case as applicable, upon entry of the Final Order, each of the Prepetition Subordinated Secured Creditors is entitled to the benefits of a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

I.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee for the District of Delaware; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel to each of the Prepetition Senior Agent and the Prepetition Term Agent; (vi) counsel to the Prepetition Indenture Trustee; (vii) the Pension Benefit Guaranty Corporation; and (viii) those parties, if any, who have filed a notice of appearance and request for service of pleadings in these Cases pursuant to Bankruptcy Rule 2002.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required except as set forth in paragraph 25 below.

J.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      *Motion Approved*.  The Motion is granted on an interim basis and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      *Objections Overruled*.  All objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled.

3.      *Authorization to Use Cash Collateral*.  Subject to the terms, conditions, and limitations set forth in this Interim Order, the Debtors are hereby authorized to use the Cash Collateral until the Termination Declaration Date (as defined below); provided, however, that during the Remedies Notice Period (as defined below) the Debtors may use Cash Collateral solely (a) in the ordinary course of business, including, without limitation, to meet payroll (other than severance), (b) to fund the Carve Out, and (c) as otherwise agreed by the Prepetition Indenture Trustee.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court).

4.      *Adequate Protection Liens*.

(a)      *Creation of Adequate Protection Liens*.  To the extent of any diminution in value of their respective Prepetition Subordinated Liens on the Prepetition Collateral, the Prepetition Indenture Trustee (for the benefit of itself and the other Prepetition Subordinated Creditors) is hereby granted, pursuant to Sections 361, 363 and 364(d) of the Bankruptcy Code, valid and perfected replacement and additional security interests in, and liens on (the "**Adequate Protection Liens**") all of the Debtors' right, title and interest in, to and the following  (the "**Adequate Protection Collateral**"):[5]

(i)      all Accounts;

(ii)      all Goods, including Equipment, Inventory and Fixtures;

(iii)      all Documents, Instruments and Chattel Paper;

(iv)      all Letters of Credit and Letter-of-Credit Rights;

---

[5] All defined terms in the description of Collateral shall have the meanings ascribed thereto in the Prepetition Subordination Indenture Documents.  All terms not specifically defined in the Prepetition Subordination Indenture Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(v)        all Securities Collateral;

(vi)        all Investment Property;

(vii)        all Intellectual Property;

(viii)        all Commercial Tort Claims;

(ix)        all General Intangibles (including, without limitation, all Payment Intangibles)

(x)        all Deposit Accounts;

(xi)        all Supporting Obligations;

(xii)        all money, cash or cash equivalents;

(xiii)        all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)        all proceeds of leases of real property;

(xv)        all owned real property;

(xvi)        effective upon the entry of the Final Order, all proceeds from claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and Section 724(a) of the Bankruptcy Code (the "**Avoidance Actions**");

(xvii)        effective upon the entry of the Final Order, the Debtors' rights under Section 506(c) and Section 550 of the Bankruptcy Code and the proceeds thereof;

(xviii)        to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xix)        all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xx)    to the extent not otherwise covered by clause (i) through (xix) above, all other personal property of each Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; provided that the Adequate Protection Collateral shall not include Excluded Property  (as defined in the Prepetition Subordinated Indenture).

The Adequate Protection Liens granted to the Prepetition Indenture Trustee shall secure Prepetition Subordinated Obligations.  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Prepetition Permitted Liens, (iii) any adequate protection liens granted to the Prepetition Senior Agent, (iv) the Carve Out, and (v) the Senior Agency Agreement Liens.

(b)    *Treatment of Adequate Protection Liens.*  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases (as defined below).  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Cases**"), and/or upon the dismissal of any of the Cases or Successor Cases.

5.    *Adequate Protection Superpriority Claims.*

(a)    *Superpriority Claim of Prepetition Indenture Trustee.*  As further adequate protection of the interests of the Prepetition Indenture Trustee and the other Prepetition Subordinated Creditors with respect to the Prepetition Subordinated Obligations, the Prepetition Indenture Trustee (for the benefit of itself and the other Prepetition Subordinated Creditors) is hereby granted an allowed administrative claim against the Debtors' estates under Sections 503

13

and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Indenture Trustee's interests in the Prepetition Collateral.

(b)    *Priority of Adequate Protection Superpriority Claims*.    The Adequate Protection Superpriority Claims granted to the Prepetition Indenture Trustee shall be junior to the Carve Out, the Prepetition Permitted Liens, the DIP Liens, the DIP Superpriority Claim, the Senior Agency Agreement Claims, and any adequate protection claim granted to the Prepetition Senior Agent.    The Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code.

6.    *Carve-Out.*

(a)    As used in this Interim Order, the "**Carve Out**" means, collectively, the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee in such amounts as agreed to by the United States Trustee or as determined by order of the Court pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code plus interest at the statutory rate; (ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) the aggregate amount of unpaid fees, costs and expenses of the Debtors' and any Committee's professionals, in each case retained by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327(a) or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees and expenses are ultimately allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), incurred prior to the Termination Declaration Date (whether or

14

not allowed by the Court prior to or after the delivery of a Termination Declaration); (iv) the Success Fee; and (v) $150,000 (the "**Post Termination Declaration Date Carve-Out Amount**") for Allowed Professional Fees incurred from and after the Termination Declaration Date.

(b)        Notwithstanding the foregoing, the Success Fee shall be deemed part of the Carve Out, provided that the Success Fees shall be paid solely from the proceeds of a Permitted Sale and shall not reduce the Post Termination Declaration Carve Out Amount. No Plan shall fail to provide for the payment in full of any outstanding Transaction Fees on the effective date thereof. No Financing Transaction (as defined in the Sale Consultant Agreement) shall fail to provide for payment in full of the Financing Success Fee (as defined in the Sale Consultant Agreement) on the closing date thereof.

7.        _No Direct Obligation to Pay Professional Fees or Committee Expenses_.  None of the Prepetition Subordinated Secured Creditors shall be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Subordinated Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

8.        _Modification of Automatic Stay_.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims.

9.      *Automatic Perfection of Liens*.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Subordinated Creditors to the priorities granted herein.

10.      *Termination Date*.

(a)      On the Termination Declaration Date, subject to the expiration of the five (5) business day period after the Termination Declaration Date (the "**Remedies Notice Period**"), all authority to use Cash Collateral shall cease, provided, however, that during the Remedies Notice Period, the Debtors may use Cash Collateral solely as set forth in paragraph 3 herein.

(b)      As used in this Interim Order, "Termination Event" means any of the events specified below:

(i)      any of the Cases is dismissed or converted to a Chapter 7 or a Chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in any of the Cases; or

(ii)      any of the Debtors propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order

16

that is not conditioned upon the payment in full in cash, on the effective date of such plan of all Adequate Protection Superpriority Claims; or

(iii)    the Debtors fail to comply in any material respect with any covenant, agreement, obligation or requirement specified in this Interim Order, and in each case such failure shall continue unremedied for more than three (3) business days after written notice thereof; or

(iv)    the Debtors fail to provide any additional adequate protection ordered by the Court and such failure shall continue unremedied for more than three (3) days after written notice thereof.

11.    Notice of Termination.  Unless the Court orders otherwise during the Remedies Notice Period, upon the expiration of the Remedies Notice Period after the occurrence and during the continuance of a Termination Event and solely after the Discharge (as defined in the Prepetition Subordinated Indenture) of all Prepetition Senior Obligations and the DIP Obligations owed to the Prepetition Senior Creditors or their permitted successors and assigns, the Prepetition Indenture Trustee may in its discretion declare the consensual use of Cash Collateral terminated (such declaration, a "**Termination Declaration**"). Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtors, counsel to each Prepetition Secured Creditor, counsel to any Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  The use of Cash Collateral shall automatically cease on the Termination Declaration Date except as provided in paragraph 3.

12.    Proofs of Claim.    None of the Prepetition Subordinated Creditors or the Prepetition Subordinated Creditors will be required to file proofs of claim or requests for

17

approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Interim Order relating to the amount of the Prepetition Subordinated Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Cases.

13.    <u>Limitations on the Cash Collateral and the Case Professionals Carve Out</u>.  The Cash Collateral and the Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by the Debtors or any Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Subordinated Obligations, (ii) for monetary, injunctive or other affirmative relief against the Prepetition Subordinated Creditors or their respective collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the Prepetition Subordinated Creditors of any rights and remedies under this Interim Order or the Final Order; (b) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Prepetition Subordinated Creditors; (c) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the Prepetition Subordinated Creditors; or (d) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Subordinated Obligations, the Prepetition Subordinated Liens or any other rights or interests of the Prepetition Subordinated Creditors; *provided* that,

18

notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the proceeds of the Prepetition Collateral (including Cash Collateral) or the Carve Out may be used by the Committee during the Challenge Period to investigate the claims and liens of the Prepetition Secured Creditors (and other potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors); *provided further* that the foregoing shall not prohibit the use of Cash Collateral and the Carve Out for the purpose of seeking non-consensual use of cash collateral (subject to the right of the Prepetition Subordinated Creditors to seek additional adequate protection in connection therewith).

14.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of any party to object to the allowance and payment of such fees and expenses.

15.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The stipulations, findings, representations and releases contained in this Interim Order with respect to the Prepetition Subordinated Creditors and the Prepetition Subordinated Obligations shall be binding upon all parties-in-interest, any trustee appointed in these cases and any Committee (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Debtors or, subject to clause (b) below, any other Challenge Party initiates an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 15:  (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Subordinated Creditors on behalf of the Debtors, their estates or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those

19

in relation to:  (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Subordinated Creditor; (ii) the validity, allowability, priority, or amount of any of the Prepetition Subordinated Obligations (including any fees included therein); (iii) the secured status of any of the Prepetition Subordinated Obligations; or (iv) any liability of any of the Prepetition Subordinated Creditors with respect to anything arising from any of the respective Prepetition Subordinated Indenture Documents; and (b) "**Challenge Period**" means (i) with respect to any party-in-interest other than the Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to the Committee, the period from the date such Committee is formed until the date that is sixty (60) calendar days thereafter.

(b)     During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors and the Prepetition Subordinated Creditors during the Challenge Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto, and from the date that the Debtors and the Prepetition Subordinated Creditors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action (or a settlement in lieu of an adversary) and ten (10) days to initiate such action.  If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtors, if timely notified of a potential Challenge and if such Challenge is commenced in a timely manner as set forth herein, shall retain authority to

20

prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(c)    Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"):  (A) any and all such Challenges and objections by any party (including, without limitation, any Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Subordinated Creditors' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against any of the Debtors or the Prepetition Subordinated Creditors relating in any way to the Debtors or the Prepetition Subordinated Indenture Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

(d)    For the avoidance of doubt, in the event the case is converted to chapter 7 or a chapter 11 trustee is appointed prior to expiration of the Challenge Period described in this paragraph, the Challenge Period shall not expire until 60 days after the trustee's appointment.  In the event the Committee or any other party in interest (or the Debtors, acting at the behest of either of them) has commenced a Challenge prior to the conversion to chapter 7 or appointment of a chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending

Challenge, In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge or the entry of a final, non-appealable order or judgment on account of any Challenge (brought within the Challenge Period), the trustee shall not be bound by the Debtors' acknowledgments, admissions, confirmations, stipulations and waivers in this Order.

16.    Reservation of Rights: Notwithstanding anything to the contrary contained in this Interim Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 15 hereof), this Court may unwind the repayment of the applicable Prepetition Subordinated Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Subordinated Obligations consisting of an unsecured claim or other amount not allowable under Section 502 of the Bankruptcy Code.

17.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

18.    Section 506(c) Claims.  Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Prepetition Subordinated Creditors or the Prepetition Subordinated Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

19.    Section 552(b).  Subject to the entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Subordinated Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

20.    <u>Discharge Waiver</u>.  Subject to the entry of the Final Order, the Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  It shall constitute a Termination Event if the Debtors propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all Adequate Protection Superpriority Claims.

21.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Subordinated Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional adequate protection); (b) the rights of any of the Prepetition Subordinated Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to Section 506(b) of the Bankruptcy Code; or (c) any of the rights of the Prepetition Subordinated Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other

23

than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Subordinated Creditors are preserved.

22.    Binding Effect of Interim Order.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Subordinated Creditors, all other creditors of any of the Debtors, any Committee or any other court appointed committee, appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case. Notwithstanding anything contained herein with respect to the obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.

23.    Survival.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Subordinated Creditors pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases.

24.    Final Hearing.    The Final Hearing to consider entry of the Final Order and final approval of the Motion is scheduled for _February 22_, 2016 at _1_ :_00_p.m. (Eastern Time) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, Courtroom 1, at the

24

United States Bankruptcy Court for the District of Delaware located at 824 North Market Street
Wilmington, DE 19801.

25.    <u>Notice of Final Hearing</u>:  On or before *February 5*, 2016, the Debtors shall
serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim
Order upon:  (a) the Office of the United States Trustee for the District of Delaware; (b) the
Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the thirty (30)
largest unsecured creditors of the Debtors at their last known addresses; (e) Choate, Hall &
Stewart LLP (Attn: Kevin J. Simard, Esq. and Sean M. Monahan, Esq.), attorneys for the DIP
Agent and the Prepetition Senior Agent; (f) Paul Hastings LLP (Attn: Leslie Plaskon, Esq.),
attorneys for the DIP Term Agent and the Prepetition Term Agent; (g) Emmet, Marvin & Martin,
LLP (Attn: Margery A. Colloff, Esq.), attorneys for the Prepetition Indenture Trustee, (h) K&L
Gates LLP (Attn: John A. Bicks, Esq.), as counsel to certain Prepetition Subordinated
Noteholders, (i) any party which has filed prior to such date a request for notices under
Bankruptcy Rule 2002 with this Court; and (j) counsel for any Committee.

26.    <u>Objection Deadline</u>: Objections, if any, to the relief sought in the Motion shall be
in writing, shall set forth with particularity the grounds for such objections or other statement of
position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon
(a) O'Melveny & Myers LLP (Attn: Steve Warren, Esq., swarren@omm.com, and Jennifer
Taylor, Esq., jtaylor@omm.com) and Richards, Layton & Finger, P.A. (Attn: Mark D. Collins,
Esq., collins@rlf.com) co-counsel for the Debtors; (b) the Office of the United States Trustee for
the District of Delaware; (c) counsel to any Committee; (d) Choate, Hall & Stewart LLP (Attn:
Kevin J. Simard, Esq., ksimard@choate.com), attorneys for the DIP Agent and the Prepetition
Senior    Agent;    (e)    Paul    Hastings    LLP    (Attn:    Leslie    Plaskon,    Esq.,

25

leslieplaskon@paulhastings.com), attorneys for the DIP Term Agent and the Prepetition Term Agent, (f) Emmet, Marvin & Martin, LLP (Attn: Margery A. Colloff, Esq., mcolloff@emmetmarvin.com), attorneys for the Prepetition Indenture Trustee, and (g) K&L Gates LLP (Attn: John A. Bicks, Esq., john.bicks@klgates.com), as counsel to certain Prepetition Subordinated Noteholders so that such objections are filed with the Court and received by said parties on or before 4 :00 p.m. (Eastern Time) on February 16 , 2016 with respect to entry of the Final Order.

27.    Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

28.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

29.    Conflict.  In the event of any conflict between this Interim Order and the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Granting Related Relief, and (VII) Scheduling a Final Hearing* solely with respect to the treatment of the Prepetition Subordinated Creditors and the use of their Cash Collateral, this Interim Order shall govern.

Dated: February 3 , 2016
            Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

26