

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

HANCOCK FABRICS, INC., et al., [1]
a Delaware corporation,
               Debtors.

Chapter 11

Case No. 16-10296 (BLS)

Jointly Administered
**Re: Docket No. 14**

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) GRANTING RELATED RELIEF, AND (VII) SCHEDULING A FINAL HEARING

This matter having come before the Court upon the motion (the "**Motion**") by Hancock Fabrics, Inc., a Delaware corporation (the "**Lead Borrower**"), HF Merchandising, Inc., a Delaware corporation, Hancock Fabrics of MI, Inc., a Delaware corporation, Hancock Fabrics, LLC, a Delaware limited liability company, hancockfabrics.com, Inc., a Delaware corporation, HF Enterprises, Inc., a Delaware corporation, and HF Resources, Inc., a Delaware corporation, each as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

(i)      authorization, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), to obtain, as co-borrowers (collectively, the "**Borrowers**"), secured, superpriority post-petition loans, advances and other financial accommodations (the "**DIP Facility**"), pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among (a) the Lead Borrower, (b) the other Borrowers party thereto from time to time, (c) the Guarantors[2] party thereto from time to time, (d) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities herein, the "**DIP Agent**") for its own benefit and the benefit of the other Credit Parties, (e) GACP Finance Co., LLC, as term agent (in such capacity, the "**DIP Term Agent**"), and (f) the Lenders from time to time party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"; the DIP Agent, the DIP Term Agent, the DIP Lenders and the other Credit Parties under the DIP Loan Documents (as defined below) are collectively referred to herein as the "**DIP Credit Parties**"), substantially in the form of <u>Exhibit A</u> attached hereto; and

(ii)      authorization to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents; and

(iii)      until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility and this Interim Order, authorization, prior to the entry of the Final

---

[2] Capitalized terms used by not defined have the meanings given to them in the DIP Loan Documents.

RLF1 13833016v.1

Order, to request extensions of credit under the DIP Facility up to an aggregate principal amount of $80,000,000 at any one time outstanding (the "**Interim Financing**"); and

     (iv)    entry of this "**Interim Order**" approving the Interim Financing; and

     (v)    the granting of allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in each of the Cases and any Successor Cases (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents (collectively, and including all "Obligations" as described in the DIP Credit Agreement, including all obligations with respect to letters of credit issued or deemed issued under the DIP Credit Agreement, respectively, and, together, the "**DIP Obligations**"), subject to the priorities set forth herein; and

     (vi)    authorization to use "**Cash Collateral**," as defined in Section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004 on the terms and conditions set forth in the DIP Loan Documents and this Interim Order; and

     (vii)    the granting to the DIP Agent, for the benefit of the DIP Credit Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the priorities set forth herein; and

     (viii)    authorization to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, upfront fees, closing fees, administrative fees, any additional fees set forth in the DIP Loan Documents, the reasonable fees and disbursements of the DIP Credit Parties' attorneys, advisers, accountants, and other consultants, and all related

expenses of the DIP Credit Parties, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents; and

(ix)    authorization to pay in full the Prepetition Senior Obligations (as defined herein) upon the entry of the Final Order (as defined herein) and as set forth herein, subject to the "Challenge" rights of parties in interest described in paragraphs 33 and 34 of this Interim Order; and

(x)    the provision of adequate protection to the Prepetition Secured Creditors (as defined herein) to the extent set forth herein; and

(xi)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(xii)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion, the entry of an order (a "**Final Order**") approving the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing;

(xiii)    granting related relief.

The Court having considered the Motion, the *Declaration of Dennis Lyons in Support of Chapter 11 Petitions and Request for First Day Relief*, including the Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 9013-1; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved

or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW: [3]

B.      *Petition Date*.  On February 2, 2016 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, (the "**Court**"), commencing these Cases.

C.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

D.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion and granted in this Interim

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

RLF1 13833016v.1

Order are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.

   E. *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not appointed any official committee of unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (a "**Committee**").

   F. *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraphs 33 and 34 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(x) below are referred to herein as the "**Debtors' Stipulations**"):

   (i) *Prepetition Senior Credit Documents*.  As of the Petition Date, the Debtors had outstanding secured debt to various lenders pursuant to that certain Credit Agreement dated as of April 22, 2015 (as amended, modified and supplemented from time to time, the "**Prepetition Senior Credit Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition Senior Credit Documents**"), by and among (a) the Lead Borrower, (b) the other Borrowers party thereto from time to time, (c) the Guarantors party thereto from time to time, (d) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities herein, the "**Prepetition Senior Agent**") for its own benefit and the benefit of the other "Credit Parties" (as defined therein), (e) GACP Finance Co., LLC, as term agent (in such capacity, the "**Prepetition Term Agent**") and (f) the Lenders from time to time party thereto (the "**Prepetition Senior Lenders**" and each a "**Prepetition Senior Lender**"; the Prepetition Senior Agent, the Prepetition Term Agent, the Prepetition Senior

Lenders and the other "Credit Parties" under the Prepetition Senior Credit Documents are collectively referred to herein as the "**Prepetition Senior Creditors**").

(ii)   *Prepetition Senior Obligations.*  As of the Petition Date, the aggregate outstanding amount owed by the Debtors under the Prepetition Senior Credit Documents was not less than $82,000,000, consisting of revolving credit loans in the outstanding principal amount of approximately $57,125,000 (the "**Prepetition Revolving Credit Loans**"), issued and outstanding letters of credit in the approximate amount of $6,700,000; and a term loan in the outstanding principal amount of approximately $18,300,000 (the "**Prepetition Term Loan**") (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Senior Credit Documents, and further including all "Obligations" as described in the Prepetition Senior Credit Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "**Prepetition Senior Obligations**").  As more fully set forth in the Prepetition Senior Credit Documents, prior to the Petition Date, the Debtors granted first-priority security interests in and liens on substantially all personal and real property of the Debtors, including, without limitation, owned real estate, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**"), to the Prepetition Senior Agent (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Senior Obligations.

(iii)   *Prepetition Subordinated Indenture Documents.*  As of the Petition Date, the Debtors had outstanding secured debt to various noteholders (collectively, the "**Prepetition Subordinated Noteholders**") pursuant to that certain Indenture dated as of November 20, 2012 (as amended, modified and supplemented from time to time, including pursuant to that certain

Supplemental Indenture dated as of April 22, 2015, the "**Prepetition Subordinated Indenture**" and together with all related documents, guaranties and agreements, the "**Prepetition Subordinated Indenture Documents**"), by and between (a) the Lead Borrower and (b) Deutsche Bank National Trust Company, as indenture trustee (in such capacity, the "**Prepetition Indenture Trustee**"; the Prepetition Indenture Trustee and the Prepetition Subordinated Noteholders are collectively referred to herein as the "**Prepetition Subordinated Creditors**"). The Prepetition Senior Creditors and the Prepetition Subordinated Creditors are collectively referred to herein as the "**Prepetition Secured Creditors**" and the Prepetition Senior Credit Documents and the Prepetition Subordinated Indenture Documents are collectively referred to herein as the "**Prepetition Credit Documents**".

      (iv)   *Prepetition Subordinated Obligations*.  As of the Petition Date, the outstanding principal amount owed by the Debtors under the Prepetition Subordinated Indenture Documents was not less than $8,204,000 (together with any amounts paid, incurred or accrued, including but not limited to interest, fees and expenses, prior to the Petition Date in accordance with the Prepetition Subordinated Indenture Documents, the "**Prepetition Subordinated Obligations**"; the Prepetition Senior Obligations and the Prepetition Subordinated Obligations are collectively referred to herein as the "**Prepetition Secured Obligations**").  As more fully set forth in the Prepetition Subordinated Indenture Documents, prior to the Petition Date, the Debtors granted second-priority security interests in and liens on the Prepetition Collateral to the Prepetition Indenture Trustee (the "**Prepetition Subordinated Liens**") to secure repayment of the Prepetition Subordinated Obligations. The Prepetition Subordinated Liens and the Prepetition Senior Liens are collectively referred to herein as the "**Prepetition Liens**."

RLF1 13833016v.1

(v)    *Subordination Provisions.*    Pursuant to the terms of the Prepetition Subordinated Indenture, including, without limitation, Article XI of the Prepetition Subordinated Indenture, (A) the Prepetition Subordinated Obligations are subordinated in all respects to the prior payment in full of the Prepetition Senior Obligations, and (B) the Prepetition Subordinated Liens are subordinate and junior in all respects to the Prepetition Senior Liens (collectively, such terms are referred to herein as the "**Indenture Subordination Provisions**").    The Indenture Subordination provisions are a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code.    The DIP Agent has advised the Debtors that its willingness to provide the DIP Facility is conditioned on, among other things, the DIP Agent (in addition to the Prepetition Senior Agent) having all of the rights of the Prepetition Senior Agent under the subordination provisions set forth in the Prepetition Subordinated Indenture.

(vi)    *Validity, Perfection and Priority of Prepetition Liens and Obligations.* The Debtors (without limiting the rights of other parties in interest under paragraphs 33 and 34 of this Interim Order), and the Prepetition Secured Creditors acknowledge and agree that:  (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[4]  (c) the Prepetition Secured Obligations

---

[4] For purposes of this Interim Order, Prepetition Permitted Liens shall include only liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law and in existence as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest

constitute legal, valid, binding, and non-avoidable obligations of the Debtors and constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, counterclaims, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Senior Obligations exceeded the amount of those obligations, and accordingly the Prepetition Senior Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, attorneys' fees and related expenses), costs and other charges, and contingent indemnification obligations arising under or related to the Prepetition Senior Credit Documents.

(vii)    *Cash Collateral.*  The Debtors acknowledge and stipulate that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original

---

including, but not limited, to the Debtors, the DIP Agent, the DIP Term Agent and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(viii)    *Default by the Debtors.*    The Debtors acknowledge and stipulate that the Debtors are in default under each of the Prepetition Senior Credit Documents and the Prepetition Subordinated Indenture Documents.

(ix)    *No Other Liens.*    As of the Petition Date, other than the Prepetition Permitted Liens or as permitted by the Prepetition Senior Credit Documents, there were no security interests or liens on the Prepetition Collateral other than the Prepetition Liens.

(x)    *Release.*    The Debtors hereby forever, unconditionally and irrevocably release, discharge and acquit the Prepetition Senior Agent, the Prepetition Term Agent, the DIP Agent, the DIP Credit Parties and the Prepetition Secured Creditors, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Facility, the DIP Loan Documents, the Prepetition Credit Documents, the Prepetition Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the DIP Liens, DIP Obligations, Prepetition Credit

Documents, Prepetition Secured Obligations and the Prepetition Liens; provided that the foregoing release shall not constitute a release of any rights of the Debtors arising under the DIP Loan Documents. The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Interim Order and, if applicable, the Final Order.

       G.    *Findings Regarding the Postpetition Financing.*

       (i)    *Request for Postpetition Financing.* The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay the remaining Prepetition Senior Obligations upon the entry of the Final Order and as otherwise set forth herein, and (c) use Cash Collateral on the terms described herein to administer their Cases and fund their operations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to the Final Order, which shall be in form and substance acceptable to the DIP Agent and the DIP Term Agent. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

      (ii)    *Priming of the Prepetition Liens.* The priming of each of the Prepetition Liens on the Prepetition Collateral by the DIP Liens will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors. Each Prepetition Secured Creditor has consented to such priming liens under the terms and conditions set forth in this Interim Order and the Payoff Letter (as defined below) and is entitled to receive adequate protection of its interests as more fully described below.

(iii)    *Immediate Need for Postpetition Financing and Use of Cash Collateral.*
The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Credit Parties on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Credit Parties, (1) perfected security interests in and liens on (each as

13

provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(v)    *Use of Proceeds of the DIP Facility.*  As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Credit Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of all remaining Prepetition Senior Obligations upon the entry of the Final Order (other than contingent indemnification obligations) as provided in that certain payoff letter prepared by the Prepetition Senior Agent (the "**Payoff Letter**", a copy of which has been approved by the Debtors, the Prepetition Senior Agent, Prepetition Term Agent, the DIP Agent and the DIP Term Agent and a copy of which is attached as <u>Exhibit B</u> hereto), (b) in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as <u>Exhibit C</u> hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**") solely for (i) post-petition operating expenses and other working capital and general corporate purposes, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Cases, including prior to the delivery of a Carve-Out Trigger Notice (as defined below), to fund the DIP Carve Out through deposits into the Professional Fee Escrow Account, (iv) Prepetition Senior Creditor Adequate Protection Payments, and (v) as otherwise permitted under the DIP Loan Documents, and (c) after the delivery of a Carve-Out Trigger Notice to fund the Post Trigger Notice Carve-Out Amount (as defined below), and, solely from the proceeds of a Permitted Sale, the Success Fee.  The repayment of the Prepetition Senior Obligations in accordance with this Interim Order and the Payoff Letter is necessary, as the Prepetition Senior

Creditors have not otherwise consented to the use of Cash Collateral or the subordination of the Prepetition Senior Agent's liens to the DIP Liens (as defined herein), and the DIP Credit Parties are not willing to provide the DIP Facility unless the Prepetition Senior Obligations (other than contingent indemnification obligations) are paid in full upon the entry of the Final Order (subject to the terms of the Payoff Letter) and as otherwise set forth herein. Such payments will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraphs 33 and 34 herein.

(vi)    *Application of Proceeds of DIP Collateral.*  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors, the DIP Agent and the DIP Term Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18(a) of this Interim Order.

H.    *Adequate Protection.*    The Prepetition Senior Creditors and Prepetition Subordinated Creditors are entitled to receive adequate protection on account of their interests in the Prepetition Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code to the extent of any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral) resulting from the subordination to the DIP Carve Out, the Senior Agency Agreement Lien (as defined in the DIP Credit Agreement), and to the DIP Liens (each as defined herein), the Debtor's use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, to the extent of any such diminution in value, the "Diminution in Value"). Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Senior Creditors shall receive (i) solely to the extent of any Diminution in Value, Adequate Protection Liens and Superpriority Claims, as more fully set

forth in paragraphs 12 and 13 herein, and (ii) the Prepetition Senior Creditor Adequate Protection Payments. The Prepetition Subordinated Creditors shall receive, subject to the priorities set forth in paragraphs 12 and 13 below and solely to the extent of any Diminution in Value, the Adequate Protection Liens and the Adequate Protection Superpriority Claims. For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens, the DIP Carve Out, the Prepetition Permitted Liens, the Senior Agency Agreement Liens, and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein) and the Senior Agency Agreement Claims. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

I.      *Sections 506(c) and 552(b)*.  In light of (i) the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein), the Prepetition Permitted Liens, the Senior Agency Agreement Liens and the Senior Agency Agreement Claims and agreement to fund the Budget in accordance with the terms of the DIP Loan Documents; and (ii) each Prepetition Secured Creditor's agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the DIP Carve Out, the Prepetition Permitted Liens, the Senior Agency Agreement Liens, the Senior Agency Agreement Claims, the DIP Liens, and the DIP Superpriority Claim, in each case as applicable, and to consent to the use of Cash Collateral, upon entry of the Final Order, each of the DIP Credit Parties and each Prepetition Secured Creditor is entitled to the benefits of a

16

waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

J.      *Good Faith of the DIP Agent and the DIP Term Agent.*

(i)      *Willingness to Provide Financing.*  Each of the DIP Credit Parties has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Senior Obligations as contemplated by this Interim Order and the Payoff Letter; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the DIP Credit Parties is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)      *Business Judgment and Good Faith Pursuant to Section 364(e).*  The extension of credit under the DIP Facility reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Credit Parties.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and each of the DIP Credit

Parties is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

   K. *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the District of Delaware; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel to each of the Prepetition Senior Agent and the Prepetition Term Agent; (vi) counsel to the Prepetition Indenture Trustee; (vii) the Pension Benefit Guaranty Corporation; and (viii) those parties, if any, who have filed a notice of appearance and request for service of pleadings in these Cases pursuant to Bankruptcy Rule 2002.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required except as set forth in paragraph 48 below.

   L. *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

   Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

   IT IS HEREBY ORDERED that:

   1. Interim Financing Approved.  The Motion is granted on an interim basis, the Interim Financing (as defined herein) is authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      <u>Objections Overruled</u>.  All objections to the Interim Financing to the extent not

withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.      <u>Authorization of the DIP Financing, DIP Loan Documents and Payoff Letter</u>.  The

Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the

DIP Loan Documents and the Payoff Letter, (ii) to incur and to perform the DIP Obligations in

accordance with, and subject to, the terms of this Interim Order, the DIP Loan Documents, the

Payoff Letter and the Budget, (iii) to deliver all instruments and documents that may be

necessary or required for performance by the Debtors under the DIP Facility and the creation and

perfection of the DIP Liens described in and provided for by this Interim Order and the DIP

Loan Documents, and (iv) subject to the rights of third parties pursuant to paragraphs 33 and 34

below and the entry of the Final Order, to pay and perform all obligations under the Payoff Letter

in accordance with the terms set forth therein, including to provide for (x) the releases in favor of

each of the Prepetition Senior Creditors and their related parties and (y) repayment in full in cash

of the Prepetition Senior Obligations (other than the Surviving Obligations).  The Debtors are

hereby authorized to pay the principal, interest, fees, expenses and other amounts described in

the DIP Loan Documents as such become due and without need to obtain further Court approval,

including, without limitation, commitment fees, upfront fees, administrative fees, any additional

fees set forth in the DIP Loan Documents, and the reasonable fees and disbursements of the DIP

Credit Parties' attorneys, advisers, accountants, and other consultants, whether or not the

transactions contemplated hereby are consummated, all to the extent provided in the DIP Loan

Documents, with invoices to be provided in accordance with paragraph 26 below.  All

collections and proceeds, whether from ordinary course collections, asset sales, debt issuances,

insurance recoveries, condemnations or otherwise, will be deposited and applied as required by

this Interim Order and the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.  Upon execution and delivery, the Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms, but subject only to the rights of third parties pursuant to paragraphs 33 and 34 below. Notwithstanding anything to the contrary in the Indenture Subordination Provisions, upon the entry of this Interim Order, the Prepetition Senior Agent may deliver to the DIP Agent any possessory collateral in the Prepetition Senior Agent's possession, without regard to whether the Prepetition Subordinated Creditors have any rights thereunder or has obtained additional rights under any other similar agreement.

4.    Authorization to Borrow.  Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized, prior to the entry of the Final Order, to request extensions of credit under the DIP Facility up to an aggregate principal amount of $80,000,000 at any one time outstanding.

5.    DIP Obligations.  The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**Successor Cases**").  Upon entry of this Interim Order, the DIP Obligations

will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Credit Parties under the DIP Loan Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6.    Postpetition Liens and Collateral.

(a)    Effective immediately upon the entry of this Interim Order, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following (the "**DIP Collateral**"): [5]

(i)    all Accounts;

(ii)    all Goods, including Equipment, Inventory and Fixtures;

(iii)    all Documents, Instruments and Chattel Paper;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)    all Securities Collateral;

(vi)    all Investment Property;

(vii)    all Intellectual Property Collateral;

(viii)    all Commercial Tort Claims;

---

[5] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

RLF1 13833016v.1

(ix)    all General Intangibles (including, without limitation, all Payment Intangibles);

(x)    all Deposit Accounts (including, without limitation, the Concentration Account);

(xi)    all Supporting Obligations;

(xii)    all money, cash or cash equivalents;

(xiii)    all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)    all proceeds of leases of real property;[6]

(xv)    all owned real property;

(xvi)    effective upon the entry of the Final Order, all proceeds from claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and Section 724(a) of the Bankruptcy Code (the "**Avoidance Actions**");

(xvii)    effective upon the entry of the Final Order, the Debtors' rights under Section 506(c) and Section 550 of the Bankruptcy Code and the proceeds thereof;

(xviii)    to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

---

[6]  For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

RLF1 13833016v.1

(xix)    all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

(xx)    to the extent not otherwise covered by clause (i) through (xix) above, all other personal property of each Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; provided that the DIP Collateral shall not include Excluded Property.

(b)    Effective upon the entry of the Interim Order, (i) all DIP Liens and the DIP Carve Out shall each be and remain at all times senior to the Prepetition Liens, (ii) all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including any intercompany subordination agreements), and freight forwarder agreements constituting Prepetition Senior Credit Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors, which in each case were filed by the Prepetition Senior Agent, shall in each case be deemed to be delivered and/or filed in connection with the DIP Facility, shall constitute DIP Credit Documents and shall remain in full force and effect without any further action by the

23

Debtors, the DIP Agent, the DIP Term Agent or any other person, and in each case the DIP Agent shall be deemed to be a party thereto, (iii) any and all references in any such agreements or documents referred to in clause (ii) above to the "Credit Agreement" shall hereafter be deemed to mean and refer to the Prepetition Credit Agreement and the DIP Credit Agreement, and (iv) any and all references in any such agreements or documents referred to in clause (ii) above to the "Loan Documents" shall hereafter be deemed to mean and refer to the Prepetition Senior Credit Documents and the DIP Credit Documents, in each case as amended, modified, supplemented or restated and in effect from time to time. The DIP Agent is hereby deemed to have all of the rights and remedies accorded to the "Credit Facility Agent" under the Indenture Subordination Provisions, the DIP Credit Agreement (in addition to the Prepetition Senior Credit Agreement) shall be deemed to be a "Credit Facility Loan Agreement" under the Prepetition Subordinated Indenture, and the DIP Obligations (in addition to the Prepetition Senior Obligations) shall be deemed to be "Credit Facility Debt" under the Prepetition Subordinated Indenture. Except as set forth in this Interim Order, nothing in this Interim Order shall be deemed to impair or otherwise modify the rights of the Prepetition Senior Agent or the Prepetition Term Agent under any such agreements or documents as in effect prior to the date hereof.

     7.    <u>DIP Lien Priority</u>.

     (a)    *DIP Liens*. The DIP Liens shall be junior only to the (i) DIP Carve Out, (ii) the Prepetition Permitted Liens, and (iii) the Senior Agency Agreement Liens, if any, and shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP

Collateral. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(b)     *Prepetition Liens.* For the avoidance of doubt, the Prepetition Liens shall be junior to the (i) DIP Carve Out; (ii) DIP Liens; (iii) the Adequate Protection Liens described in paragraph 12 below; and (iv) the Adequate Protection Superpriority Claims.

8.     <u>DIP Superpriority Claim.</u>

(a)     *DIP Agent Superpriority Claim.* Upon entry of this Interim Order, the DIP Agent (for the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the DIP Carve Out, Prepetition Permitted Liens and the Senior Agency Agreement Claims, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code.

(b)    *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the DIP Carve Out and amounts secured by the Prepetition Permitted Liens to the extent paid from identifiable proceeds of the assets subject to such Prepetition Permitted Liens.  Upon entry of the Final Order, the DIP Superpriority Claim shall be payable from or have recourse to the proceeds of Avoidance Actions.

9.    No Obligation to Extend Credit.  No DIP Credit Party shall have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Agent, in its sole discretion.

10.    Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Loan Documents and the Payoff Letter, and in compliance with the Budget (including, without limitation, to make Prepetition Senior Creditor Adequate Protection Payments), a copy of which has been delivered to the DIP Agent, the DIP Term Agent, the Prepetition Senior Agent, the Prepetition Term Agent and the Prepetition Indenture Trustee; provided that the use of the Post Trigger Notice Carve Out Amount and the Success Fee (which shall be paid solely from the proceeds of a Permitted Sale) shall not be subject to the Budget.

**Authorization to Use Cash Collateral**

11.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Date; provided, however, that during the

Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to (a) meet payroll (other than severance) and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its sole discretion, in each case in accordance with the terms and provisions of the Budget; and (b) to fund the Post-Trigger Notice Carve-Out Amount and, solely from the proceeds of a Permitted Sale, the Success Fee.   Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Loan Documents, and in accordance with the Budget.

       12.    <u>Payoff Letter, Adequate Protection Payments and Adequate Protection Liens</u>.

       (a)    *Payoff Letter*.  Each of the Debtors and the Prepetition Senior Creditors shall comply with the terms and provisions of the Payoff Letter.  The Debtors' residual interest in any amounts potentially payable to any of them under the terms of the Payoff Letter shall be subject to the DIP Liens in accordance with the priorities set forth in this Interim Order and the DIP Loan Documents.

       (b)    *Adequate Protection Payments*.  The Prepetition Senior Creditors shall receive adequate protection including in the form of: (i) payment to the Prepetition Senior Creditors of the amounts required under the Payoff Letter upon the entry of the Final Order and as otherwise set forth herein; (ii) payment of the Prepetition Senior Obligations from the proceeds of DIP Collateral as set forth in paragraph 18(a) below; and (iii) payments of interest (which shall be payable at the default rate under the Prepetition Senior Credit Agreement), fees, costs, expenses (including attorneys' fees and expenses (including the attorneys' fees of Choate Hall & Stewart, as counsel to the Prepetition Senior Agent, Paul Hastings LLP, as counsel to the

Prepetition Term Agent, and local counsel to each of the Prepetition Senior Agent and Prepetition Term Agent)), indemnities and other amounts with respect to the Prepetition Senior Obligations, in each case, in accordance with the Prepetition Senior Credit Documents (collectively, the "**Prepetition Senior Creditor Adequate Protection Payments**").

(c)     *Creation of Adequate Protection Liens.*  To the extent of any Diminution in Value, each of the Prepetition Senior Agent (for the benefit of itself and the other Prepetition Senior Creditors) and the Prepetition Indenture Trustee (for the benefit of itself and the other Prepetition Subordinated Creditors) is hereby granted, pursuant to Sections 361, 363 and 364(d) of the Bankruptcy Code, valid and perfected replacement and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition Senior Agent shall secure Prepetition Senior Obligations (including, without limitation, the Surviving Obligations) and shall be senior in all respects to the Adequate Protection Liens granted to the Prepetition Indenture Trustee.  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Prepetition Permitted Liens, (iii) the DIP Carve Out, and (iv) the Senior Agency Agreement Liens.

(d)     *Treatment of Adequate Protection Liens.*  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any

28

of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases.

       13.    <u>Adequate Protection Superpriority Claims</u>.

      (a)    *Superpriority Claim of Prepetition Senior Agent and Prepetition Indenture Trustee*. As further adequate protection of the interests of (i) the Prepetition Senior Agent and the other Prepetition Senior Creditors with respect to the Prepetition Senior Obligations (including, without limitation, the Surviving Obligations) and (ii) the Prepetition Indenture Trustee and the other Prepetition Subordinated Creditors with respect to the Prepetition Subordinated Obligations, each of the Prepetition Senior Agent (for the benefit of itself and the other Prepetition Senior Creditors) and the Prepetition Indenture Trustee (for the benefit of itself and the other Prepetition Subordinated Creditors) is hereby granted an allowed administrative claim against the Debtors' estates under Sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Senior Agent's and the Prepetition Indenture Trustee's respective interests in the Prepetition Collateral.

      (b)    *Priority of Adequate Protection Superpriority Claims*. The Adequate Protection Superpriority Claim granted to the Prepetition Senior Agent shall be senior in all respects to the Adequate Protection Superpriority Claim granted to the Prepetition Indenture Trustee. The Adequate Protection Superpriority Claims granted to each of the Prepetition Senior Agent and the Prepetition Indenture Trustee shall be junior to the DIP Carve Out, the Prepetition Permitted Liens, the DIP Liens, the DIP Superpriority Claim, the Senior Agency Agreement Liens and the Senior Agency Agreement Claim. The Adequate Protection Liens and shall

otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.    <u>Amendments</u>.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the reasonable judgment of the Debtors and the DIP Agent, the amendment, modification, or supplement (A) is in accordance with the DIP Loan Documents, (B) is not prejudicial in any material respect to the rights of third parties, and (C) has been consented to by the DIP Agent, and (ii) a copy (which may be provided through electronic mail or facsimile) of the form of amendment, modification or supplement is provided to counsel for any Committee, the Prepetition Indenture Trustee and the U.S. Trustee at least one (1) Business Day prior to the effective date of the amendment, modification or supplement.

15.    <u>Budget Maintenance</u>.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and the DIP Term Agent and approved by the DIP Agent and the DIP Term Agent, each in their Permitted Discretion.  The Debtors will deliver copies of any such amended or updated Budget to the U.S. Trustee and the Committee, if any.  The Debtors shall comply with and update the Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance reasonably acceptable to the DIP Agent and the DIP Term Agent and approved by the DIP Agent and the DIP Term Agent, each in their Permitted Discretion).  On or before Wednesday of each week, the Debtors shall deliver to the DIP Agent and the DIP Term Agent an Approved Budget Variance Report (with delivery of the same to the United States Trustee and the Committee, if any, each week after delivery to the DIP Agent and the DIP Term Agent).  During the tenth (10th) week of the initial Budget, the Debtors shall submit a

30

budget for the next successive thirteen week period to the DIP Agent and the DIP Term Agent, which budget shall be in form and substance reasonably acceptable to the DIP Agent and the DIP Term Agent and approved by the DIP Agent and the DIP Term Agent, each in their Permitted Discretion.

16.    _Modification of Automatic Stay._    The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b) authorize the Debtors to pay, and the DIP Credit Parties and Prepetition Senior Creditors to retain and apply, payments made in accordance with the terms of this Interim Order and the Payoff Letter.

17.    _Perfection of DIP Liens and Adequate Protection Liens._

(a)    _Automatic Perfection of Liens._  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Credit Parties or the Prepetition Secured Creditors to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent is authorized to file, as it in its Permitted Discretion deems necessary, such financing statements,

31

mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent and/or the DIP Term Agent may reasonably request.  The DIP Agent, in its Permitted Discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.    Application of Proceeds of DIP Collateral.

(a)    All payments received by the DIP Agent and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at Wells Fargo Bank, National Association and all proceeds from any Disposition of DIP Collateral, shall be applied as set forth in the DIP Loan Documents.

(b)    As between the DIP Agent, the DIP Term Agent, the DIP Lenders and the other DIP Credit Parties, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

(c)    Prior to the irrevocable payment in full of the DIP Obligations and the Prepetition Senior Obligations, the Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and

the Prepetition Senior Obligations (each in accordance with the DIP Loan Documents, the Payoff Letter and this Interim Order) and obligations authorized by an order of the Court.

19.    _Proceeds of Subsequent Financing_.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full in cash of all Prepetition Senior Obligations and all DIP Obligations and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein.

20.    _Maintenance of DIP Collateral_.  Until the payment in full in cash of all Prepetition Senior Obligations and all DIP Obligations and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

21.    _Disposition of DIP Collateral_.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of any DIP Credit Party or any Prepetition Senior Creditor to object to any proposed disposition of the DIP Collateral.

RLF1 13833016v.1

22.     <u>Termination Date</u>.  On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, (ii) all commitments to extend credit under the DIP Facility will terminate, and (iii) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23.     <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit Agreement shall constitute an event of default under this Interim Order (each, an "**Event of Default**").

24.     <u>Rights and Remedies Upon Event of Default</u>.

(a)     *DIP Facility Termination.*     Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its discretion (or shall in accordance with the DIP Loan Documents) (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent and/or DIP Lenders.  Upon the issuance of a Termination Declaration to the Debtors in accordance with the DIP Credit Agreement: (I) all or any portion of the Commitments of the DIP Credit Parties to make loans or otherwise extend credit may be suspended or terminated in accordance with the DIP Loan Documents; (II) all DIP Obligations may be deemed immediately due and payable in accordance with the DIP Loan Documents; (III) after expiration of the Remedies Notice Period, the DIP Agent and the DIP Lenders may exercise all other rights and remedies available to them under Section 8.02 of the DIP Credit Agreement; and (IV) any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent, provided that, during the Remedies

Notice Period, the Debtors may use Cash Collateral solely to (a) meet payroll (other than severance) and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its sole discretion, in each case in accordance with the terms and provisions of the Budget; and (b) to fund the Post-Trigger Notice Carve-Out Amount and, solely from the proceeds of a Permitted Sale, the Success Fee.  With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the DIP Credit Parties and the Prepetition Senior Creditors may exercise all rights and remedies available to them under the DIP Loan Documents or the Prepetition Senior Credit Documents, as applicable, or applicable law against the DIP Collateral and without limiting the foregoing, the DIP Credit Parties and the Prepetition Senior Creditors may, subject to the Remedies Notice Period, (i) enter onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided under the DIP Loan Documents or the Prepetition Senior Credit Documents, as applicable, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the Final Order.  For the avoidance of doubt, no party-in-interest (other than the DIP Credit Parties and the Prepetition Senior Creditors) may at any time exercise any rights and remedies available to them against the DIP Collateral until the DIP Obligations and the Prepetition Senior Obligations are paid in full in cash.  Following the termination of the Remedies Notice Period, the DIP Agent may require the Debtors to seek authority from the Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if the Debtors refuse to seek such authority, the DIP Agent shall be entitled to seek such authority directly.

(b)    *Notice of Termination.*  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtors, counsel to each Prepetition Secured Creditor, counsel to any Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraphs 11 and 24 of this Interim Order.  Any automatic stay otherwise applicable to the DIP Credit Parties and the Prepetition Senior Creditors is hereby modified so that five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**") the DIP Credit Parties and the Prepetition Senior Creditors shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Senior Credit Documents, as applicable, and this Interim Order, and shall be permitted to satisfy the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and Adequate Protection Superpriority Claims, subject only to the DIP Carve Out, Prepetition Permitted Liens and the Senior Agency Agreement Liens.  During the Remedies Notice Period, the Debtors and any Committee shall be entitled to seek an emergency hearing with the Court for the purpose of, among other things, contesting whether an Event of Default has occurred.  Unless the Court orders otherwise during the Remedies Notice Period, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Credit Parties and the Prepetition Senior Creditors shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, the Prepetition Senior Credit Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or

motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to (x) the DIP Agent and the DIP Term Agent with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents or this Interim Order and (y) the Prepetition Senior Agent and the Prepetition Term Agent with respect thereto pursuant to the Prepetition Senior Credit Agreement, the other Prepetition Senior Credit Documents or this Interim Order.

(c)     *Access to Leased Premises.*  The DIP Agent's exercise of its remedies pursuant to this paragraph 24 shall be subject to:  (w) any agreement in writing between the DIP Agent or Prepetition Senior Agent and any applicable landlord, (x) pre-existing rights of the DIP Agent and any applicable landlord under applicable nonbankruptcy law, (y) consent of the applicable landlord, or (z) further order of the Court following notice and a hearing.

25.     Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Credit Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Credit Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Agent and the DIP

Term Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the DIP Credit Parties hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Agent and the DIP Term Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created.

26.    DIP and Other Expenses. The Debtors are authorized to pay all reasonable and documented out-of-pocket expenses (and the Prepetition Senior Agent or the DIP Agent, as applicable, are authorized to make advances or charges against the applicable loan account to pay such expenses) of (x) the DIP Credit Parties in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, and (y) the Prepetition Senior Creditors (including, without limitation, expenses incurred prior to the Petition Date) as provided in the Prepetition Senior Credit Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtors' receipt of invoices for the payment thereof. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Credit Parties and the Prepetition Senior Creditors shall not be required to submit their invoices in any particular form. The professionals for the DIP Credit Parties and the Prepetition Senior Creditors shall deliver a copy of their respective invoices to counsel for any Committee and the U.S. Trustee, redacted as necessary with respect

to any privileged or confidential information contained therein. Any objections raised by the Debtors, the U.S. Trustee or any Committee with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date all reasonable fees, costs and expenses of the DIP Agent, the DIP Lenders and the Prepetition Senior Agent incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Senior Agent to first deliver a copy of its invoice as provided for herein.

27.    Indemnification.

(a)    *Generally.* The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Term Agent and each other DIP Credit Party, and each of their respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Cases, any plan, or any action or inaction by the Debtors; provided, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses,

39

claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party. The indemnity includes indemnification for the DIP Agent's and the DIP Term Agent's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, each of the DIP Agent, the DIP Term Agent and each other DIP Credit Party shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

(b) *DIP Indemnity Account.* Upon the conclusion of the Remedies Notice Period, the Debtors shall pay $250,000 from proceeds of the DIP Collateral into an indemnity account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Agent, for the benefit of the DIP Credit Parties. The DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 18(a) of this Interim Order upon the receipt by the DIP Agent, the DIP Term Agent and each other DIP Credit Party of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Credit Agreement and the DIP Loan Documents, acceptable to the DIP Agent, the DIP Term Agent and each other DIP Credit Party in their sole discretion.

28. <u>Proofs of Claim.</u> None of the DIP Credit Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Interim Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, the Prepetition Senior Obligations and the Prepetition Subordinated Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Cases.

RLF1 13833016v.1

29.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Credit Parties under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and the DIP Term Agent reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and the DIP Term Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor.

30.    <u>DIP Carve Out</u>.

(a)    *DIP Carve Out*.  As used in this Interim Order, the "**DIP Carve Out**" means, collectively, the sum of:  (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, in such amounts as agreed to by the United States Trustee or as determined by order of the Court, pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code; (ii) the aggregate amount of unpaid fees and expenses of the Debtors' and any Committee's professionals, in each case retained by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327(a) or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees and expenses are ultimately allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**"), which amount under this clause (ii) shall not exceed the sum of:  (x) commencing with the week ending February 6, 2016, an aggregate amount per week limited to the amount set forth in the

Budget for such week for Allowed Professional Fees incurred prior to the delivery of a Carve-Out Trigger Notice, which amount shall be funded into the Professional Fee Escrow Account on Wednesday of each week (or such other day of the week selected by the Debtors) in accordance with the Budget provided that (I) the Debtors have sufficient Availability on such date, (II) the Termination Date has not occurred, and (III) no Event of Default has occurred and is continuing, plus (y) $100,000 for Allowed Professional Fees incurred from and after the delivery of a Carve-Out Trigger Notice (the "**Post Trigger Notice Carve Out Amount**"); and (iii) the Success Fees.

(b)     *Professional Fee Escrow.*  No portion of the DIP Carve Out, nor any cash collateral or proceeds of the Loans may be used in violation of this Interim Order, including paragraph 31 hereof.  Notwithstanding anything to the contrary contained in this Interim Order, (A) until an Event of Default or the Termination Date has occurred, the Debtors shall be permitted to borrow under the DIP Credit Agreement on a weekly basis to fund the Professional Fee Escrow Account in the amounts contemplated under clause (x) of the immediately preceding paragraph, subject to there being sufficient Availability for such borrowings, (B) the Debtors shall be permitted to pay, from the Professional Fee Escrow Account, as and when the same may become due and payable, the Allowed Professional Fees of Case Professionals regardless of whether an Event of Default or the Termination Date has occurred, and (C) the aggregate amount of Allowed Professional Fees of Case Professionals paid by the Debtors prior to the delivery of a Carve-Out Trigger Notice from any amounts funded into the Professional Fee Escrow Account pursuant to clause (x) of the immediately preceding paragraph (but not, for the avoidance of doubt, amounts paid from any retainers held by such Case Professionals) shall not exceed the amount of such Allowed Professional Fees and Committee Expenses set forth in the Budget. None of the provisions of this Interim Order or any DIP Loan Document shall prohibit or restrict

the payment of the fees and expenses of any Case Professional from any retainers held by such Case Professional. Any amounts in the Professional Fee Escrow Account after the payment in full of all Allowed Professional Fees of Case Professionals pursuant to final fee applications and orders shall be returned to the DIP Agent, which amounts shall be applied to the DIP Obligations in the order proscribed in Section 8.03 of the DIP Credit Agreement. The DIP Liens are hereby deemed to attach to the Debtors' residual interest in such excess.

(c)     *No Direct Obligation to Pay Professional Fees or Committee Expenses.* Except for funding the Professional Fee Escrow Account as provided herein, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Credit Parties or the Prepetition Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve Out if actual Allowed Professional Fees of any Case Professional are higher in fact than the estimated fees and disbursements reflected in the Budget; provided that use of the Post Trigger Notice Carve Out Amount and the Success Fee (which solely from the proceeds of a Permitted Sale) shall not be subject to the Budget. Notwithstanding anything to the contrary contained in this Interim Order, the Budget, or the DIP Loan Documents, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be responsible for funding into the Professional Fee Escrow Account any of the Transaction Fees payable to the Sale Consultant or any other "success" fees payable to any other investment banker, and, subject to the immediately succeeding sentence, in no event shall

any such amounts be paid out of the DIP Carve Out or any funds in the Professional Fee Escrow Account. Notwithstanding the foregoing, the Success Fee shall be deemed part of the DIP Carve Out, provided that the Success Fees shall be paid solely from the proceeds of a Permitted Sale and not from the Professional Fee Escrow Account and shall not reduce the amounts available in the Budget for the DIP Carve Out or the Post Trigger Notice Carve Out Amount. No Plan shall fail to provide for the payment in full of any outstanding Transaction Fees on the effective date thereof. No Financing Transaction (as defined in the Sale Consultant Agreement) shall fail to provide for payment in full of the Financing Success Fee (as defined in the Sale Consultant Agreement) on the closing date thereof.

(d)     *Payment of DIP Carve Out.* The funding of the DIP Carve Out with the proceeds of the DIP Financing shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

31.     <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out</u>. The DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the DIP Credit Parties or the Prepetition Secured Creditors or their rights or remedies under the DIP Loan Documents, the Prepetition Credit Documents or this Interim Order or the Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would

be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating,

setting aside, avoiding or subordinating, in whole or in part, any DIP Obligations or Prepetition

Senior Obligations or Prepetition Subordinated Obligations, (iii) for monetary, injunctive or

other affirmative relief against the DIP Credit Parties, the Prepetition Senior Creditors or the

Prepetition Subordinated Creditors or their respective collateral, (iv) preventing, hindering or

otherwise delaying the exercise by the DIP Credit Parties, the Prepetition Senior Creditors or

Prepetition Subordinated Creditors of any rights and remedies under this Interim Order or the

Final Order, the DIP Loan Documents, the Prepetition Senior Credit Documents, the Prepetition

Subordinated Indenture Documents or applicable law, or the enforcement or realization (whether

by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of

the DIP Collateral or by the Prepetition Senior Agent with respect to its Adequate Protection

Liens, (v) asserting that the value of the Prepetition Collateral is less than the Prepetition Senior

Obligations, or (vi) to pursue litigation against the Prepetition Senior Agent, the Prepetition

Term Agent or any other Prepetition Senior Creditor or against the Prepetition Indenture Trustee

or any other Prepetition Subordinated Creditor; (b) to make any distribution under a plan of

reorganization or liquidation in any Chapter 11 Case; (c) to make any payment in settlement of

any claim, action or proceeding, before any court, arbitrator or other governmental body to the

extent not expressly permitted under the DIP Loan Documents; (d) to pay any fees or similar

amounts to any person who has proposed or may propose to purchase interests in any of the

Debtors other than as expressly permitted under the DIP Loan Documents; (e) objecting to,

contesting, or interfering with, in any way, the DIP Credit Parties' enforcement or realization

upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in

this Interim Order or Final Order, or seeking to prevent the DIP Agent from credit bidding in

connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Senior Obligations remain outstanding in a manner inconsistent with the Budget except after the delivery of a Carve-Out Trigger Notice to fund the Post Trigger Notice Carve Out Amount or to pay, solely from the proceeds of a Permitted Sale, the Success Fee; (g) using or seeking to use any insurance proceeds constituting DIP Collateral, without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Credit Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Credit Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Senior Obligations, the Prepetition Subordinated Obligations, the DIP Liens, the Prepetition Senior Liens or the Prepetition Subordinated Liens or any other rights or interests of the DIP Credit Parties, the Prepetition Senior Creditors or the Prepetition Subordinated Creditors; *provided* that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the proceeds of the DIP Facility under the DIP Credit Agreement, DIP Collateral, Prepetition Collateral (including Cash Collateral) or the DIP Carve Out may be used by the Creditors' Committee during the Challenge Period to investigate the

claims and liens of the Prepetition Secured Creditors (and other potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors).

32.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of any party to object to the allowance and payment of such fees and expenses.

33.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The stipulations, findings, representations and releases contained in this Interim Order, the Payoff Letter and the DIP Loan Documents with respect to the Prepetition Secured Creditors and the Prepetition Secured Obligations shall be binding upon all parties-in-interest, any trustee appointed in these cases and any Committee (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Debtors or, subject to clause (b) below, any other Challenge Party initiates an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 33:  (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Secured Creditors on behalf of the Debtors, their estates or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of any of the Prepetition Secured Obligations (including any fees included therein); (iii) the secured status of any of the Prepetition Secured Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective Prepetition Credit Documents; or (v) the releases set forth in the DIP Loan

47

Documents; and (b) "**Challenge Period**" means (i) with respect to any party-in-interest other than the Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to the Committee, the period from the date such Committee is formed until the date that is sixty (60) calendar days thereafter.

(b)    During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors, the DIP Agent, the DIP Term Agent and the Prepetition Secured Creditors during the Challenge Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto, and from the date that the Debtors, the DIP Agent, the DIP Term Agent and the Prepetition Secured Creditors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action (or a settlement in lieu of an adversary) and ten (10) days to initiate such action. If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. The Debtors, if timely notified of a potential Challenge and if such Challenge is commenced in a timely manner as set forth herein, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(c)    Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"):  (A) any and all such Challenges and

objections by any party (including, without limitation, any Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditors' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against any of the Debtors or the Prepetition Secured Creditors relating in any way to the Debtors or the Prepetition Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

(d)    For the avoidance of doubt, in the event the case is converted to chapter 7 or a chapter 11 trustee is appointed prior to expiration of the Challenge Period described in this paragraph, the Challenge Period shall not expire until 60 days after the trustee's appointment.  In the event the Committee or any other party in interest (or the Debtors, acting at the behest of either of them) has commenced a Challenge prior to the conversion to chapter 7 or appointment of a chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge.  In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge or the entry of a final, non-appealable order or judgment on account of any Challenge (brought within the Challenge Period), the trustee shall not be bound by the Debtors' acknowledgments, admissions, confirmations, stipulations and waivers in this Order.

34.    <u>Reservation of Rights</u>:  Notwithstanding anything to the contrary contained in this Interim Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 33 hereof), this Court may unwind the repayment of the applicable Prepetition Secured Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Secured Obligations consisting of an unsecured claim or other amount not allowable under Section 502 of the Bankruptcy Code. Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens.

35.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.    <u>Section 506(c) Claims</u>.  Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Senior Liens or Prepetition Subordinated Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

37.    <u>No Marshaling/Applications of Proceeds</u>.  Subject to the entry of the Final Order, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.    <u>Section 552(b)</u>.  The DIP Agent and the other DIP Credit Parties shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy

Code shall not apply to the DIP Credit Parties or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

40.    <u>Discharge Waiver</u>.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  Subject to entry of the Final order, the Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  It shall constitute an Event of Default under the DIP Credit Agreement if any of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims.

41.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or

51

RLF1 13833016v.1

implicitly: (a) DIP Credit Parties' or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to Section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Credit Parties or the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Credit Parties and the Prepetition Secured Creditors are preserved.

42.    No Waiver by Failure to Seek Relief. The failure of the DIP Credit Parties to seek relief or otherwise exercise rights and remedies under this Interim Order, the DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Credit Parties.

43.    Binding Effect of Interim Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, any Committee or any other court appointed committee, appointed in the Cases, and all other

52

parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.   Notwithstanding anything contained herein with respect to the obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.

44.    <u>No Modification of Interim Order</u>.   Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent and the DIP Term Agent (i) any reversal, modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent and the DIP Term Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and the DIP Term Agent.

RLF1 13833016v.1

45. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

46. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Credit Parties and Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions in this Interim Order concerning the indemnification shall continue in the Cases and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

47. <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _February 22_ 2016 at _1_ :00 _p_.m. (Eastern Time) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, Courtroom 1, at the United States Bankruptcy Court for the District of Delaware located at 824 North Market Street Wilmington, DE 19801.

RLF1 13833016v.1

48.    <u>Notice of Final Hearing</u>:  On or before February 5, 2016, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the thirty (30) largest unsecured creditors of the Debtors at their last known addresses; (e) Choate, Hall & Stewart LLP (Attn: Kevin J. Simard, Esq. and Sean M. Monahan, Esq.) and Womble Carlyle (Attn: Steven Kortanek), attorneys for the DIP Agent and the Prepetition Senior Agent; (f) Paul Hastings LLP (Attn: Leslie Plaskon, Esq.), and Ashby & Geddes, P.A. (Attn:  William P. Bowden) attorneys for the DIP Term Agent and the Prepetition Term Agent; (g) Emmet, Marvin & Martin, LLP (Attn: Margery A. Colloff, Esq.), attorneys for the Prepetition Indenture Trustee, (h) any party which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this Court; and (i) counsel for any Committee.

49.    <u>Objection Deadline</u>: Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon (a) O'Melveny & Myers LLP (Attn: Steve Warren, Esq., swarren@omm.com and Jennifer Taylor, Esq., jtaylor@omm.com) and Richards, Layton & Finger, P.A. (Attn: Mark D. Collins, Esq., collins@rlf.com), counsel for the Debtors; (b) the Office of the United States Trustee for the District of Delaware, (Attn:  Mark Kenney, Esq., mark.kenney@usdoj.gov); (c) counsel to any Committee; (d) Choate, Hall & Stewart LLP (Attn: Kevin J. Simard, Esq., ksimard@choate.com) and Womble Carlyle (Attn:    Steven Kortanek, Esq., skortanek@wcsr.com), attorneys for the DIP Agent and the Prepetition Senior Agent; (e) Paul Hastings LLP (Attn: Leslie Plaskon, Esq., leslieplaskon@paulhastings.com), attorneys for the

55

DIP Term Agent and the Prepetition Term Agent and Ashby & Geddes, P.A. (Attn: William P.

Bowden, wbowden@ashby-geddes.com), and (f) Emmet, Marvin & Martin, LLP (Attn: Margery

A. Colloff, Esq., mcolloff@emmetmarvin.com), attorneys for the Prepetition Indenture Trustee,

so that such objections are filed with the Court and received by said parties on or before *4:00*

p.m. (Eastern Time) on *2-16* ___, 2016 with respect to entry of the Final Order.

50.    Effect of this Interim Order.  This Interim Order shall constitute findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately,

notwithstanding anything to the contrary proscribed by applicable law.

51.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce

this Interim Order according to its terms.

Dated: February *3*, 2016
      Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

RLF1 13833016v.1