IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| HANCOCK FABRICS, INC., et al.,[1] | Case No. 16-10296 (BLS) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 15** |

------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING STORE CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (the "**Interim Order**"), pursuant to sections 105, 363, 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, and 6004, (a) authorizing the Debtors to commence and continue store closing or similar themed sales in accordance with that certain Consulting Agreement dated as of January 23, 2016 (the "**Consulting Agreement**"), by and between Great American Group, LLC (the "**Consultant**"), as consultant, and Hancock, as merchant, a copy of which is attached as <u>Exhibit 1</u> to this Interim Order, (b) authorizing the Debtors to commence and continue store closing or similar themed sales in accordance with the terms of the store closing sale guidelines (the "**Sale Guidelines**") attached as <u>Exhibit 2</u> to this Interim Order, with such sales to be free and clear of all liens, claims, encumbrances, and other interests, and (c) granting certain related relief on an interim basis (collectively, the "**Store**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**Closing Relief**"), and the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing before the Court (the "**Hearing**"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, (ii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) the notice of the Motion and the Hearing was sufficient under the circumstances, and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); after due deliberation determined that the relief requested in the Motion is necessary on an interim basis and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors, their estates and their creditors; and upon the record herein; and after due deliberation thereon; and good and sufficient cause have been shown; it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.   The Debtors have advanced sound business reasons for entering into the Consulting Agreement, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

B.   The conduct of the Store Closing Sales will provide an efficient means for the Debtors to maximize recoveries of their estates with respect to the Merchandise and/or the Owned FF&E.

C.   The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

2

D. The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

E. The Store Closing Sales are in the best interest of the Debtors' estates.

F. The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

G. The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED THAT**:

1. The Motion is GRANTED, on an interim basis, as provided herein.

2. On *February 22*, 2016, at *1:00 p*.m. (Eastern Standard Time), a hearing (the "**Final Hearing**") will be held before this Court to consider the Store Closing Relief requested in the Motion, on a final basis. All objections, if any, to the Motion shall be in writing and filed with this Court and served on (i) proposed co-counsel to the Debtors, O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071 (Attn: Stephen H. Warren, Esq., and Jennifer Taylor, Esq.), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq., and Michael J. Merchant, Esq.), (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801; (iii) counsel to the Official Committee of Unsecured Creditors, if one is appointed; (iv) counsel to Wells Fargo Bank, National Association, as administrative and collateral agent under the prepetition credit

facility and debtor-in-possession credit facility, Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin J. Simard, Esq.); (vi) counsel to GACP Finance Company, LLC, as term agent under the prepetition credit facility, Paul Hastings LLP, 75 East 55th Street, New York, New York 10022 (Attn: Andrew V. Tenzer, Esq.); (vii) counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271 (Attn: Margery A. Colloff, Esq.); (viii) counsel to certain secured noteholders, K&L Gates LLP, 599 Lexington Avenue, New York, New York 10022-6030 (Attn: John A. Bicks, Esq.), and (ix) the Consultant, c/o Great American Group, 21860 Burbank Blvd., Suite 300 South, Woodland Hills, California 91367 (Attn: Scott K. Carpenter) (collectively, the "**Notice Parties**"), as to be received on or before February 16, 2016, at 4:00 p.m. (Eastern Standard Time). Any reply(s) to such objections shall be filed on or before February 17, 2016, at 4:00 p.m. (Eastern Standard Time) and shall be served on the Notice Parties.

        3.    The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order. The failure to include specifically any particular provision of the Consulting Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Consulting Agreement and all of its provisions, payments and transactions, be authorized and approved as and to the extent provided for in this Interim Order.

        4.    To the extent of any conflict between this Interim Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

5.  Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

6.  The Consulting Agreement, a copy of which is attached to this Interim Order as <u>Exhibit 1</u>, is operative and effective on an interim basis during the interim period. The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement.

7.  Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Agreement and/or the Store Closing Sales prior to the date of this Interim Order, hereby are approved and ratified.

A.  **Authority to Engage in Store Closing Sales**

8.  The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to section 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct Store Closing Sales at the Closing Stores in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

9.  The Sale Guidelines are approved in their entirety on an interim basis for the purpose of the Store Closing Sales; provided, however, prior to the entry of a final order approving the Motion or a side letter with the applicable landlord permitting installation of exterior banners in accordance with the parties' agreement, the Debtors and/or Consultant shall not be permitted to install exterior banners.

10. The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

11. All entities that are presently in possession of some or all of the Merchandise or Owned FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order are hereby directed to surrender possession of such Merchandise or Owned FF&E to the Debtors or the Consultant.

12. Subject to the provisions herein in paragraphs 14, 15, 18, and 27, neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

**B.     Conduct of the Store Closing Sales**

13. All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of Merchandise and Owned FF&E pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and Owned FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

14. Nothing in this Interim Order or the Consulting Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of

the property after the date of entry of this Interim Order. Nothing contained in this Interim Order or in the Consulting Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Consultant is an operator with respect to any environmental law or regulation. Moreover, the sale of the Merchandise and Owned FF&E shall not be exempt from, and the Consultant shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**"). Nothing in this Interim Order shall alter or affect the Debtors' and Consultant's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Consultant's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to paragraph 27 hereunder. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

15. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Interim Order, during the interim sale period, the Debtors and

Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the sale without necessity of further order of this Court as provided in the Consulting Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Closing Stores, and at enclosed mall Closing Stores to the extent the applicable Closing Store entrance does not require entry into the enclosed mall common area), use of sign-walkers and street signage.

16. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and Owned FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (i) the Final Hearing or (ii) within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

17. Except as expressly provided in the Consulting Agreement, the sale of the Merchandise and Owned FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment of assets, or "going dark" provisions. The Consultant and landlords of

the Closing Stores are authorized to enter into agreements ("**Side Letters**") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords, provided that nothing in such Side Letters affects the provisions of paragraphs 16, 18, and 27 of this Interim Order. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

18. Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which paragraphs 14, 16, 18, and 27 of this Interim Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales or the sale of Merchandise or Owned FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Merchandise or Owned FF&E or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of

covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

19. In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order and subject to paragraphs 14, 16, 17, and 27 of this Interim Order.

20. The Consultant shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Agreement) in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price offered by the Consultant.

21. All sales of Merchandise or Owned FF&E shall be "as is" and final. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." Further, as to the Closing Stores only, the Debtors and/or the Consultant shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the

merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Signs stating that "Refunds may be made only for merchandise having a latent defect, when returned with a receipt within 7 days of purchase." will be posted at the cash register areas of the Closing Stores. Returns, if permitted, related to the purchase of Merchandise and Owned FF&E shall not be accepted at stores that are not participating in the Store Closing Sales, except in the situation where a customer experiences a latent defect and returns the Merchandise and Owned FF&E within the seven (7) day time period and provides information that the point of purchase store has closed in the meantime. Information on stores remaining open will be maintained on the Debtors' website through the end of the Store Closing Sales.

22. The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement. This Interim Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

23. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell and all sales of Merchandise or Owned FF&E pursuant to the Store Closing Sales, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, or other interests ("**Encumbrances**"); *provided, however,* that any such Encumbrances shall attach to the proceeds of the Store Closing Sales with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Merchandise and Owned FF&E, subject to any claims and defenses that the Debtors may possess with respect thereto.

24. To the extent that the Debtors propose to sell or abandon Owned FF&E which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "**Confidential Information**"), the Debtors shall remove the Confidential Information from such items of Owned FF&E before such sale or abandonment.

25. The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Merchandise and Owned FF&E among the Closing Stores. The Consultant is authorized to sell the Debtors' Owned FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement.

## C.   Dispute Resolution Procedures With Governmental Units

26. To the extent that the sale of Merchandise or Owned FF&E is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "**GOB Law**," and collectively, the "**GOB Laws**"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances

establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, or any fast pay laws that would otherwise apply solely to the sale of the Merchandise or Owned FF&E in the interim sale period (collectively, the "**Liquidation Laws**"), the dispute resolution procedures in this section shall apply.

27. Provided that the Store Closing Sales and the sale of Merchandise and Owned FF&E are conducted in accordance with the terms of this Interim Order, the Consulting Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to paragraphs 14, 16, 18, and 26 herein, are authorized to conduct the Store Closing Sales in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

28. Within three (3) business days of entry of this Interim Order, the Debtors shall serve copies of this Interim Order, the Consulting Agreement and the Sale Guidelines via facsimile, e-mail, overnight delivery or hand delivery on the Attorney General's office (to the division of consumer protection or similar authority) for each state where the Store Closing Sales are being held.

29. To the extent that during between the Petition Date and the date of the Final Hearing there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief. Nothing in this Interim Order shall constitute a ruling

with respect to any issues to be raised with respect to a Reserved Dispute. Any Governmental Unit may assert a Reserved Dispute by sending a notice (the "**Dispute Notice**") explaining the nature of the dispute to: O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071 (Attn: Stephen H. Warren, Esq., and Jennifer Taylor, Esq.), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq., and Michael J. Merchant, Esq.), proposed co-counsel to the Debtors.

**D.     Other Provisions**

30.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement and subject to the immediately succeeding paragraph.

31.     Notwithstanding anything to the contrary herein, the indemnification obligations of the Debtors set forth in the Consulting Agreement are approved, subject during the pendency of these chapter 11 cases to the following:

(a)     Consultant shall not be entitled to indemnification, contribution or reimbursement pursuant to the Consulting Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b)     The Debtors shall have no obligation to indemnify Consultant, or provide contribution or reimbursement to Consultant, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Consultant's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Consultant's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to Consultant's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which Consultant should not

receive indemnity, contribution or reimbursement under the terms of the Consulting Agreement as modified by this Order;

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Consultant believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Consulting Agreement (as modified by this Order), including without limitation the advancement of defense costs, Consultant must file an application therefore in this Court, and the Debtors may not pay any such amounts to Consultant before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Consultant for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Consultant. All parties in interest shall retain the right to object to any demand by Consultant for indemnification, contribution or reimbursement; and

(d) Any limitation of liability or limitation on any amounts to be contributed by the parties to the Consulting Agreement under the terms of the Consulting Agreement shall be eliminated.

15

32. Except with respect to any Governmental Unit (as to which the provisions of paragraphs 14, 16, 17, and 27 of this Interim Order shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Consulting Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closing Sales, (iii) any other disputes related to the Store Closing Sales, and (iv) to protect the Debtors and/or the Consultant against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Consultant, the landlords or the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: February 3, 2016
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

RLF1 13833017v.1