

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| HANCOCK FABRICS, INC., *et al.*,[1] | Case No. 16-10296 (BLS) |
| Debtors. | |
| | Jointly Administered |
| | Re: Docket No. 7 |

------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"): (i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts located at various banks, as more fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement, including as required under that certain Debtor-in-Possession Credit Agreement dated on or about February 2, 2016 by and among, *inter alia*, the debtors, Wells Fargo Bank, N.A. ("**Wells Fargo**") as Administrative Agent, Collateral Agent and Swing Line

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hancock Fabrics, Inc. (0905), Hancock Fabrics, LLC (9837), Hancock Fabrics of MI, Inc. (5878), hancockfabrics.com, Inc. (9698), HF Enterprises, Inc. (7249), HF Merchandising, Inc. (8522) and HF Resources, Inc. (9563). The Debtors' corporate headquarters is located at One Fashion Way, Baldwyn, MS 38824.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

RLF1 13830345v.1

Lender, and GACP Finance Co., LLC, ("**GACP**") as Term Agent (the "**DIP Credit Agreement**"); (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

    1.    The Motion is granted on an interim basis to the extent set forth herein.

    2.    The final hearing (the "**Final Hearing**") on the Motion will be held on February 22, 2016, at 1:00 p.m. (prevailing Eastern Time). Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on February 16, 2016, and served on the following parties: (i) the Office of the

United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.); (ii) O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071 (Attn: : Stephen H. Warren, Esq. and Karen Rinehart, Esq.), proposed co-counsel to the Debtors; (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq., and Michael J. Merchant, Esq.), proposed co-counsel to the Debtors; (iv) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq. and Sean Monahan, Esq.), counsel to Wells Fargo Bank, National Association, as Administrative and Collateral Agent; (v) Paul Hastings LLP, 75 East 55th Street, New York NY 10022 (Attn: Leslie Plaskon, Esq.), counsel to GACP Finance Company LLC, as Term Agent; (vi) Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, NY 10271 (Attn: Margery A. Colloff, Esq.), counsel to Deutsche Bank National Trust Company, as trustee under the indenture for the Floating Rate Series A Secured Notes due 2017; (vii) K&L Gates LLP, 599 Lexington Avenue, New York, NY 10022 (Attn: John A. Bicks, Esq.), counsel to certain secured noteholders and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m). A copy of the Motion and this Order will be served on the foregoing parties and all parties having filed requests for notices in these chapter 11 cases. Due to the nature of the relief requested in the Motion, no other or further notice need be given. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. Except as otherwise provided herein, the Debtors are authorized to continue to maintain and use their Cash Management System and bank accounts consistent with their prepetition practices.

4.  Subject to the requirements of the DIP Credit Agreement, the Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of their bank accounts. The banks are authorized to honor the Debtors' requests to close such bank accounts in connection with authorized changes to the Cash Management System.

5.  The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on Exhibit C to the Motion (the "**Debtor Bank Accounts**"), in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

6.  All banks are authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, payment orders or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, provided the applicable Debtor Bank Accounts contain sufficient funds.

7. All banks at which the Debtors maintain one or more Debtor Bank Accounts are authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such bank's counters or exchanged for cashier's checks by the payees thereof prior to the bank's receipt of notice of filing of the Debtors' chapter 11 petitions; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtors' accounts with such bank prior to filing of the Debtors' chapter 11 petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the Debtors' chapter 11 petitions; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any of such banks as service charges for the maintenance of the Cash Management System.

8. All banks may rely on, and are authorized to accept and honor, all representations from the Debtors as to which of these Disbursements should be honored. If any banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court. No bank will be liable to the Debtors or their estates, or otherwise be in violation of the orders of this Court, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

9. The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

10. In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and

distinguished between prepetition and post-petition transactions on intercompany accounts, and shall make such records available to the DIP Agent upon reasonable request.

11. The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived. The Debtor Bank accounts are deemed to be DIP Accounts.

12. The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

13. The Debtors are authorized to continue using all checks, correspondence, and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

14. For cash management banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For cash management banks that have signed a Uniform

Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

15. Within 15 days of the date of entry of this Order, with respect to banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each bank; (ii) provide the bank with each of the Debtors' tax identification numbers; and (iii) identify each of their bank accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

16. Within 30 days of the date of entry of this Order, with respect to banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee. The Debtors will promptly direct such banks to internally code the Debtors' bank accounts as DIP Accounts. The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17. To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; **provided, further,** however that the Debtors open any such new bank account at banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

18. Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

19. Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

20. The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

21. Nothing herein amends the DIP Credit Agreement (including without limitation any budget incorporated therein) or any order of this Court approving the DIP Credit Agreement (including without limitation any budget incorporated therein).

22. Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23. The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

24.  This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: February 3, 2016
Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE